## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>        *v.*<br><br>SPEEDYPC SOFTWARE, a British Columbia company,<br><br>        *Defendant*. | Case No. 1:13-cv-08389<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Archie Beaton ("Beaton" or "Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant SpeedyPC Software ("SpeedyPC" or "Defendant") to obtain redress for, and put an end to, Defendant's deceptive marketing and sale of certain of its software products. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.    SpeedyPC develops software that it claims will increase the speed, performance, and stability of a consumer's personal computer ("PC"), remove harmful errors, and eliminate privacy and security threats. Unfortunately for consumers, SpeedyPC's methods of inducing consumers to purchase the software, as well as the product itself, are undeniably misleading.

2.    Through a common scheme, SpeedyPC uniformly misleads consumers into purchasing the software at issue in this lawsuit—SpeedyPC Pro.

3.    First, SpeedyPC represents to consumers on its websites that SpeedyPC Pro is capable of identifying, reporting, and repairing a wide range of computer errors and privacy and

1

security threats. SpeedyPC further asserts that SpeedyPC Pro will increase system startup speeds and optimize a computer's performance.

4.     Next, to convince the consumer of SpeedyPC Pro's purported value, Defendant strongly encourages the user to download a free trial version of the software to conduct a diagnostic scan of their computer. This scan purportedly detects errors that lead to the problems identified in its marketing materials (as described above and further herein)—problems that SpeedyPC Pro is supposedly designed to fix. Immediately after completing the scan, SpeedyPC Pro reports, in alarmist fashion, that the consumer's computer is afflicted by hundreds of harmful errors, including viruses, and privacy and security threats. Finally, SpeedyPC informs the consumer that to fully remove these "errors," the consumer must purchase the full version of SpeedyPC Pro.

5.     Despite the foregoing, and contrary to Speedy PC's marketing and in-software representations, neither the free trial version nor the full registered version of SpeedyPC Pro *performs any credible diagnostic testing* on the consumer's computer. Instead, SpeedyPC Pro is designed to invariably and ominously report that the consumer's PC needs repair and is at risk of harmful errors, privacy threats, and other computer problems, regardless of the actual condition of the computer.

6.     The representations described above—both through SpeedyPC's marketing and in-software graphical and textual assertions—are used to induce consumers into purchasing and continuing to use the SpeedyPC Pro software.

7.     SpeedyPC holds itself out as a reputable developer of software designed to protect consumers' computers. Because average consumers lack the requisite technical expertise to understand the underlying functionality of SpeedyPC's software, they trust SpeedyPC to convey

accurate information regarding its products ability to identify and remove harmful errors from their computers. Because it did not, thousands of consumers have been, and continue to be, misled into buying software they do not need.

## PARTIES

8.     Plaintiff Archie Beaton is a natural person and citizen of the State of Illinois.

9.     Defendant SpeedyPC Software is a company organized and existing under the laws of British Columbia, Canada, with its headquarters and principal place of business located at 1892 West Broadway, 2nd Floor, Vancouver, British Columbia V6J 1Y9 Canada. Defendant does business throughout this District, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than SpeedyPC, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

11.     This Court has personal jurisdiction over SpeedyPC because it conducts business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the injuries of which Plaintiff complains were directed to, and/or emanated from this District. Venue is additionally proper because SpeedyPC transacts significant business in this District, including soliciting consumer business and entering into consumer and business contracts.

## FACTUAL BACKGROUND

**I.    A Brief Overview of SpeedyPC Software.**

13.    SpeedyPC is a "utility" software company that develops computer security and optimization software products.

14.    On its website, SpeedyPC asserts that its software products are consumers' "PC cleaning, repair, and optimization toolbox[es]" and are capable of fixing a wide variety of computer problems. One of those products is SpeedyPC Pro.

**II.    Consumers are Misled into Purchasing SpeedyPC Pro.**

15.    SpeedyPC heavily promotes SpeedyPC Pro through online advertisements and on its websites as software that is capable of increasing computer speed and performance, removing harmful computer errors, and protecting users' privacy and security.

16.    For example, if a given consumer searches the World Wide Web for software to enhance their computers' performance, they will likely encounter SpeedyPC's advertisements for SpeedyPC Pro, including the following representations:

- "Boost your PC's speed and performance: SpeedyPC Pro cleans, optimizes and protects your computer for improved speed, performance and operation."

- "Find your PC's performance potential: SpeedyPC Pro cleans your computer with just a couple of clicks. It also utilizes premium optimization tools so you get the most out of your PC!"

- "SpeedyPC Pro improves your PC's health."

17.    When a consumer clicks on an advertisement or hyperlink to one of SpeedyPC's websites, Defendant presents the user with representations that suggest to the consumer that their computer is at serious risk. For instance, they warn that:

- "Your computer has a lot going on. If it has too much happening, your speed and performance can take a drastic swan dive."

- "If someone has access to your computer, they could learn a lot about you. Information stored on your PC through your normal Internet and file use could be used for identity theft, targeting phishing scams and other fraud attempts."

- "Your computer is like a squirrel, storing its information wherever it can. Over time this means parts of your files are spread throughout your hard drive. In order for the files to be used, your computer must track down all of the parts and reassemble them. This can take a lot of time."

18.     SpeedyPC also presents consumers with a list of commonly occurring PC problems, and an explanation of how SpeedyPC Pro is designed to detect and fix the errors that cause these problems. For example, SpeedyPC's website reads in part:

- "Malicious programs can cause all kinds of problems for you and your computer. Some kinds of malware try to grab your confidential data, such as banking information or passwords . . . SpeedyPC Pro's scan is designed to find [and] remove[] malware to make your PC safe and stable."

- "The Windows registry is a huge factor in your computer's operation. If the registry is not healthy, your computer needs help! . . . SpeedyPC Pro probes the Windows registry to clean: ActiveX, Shared dlls, Uninstall entries, File path references, Shell extensions, Application paths, Startup entries, and much more."

- "Information stored on your PC through your normal Internet and file use could be used for identity theft, targeted phishing scams and other fraud attempts. SpeedyPC Pro cleans away all traces of your private and confidential information."

19.     Regardless of where the consumer encounters these statements, SpeedyPC recommends that the consumer download SpeedyPC Pro to protect, repair and optimize their computers, thus triggering the initial phase of SpeedyPC's sales approach—misleading consumers about the utility of the SpeedyPC Pro software.

**A.     SpeedyPC Misleads Consumers About the Utility of SpeedyPC Pro.**

20.     On its website, SpeedyPC claims that its software will scan a consumer's computer to detect a variety of harmful computer errors, and "process performance problems, dangerous malware, privacy files and junk files." SpeedyPC then claims that its software will "take care" of or eliminate these common computer problems.

5

21.     More specifically, SpeedyPC expressly warrants through its website that SpeedyPC Pro was designed to perform the following tasks:

- "protect [you] and your PC by removing malware and privacy files";

- "clean[] away all traces of your private and confidential information";

- "manage[] your computer's resources for improved performance";

- "improve[] PC startup times";

- "optimize[] memory"; and

- "eliminate clutter, error messages, freezing, crashes or erratic performance."

22.     But these representations do not accurately reflect SpeedyPC Pro's true capabilities. The truth is that, at its core, SpeedyPC Pro performs two main functions: it's a registry cleaner[1] and it removes superfluous "temporary" files from a user's hard drive. These operations do not come close to squaring with SpeedyPC's representations about the functionality of SpeedyPC Pro. For instance, neither of these functions will remove malware, credibly protect a user's privacy, remove serious security threats, nor prevent damaging PC errors.

23.     After consumers—most of whom are searching for software to fix seriously malfunctioning computers—are informed that SpeedyPC Pro is capable of performing the tasks identified above, SpeedyPC moves to the second phase of its sales process: convincing consumers that their computers are afflicted by errors that lead to the problems that SpeedyPC Pro was purportedly designed to fix.

---

[1]     "Registry cleaner" software is a type of utility program designed to remove unwanted or redundant items from the Microsoft Windows operating system registry. The "registry" is a database of configuration settings that help facilitate the operation of computer applications in the operating system.

**B.      SpeedyPC Informs Consumers that Their Computers Need Repair.**

24.     Through its website, SpeedyPC recommends that the consumer download the trial

version of SpeedyPC Pro in order to conduct a free scan to detect issues that the product is

supposedly designed to identify and fix. *See* Figures 1-4 (showing screenshots of advertisements

displayed on the Internet and on SpeedyPC's website for the free trial version of SpeedyPC Pro).



(Figure 1.)



(Figure 2.)



(Figure 3.)



(Figure 4.)

25.     The problem with this approach is that, through these marketing materials, consumers are led to believe that SpeedyPC Pro's free scan will detect the sort of computer errors causing the problems that SpeedyPC Pro will purportedly fix (*i.e.*, harmful errors, malware, and security and privacy threats). But, as explained above, that is simply not true.

26.     Immediately after installing the program on their PC, the third phase of SpeedyPC's sales process begins: the software informs the user that hundreds of harmful errors exist on the computer, and then offers to fix such "errors"—but only after purchase of the full, registered version of SpeedyPC Pro.

**C.     SpeedyPC Pro Invariably Reports Benign Errors as Harmful to Induce Consumers to Purchase the Full Version of the Product.**

27.     After the consumer downloads and installs SpeedyPC Pro, the software immediately warns the user that he or she "need[s] to perform a scan." *See* Figure 5 (showing a screenshot of SpeedyPC Pro's initial diagnostic scan user interface).



(Figure 5.)

28. Once the scan is complete, SpeedyPC Pro displays a warning to the user in an alarmist fashion that hundreds, or thousands, of serious problems exist on the computer and "require attention." The software also warns—using ominous white on red typeface and a graphical depiction of an alert sign—that the "Performance" and "Security" of the users' PC is in "Serious" or "Critical" condition. In addition to the graphical depictions of the computer's overall status, SpeedyPC Pro displays an itemized list of errors and problems purportedly identified by the software. These problems are broken down by category and accompanied by a gauge, which ranges from "Good" to "Critical," and represents the supposed "Damage Level[s]" caused by the problem.

29. After presenting the supposed results of the diagnostic scan, SpeedyPC Pro displays to the user a half-page warning with bold red letters stating: "SpeedyPC Pro has determined that your computer requires immediate attention!" and is in "Serious" or "Critical" condition. *See* Figure 6 (showing a screenshot of SpeedyPC Pro's error reporting interface and

9

registration and/or activation page). The user is then given the option to purchase the full version of the software to "fix" and repair the harmful errors detected.



(Figure 6.)

30. The truth, however, is that SpeedyPC Pro's scan results are simply tactics—common to this industry—used to mislead consumers into purchasing its software.

31. Through his attorneys, Plaintiff has engaged a computer forensics expert to examine SpeedyPC Pro. The results of this investigation confirm that the free trial and full registered versions of SpeedyPC Pro are designed to *always* report that a user's computer is severely damaged—regardless of the condition or type of computer the software is installed on. Ostensibly, these representations mislead the user into believing that the computer is damaged, or at risk, and that the purchase and continued use of SpeedyPC Pro is necessary to "fix" these problems. Worse, Plaintiff's experts revealed that the errors detected as "Serious" or "Critical" *are not credible threats* to a computer's functionality.

32.     For example, Figure 7 below shows the results of a SpeedyPC Pro diagnostic scan conducted by the expert *on a brand new computer*.[2] *See* Figure 7 (showing a screenshot of SpeedyPC Pro's error reporting interface).



(Figure 7.)

33.     Figure 7 shows SpeedyPC Pro reporting that the overall "Performance" of the computer, as illustrated by the gauge on the top right of the screen, is poor, that "125 problems require attention," and that at least some of those problems, are causing "Serious" or "Critical" damage to the computer system—even though this test computer has never been used.

34.     The expert's research also shows that SpeedyPC Pro is designed to mischaracterize the severity of errors to get consumers to believe their computers are damaged. For example, in Figure 8 below, the expert planted a number of fake, innocuous errors (for example, the "FakeError01.log" file displayed in the red box shown in the Figure) that cannot cause damage to a computer. Tellingly, Figure 8 shows SpeedyPC Pro detecting this fake error and reporting that it is causing the computer "Serious" or "Critical" damage.

---

[2]     In fact, every Figure included in this Complaint shows the results of testing conducted on a brand new computer.



(Figure 8.)

35.     Not only does SpeedyPC Pro detect and mischaracterize non-damaging items as harmful, but the software also identifies naturally recurring system files as threatening. In other words, this means that SpeedyPC Pro will *always* report that certain files—files not actually detrimental to a PC's performance—are causing the computer harm, as these files will always exist by virtue of the normal operations of the computer system. *See* Figure 9 (showing automatically recurring Microsoft Windows log files being detected by SpeedyPC Pro as errors contributing to the computer's "Serious" or "Critical" damage level).



(Figure 9.)

36.     In total, Plaintiff's expert uncovered that both the free trial and full registered

versions of SpeedyPC Pro is programmed to (i) always identify problems on a user's computer

(even where none exist), (ii) artificially inflate the number of errors and security risks detected

on a user's computer, (iii) characterize innocuous items as errors, (iv) report that the user's

"Security" and "Performance" are poor without any credible assessment of these issues, and (v)

arbitrarily characterize individual errors as "Serious" or "Critical."

37.     Indeed, even after purchasing the full, registered version of the software,

SpeedyPC Pro continues to detect and report non-errors. Presumably this design is meant to

mislead users into believing that the continued use of the software is necessary to repair so-called

errors on their computers, and eventually, to get them to upgrade or re-purchase the software

after it expires.

38.     Through the practices described above, SpeedyPC has profited, and continues to

profit, by misleading consumers into believing that their computers are severely damaged and/or

at risk, and that the purchase—for $39.94—and continued use of the SpeedyPC Pro software is necessary to "fix" these problems. But, because the software does not actually provide the benefits advertised, SpeedyPC Pro does not deliver on its promises to its users.

III.  **SpeedyPC Continues its Practices, Despite the Changing Utility Software Industry.**

39.     Unfortunately for consumers, SpeedyPC is not alone in its use of the sorts of programmatic design and marketing practices at issue in this case. Rather, the utility software industry has been fraught with these tactics for over a decade. It is only recently, however, that software developers—like SpeedyPC and its competitors—have been called to account for their profiting off of consumers who are unable to identify the misleading technological design and methodologies underlying this type of supposedly performance-enhancing software.

40.     Indeed, numerous lawsuits have been filed against well-known competitors of SpeedyPC (*e.g.*, Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel here—which allege similar claims related to the design and marketing of so-called utility software products. Several of those cases have resulted in classwide settlements and industry-shaping software modifications, which compel the implementation of far more transparent error detection and reporting procedures.

41.     Rather than follow suit and make the changes necessary to ensure that its software accurately detects, reports and repairs harmful errors and other problems present on users' PCs, SpeedyPC has continued its unlawful business practices and profits from them to this day.

IV.  **Plaintiff Beaton's Experience.**

42.     In or around August 2012, while browsing the Internet for software to repair and optimize his computer, Plaintiff Beaton encountered one of Defendant's online advertisements for SpeedyPC Pro—substantially similar to the advertisements described in Section II above.

43.     After viewing Defendant's advertisement for SpeedyPC Pro, Beaton navigated to one of Defendant's websites (www.SpeedyPC.com) and read Defendant's express warranties about the software's utility, which were the same, or substantially similar to the representations shown in Figures 10-16 below. *See* Figures 10-16 (showing screenshots of SpeedyPC's representations regarding the SpeedyPC Pro software displayed on SpeedyPC's websites).



(Figure 10.)



(Figure 11.)

**Speedy PC Pro: Your Super Computer Helper**

SpeedyPC Pro is packed with tools to help solve your computer problems and frustrations. It:

- Cleans ActiveX and registry errors
- Kicks out active malware
- Stops unwanted processes
- Cleans up clutter
- Wipes away privacy files to protect your info
- Improves PC startup times
- Optimizes memory
- Removes unneeded browser add-ons
- Finds programs to open unknown file extensions
- Manages restore points

(Figure 12.)

**Just what you need to help your PC**

Every good mechanic has a toolbox fully stocked with what he needs to get the job done. Consider SpeedyPC Pro your PC cleaning, repair and optimization toolbox. The program's main scan takes care of the common problems, such as registry errors, that make computers perform poorly. SpeedyPC Pro also has many advanced tools to improve startup times, find the right program to open file extensions, defragment your computer's memory and eject unwanted browser add-ons.

(Figure 13.)

**Get rid of malware**

Malicious programs can cause all kinds of problems for you and your computer. Some kinds of malware try to grab your confidential data, such as banking information or passwords, while others aim to turn your PC into a zombie member of its botnet. Spyware, Trojan downloaders, keyloggers, dialers, adware and rogueware are just some of the kinds of things that try to download onto your computer. SpeedyPC Pro's scan is designed to find these malware types - and many others - running in Active Processes. **SpeedyPC Pro finds and removes malware to make your PC safe and stable.**

(Figure 14.)

**Protect your privacy**

If someone has access to your computer, they could learn a lot about you. Information stored on your PC through your normal Internet and file use could be used for identity theft, targeted phishing scams and other fraud attempts.

SpeedyPC Pro cleans away all traces of your private and confidential information. It wipes away passwords, credit card numbers and other personal and financial information.

(Figure 15.)

**Optimize memory**

Your computer is like a squirrel, storing its information wherever it can. Over time this means parts of your files are spread out throughout your hard drive. In order for the files to be used, your computer must track down all of the parts and reassemble them. This can take a lot of time. By defragmenting your computer's memory, all of parts of files are put in contiguous areas. **This means more room and faster recall.**

(Figure 16.)

44.     Relying upon these representations made by SpeedyPC—namely, that SpeedyPC Pro would "clean[], optimize[] and protect [his] computer for improved speed, performance and operation" as well as protect it from viruses, malware and privacy threats, and otherwise perform the functions depicted in Figures 10-16—Beaton downloaded the software.

45.     After Beaton installed SpeedyPC Pro, the software conducted a "scan" of his computer. Beaton recalls that the software informed him that a hundreds of serious errors were detected, at least some of which SpeedyPC Pro informed him were causing his computer damage. SpeedyPC Pro also displayed gauges representing his system's "Performance" and "Security" levels, with both gauges containing a needle pointing "in the red" (indicating that such levels were in "Serious" or "Critical" condition). Additionally, SpeedyPC Pro warned him that these problems were decreasing his computer's performance and compromising his security—thus requiring his immediate attention—and urged him to purchase the software in

order to "fix" these problems. *See* Figure 6 above (showing a screenshot of SpeedyPC Pro's error reporting interface and registration and/or activation page).

46.     After clicking a button in the software labeled "Fix All," Beaton was forwarded to a SpeedyPC webpage to "register" SpeedyPC Pro to fix the purported problems the software identified on his computer. After reaching SpeedyPC's registration webpage, SpeedyPC again represented to Beaton that "SpeedyPC Pro detected some problems that need to be fixed" and instructed him to "Register SpeedyPC Pro now!" *See* Figure 10 above.

47.     Relying upon all of SpeedyPC's representations about the software's capabilities and the condition of his computer (made both online and in the software itself) and thus, reasonably believing that SpeedyPC Pro's analysis was correct and that his computer urgently needed repair, Beaton paid approximately $39.94 to activate his copy of SpeedyPC Pro, which SpeedyPC represented would repair the purported errors.

48.     In reality, as discussed above, SpeedyPC Pro did not actually detect hundreds of "Serious" or "Critical" errors as SpeedyPC claimed that it would—because the software arbitrarily detects and reports problems as "Serious" or "Critical", and cannot actually perform the beneficial tasks described in its marketing materials and advertisements. Nor did the software accurately identify and report the *actual* condition of Beaton's computer. Rather, SpeedyPC Pro was designed to always report the damning results discussed above. As such, Beaton was misled into believing that his computer was at serious risk, and that he needed to pay to register SpeedyPC Pro in order to repair it.

49.     Similarly, the full version of the SpeedyPC Pro software that Beaton purchased could not and did not perform as advertised by SpeedyPC. Instead, it was designed, like the trial version, to invariably return false errors as detailed in Section II.C above. In fact, every time

Beaton ran SpeedyPC Pro, the software reported that harmful errors were adversely affecting his computer and that he needed to "fix" the errors using SpeedyPC Pro. Yet, despite repeatedly running SpeedyPC Pro's scan, and purportedly "fixing" the reported errors, his computer's performance did not improve.

## CLASS ALLEGATIONS

50.    **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States who have purchased SpeedyPC Pro.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

51.    **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and other entities. Class members can be easily identified through Defendant's records.

52.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

a) whether SpeedyPC Pro is designed to mislead consumers into purchasing the full version of the software;

b) whether Defendant's conduct described herein constitutes violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.;

c) whether Defendant's conduct described herein constitutes fraudulent inducement;

d) whether Defendant's conduct described herein constitutes a breach of contract; and

e) whether Defendant has been unjustly enriched as a result of its conduct described herein.

53. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

54. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

55. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply

and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

56.     **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

57.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1,** ***et seq.***
**<u>(On behalf of Plaintiff and the Class)</u>**

58.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. (the "Consumer Fraud Act"), protects both consumers and companies by promoting fair competition in commercial markets for goods and services.

60.     The Consumer Fraud Act prohibits any unlawful, unfair or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

61.     As described herein, SpeedyPC engaged in deceptive and fraudulent business practices, as defined by the Consumer Fraud Act by, *inter alia*: (i) misrepresenting SpeedyPC Pro's functionality, including through assertions such as those depicted in Figures 1-4 and 10-16 and described in Section II above; (ii) misrepresenting the results of SpeedyPC Pro's analysis to consumers found in the free trial and full registered versions of the software as described in Section II.C; (iii) using its misrepresentations to induce consumers into purchasing or continuing to use a full registered version of SpeedyPC Pro; and (iv) selling a full version of the software that lacked the advertised utility, similarly produced false error reports, and was otherwise incapable of functioning as Defendant represented it would.

62.     Specifically, Defendant affirmatively represented to Plaintiff and the Class that: SpeedyPC Pro would accurately scan their computers for harmful errors and problems, increase the speed and stability of their computers, protect their privacy, and perform tasks such as those depicted in Figures 1-4 and 10-16 and described in Section II above. Further, through SpeedyPC Pro's in-software representations found in both the trial and full versions of the software, SpeedyPC affirmatively represented that the health, performance, and security of Plaintiff's and the Class's computers were poor and that numerous harmful errors were causing their computers "Serious" or "Critical" damage.

63.     Defendant's representations were, in fact, false. SpeedyPC Pro does not (and cannot) actually perform all of the benefits Defendant promises through its marketing materials and in-software representations. Likewise, SpeedyPC Pro's scan results were false, because SpeedyPC Pro did not perform any meaningful evaluation of Plaintiff's and the Class's computers or any errors or problems contained thereon before representing to Plaintiff and the Class that their computers needed repair.

64.     Furthermore, the *only reason* for consumers to purchase SpeedyPC Pro is to ensure that any errors are fixed and to increase their computers' performance. As such, the free trial scan's false results and its failure to provide all of the utility advertised were deceptive marketing practices and were likely to mislead consumers acting reasonably under the circumstances. Likewise, the full version is likely to mislead consumers into believing that the software is functioning as advertised and that it is necessary to continue to use the software to maintain the health and security of their computers.

65.     Defendant has violated the "unfair" prong of the Consumer Fraud Act in that it caused substantial injury to consumers through its actions identified above. The injury caused by Defendant's conduct is not outweighed by any countervailing benefits to consumers, and the injury is one that consumers themselves could not have reasonably avoided. Given the information asymmetry between Defendant and consumers regarding SpeedyPC Pro's functionality, Defendant knew or had reason to know that Plaintiff and the Class could not reasonably have known of or discovered the falsity of Defendant's representations or avoided the harm those representations caused.

66.     Defendant has also violated the "fraudulent" prong of the Consumer Fraud Act in that its statements, advertisements, and representations regarding the utility and functionality of

SpeedyPC Pro—substantially similar to those depicted in Figures 1-4 and 10-16 and described in Paragraphs 15, 16, 18, 20, and 21—and the results of the software's scans are false and likely to deceive a reasonable consumer, as described in Section II above.

67.    Defendant's fraudulent, unfair, and unlawful conduct occurred during the marketing and sale of computer software products, and therefore occurred in the course of Defendant's business practices.

68.    Defendant's fraudulent, unfair, and unlawful conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for SpeedyPC Pro (or, at least, a portion thereof)—typically $39.94.

69.    Plaintiff seeks an order: (i) permanently enjoining Defendant from continuing to engage in the fraudulent, unfair and unlawful conduct described herein; (ii) requiring Defendant to pay actual and compensatory damages; and (iii) requiring Defendant to pay interest, attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Fraudulent Inducement**
**(On behalf of Plaintiff and the Class)**

70.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71.    As depicted in Figures 1-4 and 10-16, and throughout all Counts of this Complaint, SpeedyPC has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

72.    To induce Plaintiff and the Class to purchase and continue to use SpeedyPC Pro, SpeedyPC affirmatively represented to Plaintiff and the Class that SpeedyPC Pro possessed certain utility. Specifically, SpeedyPC represented that SpeedyPC Pro would accurately scan Plaintiff's and the Class's computers for harmful errors and problems, increase their computers'

speed and stability, protect their computers' security, and otherwise perform the beneficial tasks described in Section II above. Further, through SpeedyPC Pro itself, SpeedyPC affirmatively represented that the health of Plaintiff's and the Class's computers was poor and that numerous errors and problems were causing their computers "Serious" or "Critical" harm, thus requiring the purchase and continued use of the full version of the software.

73.     SpeedyPC's affirmative representations were, in fact, false. In particular, SpeedyPC Pro does not increase a computer's performance and stability in the manner SpeedyPC described, nor does it protect the user's security as represented. Likewise, SpeedyPC Pro's representations upon installation were false, because it had not performed any meaningful evaluation of Plaintiff's and the Class's computers when it warned them of the supposed need for computer repair.

74.     The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

75.     As SpeedyPC Pro's developer, SpeedyPC knew or should have known that its representations about SpeedyPC Pro's utility were false. SpeedyPC designed its public representations to mislead consumers about SpeedyPC Pro's utility, and programmed SpeedyPC Pro (both the free trial and full registered versions) to falsely report computer errors and problems, and to deceive users about their computers' system health, performance, and security.

76.     SpeedyPC made its misrepresentations to induce Plaintiff and the Class to rely on them by purchasing, and continuing to use, SpeedyPC Pro.

77.     As consumers lacking the requisite technical expertise to independently gauge SpeedyPC Pro's underlying functionality, and taking SpeedyPC's statements at face value,

Plaintiff and the Class justifiably relied upon SpeedyPC's representations by purchasing and continuing to use SpeedyPC Pro. They would not have purchased, nor continued to use, SpeedyPC Pro but for the representations that their computers were in need of repair and that SpeedyPC Pro was capable of making such repairs.

78.     By using these misleading marketing tactics, and exaggerated and misleading in-software representations, SpeedyPC has engaged in practices designed to mislead consumers into purchasing, and continuing to use, SpeedyPC Pro.

79.     As a result of their reasonable reliance on SpeedyPC's representations, Plaintiff and the Class have been damaged in the amount of SpeedyPC Pro's purchase price (typically $39.94), or at least a portion thereof.

80.     Plaintiff therefore prays for relief in the amount of the difference between the purchase price they paid for SpeedyPC Pro and its actual value.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (On behalf of Plaintiff and the Class)

81.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

82.     Plaintiff and the members of the Class entered into agreements with SpeedyPC whereby SpeedyPC agreed to sell, and Plaintiff and the members of the Class agreed to purchase, the full version of the SpeedyPC Pro software that would detect and remove legitimate computer errors and problems from Plaintiff's and the Class's computers. Specifically, SpeedyPC agreed to sell Plaintiff and the Class software that was purportedly designed to increase the speed, performance and stability of their computers and also to detect and repair a variety of harmful computer errors, as depicted in Figures 1-4 and 10-16, and otherwise described in Section II above.

83.     Based on the foregoing offer and representations, Plaintiff and the Class agreed to purchase the SpeedyPC Pro software. That is, Plaintiff and the Class paid, and SpeedyPC accepted, SpeedyPC Pro's purchase price (typically $39.94), and therefore performed their obligations under the contracts.

84.     SpeedyPC breached its contracts with Plaintiff and the Class by designing the full version of the SpeedyPC Pro software to mischaracterize the true condition of computers and further by failing to provide software that performed the tasks depicted in Figures 1-4 and 10-14, and otherwise described in Section II above. These obligations were material terms of the agreement.

85.     SpeedyPC did not honor these obligations as SpeedyPC Pro did not increase the speed, performance, and stability of Plaintiff's and the Class's computers, nor did it protect against privacy risks or remove harmful system errors. That is, SpeedyPC Pro did not actually perform the beneficial tasks depicted in Figures 1-4 and 10-14, and otherwise described in Section II above, as SpeedyPC represented it would.

86.     Likewise, Illinois contract law recognizes the implied covenant of good faith and fair dealing in every contract. Thus, implicit in its contracts with Plaintiff and the Class were provisions prohibiting Defendant from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the agreement.

87.     Defendant acted in bad faith and breached these provisions of the agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations, as described herein, and instead, providing software that was designed to produce inaccurate errors and status reports, and which was incapable of repairing the purported errors as advertised.

88.     Furthermore, Defendant was under an implicit obligation to comply with 815 ILCS 505/1, *et seq*., to be truthful in its advertisements, and to accurately disclose the functionality and utility of its software. SpeedyPC did not honor any of these obligations.

89.     Defendant breached the implied covenant of good faith and fair dealing by failing to: (i) provide a full version of the software that would perform the beneficial tasks depicted in Figures 1-4 and 10-14, and otherwise described in Section II above; (ii) accurately inform consumers about the condition of their computers; and (iii) fully comply with the proscriptions of applicable statutory law.

90.     The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Class economic injury and other damages, including in the form of the purchase price (or at least a portion thereof) of the SpeedyPC Pro software, because they purchased a product that does not perform as SpeedyPC promised, and therefore lacks the utility contracted for.

### FOURTH CAUSE OF ACTION
### Unjust Enrichment
### *In the alternative to Breach of Contract*
### (On behalf of Plaintiff and the Class)

91.     Plaintiff incorporate allegations 1–80 as if fully set forth herein.

92.     If the Court finds Plaintiff's and the Class's contracts with Defendant invalid, non-existent, or unenforceable, Plaintiff and the members of the Class may be left without any adequate remedy at law.

93.     Plaintiff and the Class have conferred a benefit upon SpeedyPC in the form of the money it charged and collected from them for the purchase of the full registered version of the SpeedyPC Pro software, which did not and could not perform as SpeedyPC promised.

94.     SpeedyPC appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

95.     Under principles of equity and good conscience, SpeedyPC should not be permitted to retain the monies belonging to Plaintiff and the Class that it unjustly received as a result of its wrongful conduct described herein.

96.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks restitution and disgorgement of all amounts by which SpeedyPC has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Archie Beaton on behalf of himself and the Class, respectfully requests that this Court enter an order (or orders):

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Beaton as class representative, and appointing his counsel as class counsel;

B.     Declaring that Defendant's actions, as set out above, constitute (i) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, (ii) fraudulent inducement, (iii) breach of contract, and (iv) unjust enrichment (in the alternative to breach of contract);

C.     Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting SpeedyPC from engaging in the wrongful and unlawful acts described herein;

D.     Awarding damages to Plaintiff and the Class in an amount to be determined at trial, or, in the alternative, awarding restitution to Plaintiff and the Class in an amount to be

determined at trial, and requiring that SpeedyPC disgorge all amounts by which it was unjustly enriched;

     E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

     F.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

     G.     Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

     Respectfully submitted,

     **ARCHIE BEATON**, individually and on behalf of all others similarly situated,

Dated: November 20, 2013     By: /s/ Benjamin H. Richman
     One of Plaintiff's Attorneys

     RAFEY S. BALABANIAN
     rbalabanian@edelson.com
     BENJAMIN H. RICHMAN
     brichman@edelson.com
     CHANDLER R. GIVENS
     cgivens@edelson.com
     DAVID I. MINDELL
     dmindell@edelson.com
     EDELSON LLC
     350 North LaSalle, Suite 1300
     Chicago, Illinois 60654
     Telephone: (312) 589-6370
     Facsimile: (312) 589-6378