## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, | Case No. 1:13-cv-08389 |
| *Plaintiff*, | Honorable Andrea R. Wood |
| *v.* | |
| SPEEDYPC SOFTWARE, a British Columbia company, | |
| *Defendant*. | |

## PLAINTIFF BEATON'S RESPONSE IN OPPOSITION TO
## DEFENDANT SPEEDYPC SOFTWARE'S MOTION TO DISMISS

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................1

**FACTUAL BACKGROUND** ...............................................................................3

I.      **SpeedyPC Misrepresents the Software's Functional Capabilities** ................................3

II.     **Plaintiff Beaton Relied Upon SpeedyPC's Misrepresentations in Purchasing and Continuing to Use the SpeedyPC Pro Software** ................................5

III.   **Plaintiff's Computer Forensic Expert Confirmed that the Software Does Not Function as Advertised** ................................5

IV.   **This is not the First Lawsuit Against SpeedyPC Related to its Deceptive Design and Marketing Practices, and SpeedyPC is by no Means Alone in its Conduct** ................................6

**ARGUMENT** ......................................................................................................7

I.      **Legal Standard** ................................7

II.     **Beaton Sufficiently Pleads His Fraud-Based Claims** ................................7

      A.   SpeedyPC's reliance on the *Bilodeau* and *Kulesa* matters is misplaced ................................7

      B.   Beaton's Complaint satisfies Rule 9(b)'s heightened pleading requirement ................................9

      C.   Beaton sufficiently pleaded his ICFA claim ................................12

III.   **Beaton Sufficiently Pleaded His Breach of Contract Claim** ................................13

IV.   **Beaton Sufficiently Pleaded His Unjust Enrichment Claim** ................................15

**CONCLUSION** ................................16

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................7

**United States Circuit Court of Appeals Cases:**

*AncorBank, FSB v. Hofer*, 649 F.3d 610 (7th Cir. 2011) .............................................9

*Assoc. Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841 (7th Cir. 2007) ..........................14

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011) ........................................15

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ..........................13 n.8

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) ....................................7

*TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822 (7th Cir. 1998)....................15

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) ..................................14

**United States District Court Cases:**

*Bilodeau v. McAfee, Inc., et al*,
    No. 12-cv-04589, 2013 WL 3200658 (N.D. Cal. June 24, 2013)...................................7, 8

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996)............................................12

*De Falco v. Vibram USA, Inc.*,
    No. 12-cv-7238, 2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) ..................................13 n.8

*Gross v. Symantec Corp.*, No. 12-cv-00154 (N.D. Cal.) ................................................2 n.2, 9 n.7

*Hall v. TuneUp Corp.*, No. 13-cv-01804 (N.D. Ill.) ............................................. *passim*

*Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900 (N.D. Ill. 2011) ......................12, 13

*Kulesa v. PC Cleaner, Inc.*, No. 8:12-cv-00725 (C.D. Cal.) .............................................2 n.2, 7, 8

*Laborers' Pension Fund v. Glendale Assoc., Ltd.*,
    No. 10-cv-7371, 2011 WL 2976792 (N.D Ill. July 14, 2011) ......................................9-10

*LaGarde v. Support.com, Inc.*, No. 3:12-cv-00609-JSC (N.D. Cal.)........................................2 n.2

*Ledet v. Ascentive, LLC*, No. 2:11-cv-294-PBT (E.D. Penn.) .................................................2 n.2

*Parker v. iolo Technologies,* No. 12-cv-00984 (C.D. Cal.) ...................................................8 n.6

*Robichaud v. SpeedyPC Software*, No. 12-cv-04730 (N.D. Cal.) ................................1, 2, 6, 11

*Simonian v. Webser-Stephen Prods. Co.*, 272 F.R.D. 218 (N.D. Ill. 2011).....................................9

*Sloan v. Vill. of Hickory Hills, Illinois*,
    No. 07-cv-7038, 2008 WL 4089966 (N.D. Ill. Aug. 27, 2008) ........................................16

*Webb, et al. v. Cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.) ..................................2 n.2

*Worley v. Avanquest N. Am., Inc.*, No. 12-cv-04391 (N.D. Cal) ................................................9 n.6

**State Court Cases:**

*Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.).............2 n.2

*Horwithz v. Sonnenschein Nath and Rosenthal LLP*,
    926 N.E.2d 934 (Ill. App. Ct. 2010) ...........................................................................14 n.9

## <u>INTRODUCTION</u>

This action challenges Defendant SpeedyPC Software's ("Defendant" or "SpeedyPC") deceptive design and marketing of its SpeedyPC Pro utility software ("SpeedyPC Pro" or the "Software"). The fraud begins with SpeedyPC's misrepresentations—found in online advertisements and on its website—regarding the supposed functionality of the Software (i.e., that it is capable of, *inter alia*, accurately detecting, identifying and repairing harmful errors, eliminating freezes and crashes, and improving a computer's overall efficiency and performance). From there, SpeedyPC offers consumers a free trial version of the Software to "scan" their computers for any errors or threats that may be affecting the machines' performance. For its part, the free scan always reports that users' computers are afflicted with numerous errors and problems—the very same errors and problems SpeedyPC Pro is advertised to fix—and in need of immediate repair. Finally, SpeedyPC represents that the problems detected can be remedied with the purchase and installation of the full version of the Software.

The rub is: neither the free nor full versions of the Software perform as advertised. Instead, SpeedyPC designed both to *invariably* report and exaggerate the existence of errors and threats on users' computers to induce them into purchasing (and continuing to use) the product. As a result, Beaton and the putative class he seeks to represent have all been damaged in that they were induced to pay for Software that could not perform as SpeedyPC promised and was not worth its purchase price.

As Plaintiff forecasted at the initial status conference, SpeedyPC has now moved to dismiss each of his claims in this matter, raising many of the same arguments it asserted, and that were rejected in their entirety, in the *Robichaud v. SpeedyPC Software* matter previously pending against it in the Northern District of California. *See* No. 12-cv-4730, Dkt. 39.[1] In particular, SpeedyPC argues (i) that

---

[1]     Attached hereto as Exhibit 1 is a true and accurate copy of the court's order denying SpeedyPC's motion to dismiss in the *Robichaud* matter.

Beaton's fraud claims fail to meet the heightened pleading requirements of Rule 9(b), (ii) that his

Illinois Consumer Fraud Act ("ICFA") claim fails because he has not established that he was harmed

by SpeedyPC's alleged conduct, (iii) that he has failed to establish that SpeedyPC breached the parties'

contract for sale of the Software, and (iv) in light of the supposed shortcomings of his fraud and ICFA

claims, Beaton has failed to state a claim for unjust enrichment. As in *Robichaud*—and numerous

similar cases filed against SpeedyPC's industry competitors[2]—each of these arguments come up short.

First, Beaton has sufficiently pleaded the who, what, when, where and how of

SpeedyPC's fraudulent scheme in full satisfaction of Rule 9(b)'s heightened pleading

requirements. In addition, Beaton adequately states a claim for SpeedyPC's violations of the

ICFA inasmuch as he alleges that he was harmed in the form of the monies he overpaid for the

---

[2]     Not surprisingly, courts throughout the country, including in this District, have rejected similar
arguments by SpeedyPC's industry competitors. *See, e.g., Hall v. TuneUp Corp.*, No. 13-cv-01804, Dkt. 40
(N.D. Ill. Apr. 6, 2013) (J. Der-Yeghiayan). Several of the lawsuits against SpeedyPC's competitors have also
resulted in class action settlements providing refunds to class members together with industry-leading reforms
when it comes to the design and marketing of such software. To date, nationwide class action settlements
have been reached in the following cases: (i) *Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779
(Cir. Ct. Cook Cnty., Ill.) (Hon. K. Pantle, presiding) (Creating $9.75 million settlement fund from which
class members could make claims for $10 for each product purchased, requiring Defendant to provide
consumers with enhanced disclosures regarding the functionality of the software at issue, and obtaining
changes to the software itself; settlement finally approved on Sept. 13, 2011); (ii) *Webb, et al. v.
Cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.) (Creating $4 million settlement fund from which
class members could make claims for $8 for each product purchased and requiring defendants to provide
consumers with enhanced disclosures regarding the functionality the software at issue; settlement finally
approved on December 7, 2012); (iii) *LaGarde v. Support.com, Inc.*, No. 3:12-cv-00609-JSC (N.D. Cal.)
(Creating $8.5 million settlement fund from which class members could make claims for $10 for each
product purchased, providing three (3) free months of Support.com's anti-spyware software, requiring
defendant to provide consumers with enhanced disclosures, and ensuring certain changes to the software
itself; settlement finally approved on May 13, 2013); (iv) *Ledet v. Ascentive, LLC*, No. 2:11-cv-294-PBT
(E.D. Penn.) (Creating $9.6 million settlement fund from which class members could make claims for
$18, requiring defendant to provide consumers with enhanced disclosures, and securing certain changes to
the software itself; settlement finally approved on November 19, 2012); (v) *Gross v. Symantec Corp.*, No.
3:12-cv-00154 (N.D. Cal.) (Creating $11 million settlement fund from which class members can make
claims for $9 for each product purchased, providing three (3) free months of Norton Antivirus software,
requiring defendant to provide consumers with enhanced disclosures, and ensuring certain changes to the
software itself; preliminary approval granted on May 28, 2013); and (vi) *Kulesa v. PC Cleaner, Inc.*, No.
8:12-cv-00725 (Allowing class members to make claims for $10 for each product purchased, providing
three (3) months of free access to PC Antivirus Pro 2013, requiring defendant to provide consumers with
enhanced disclosures, and ensuring certain changes to the software itself; preliminary approval granted on
February 10, 2014).

Software as a result of SpeedyPC's misrepresentations about its functionality and the health of

his computer. Further, Beaton alleges that SpeedyPC breached the parties' contract for sale of the

Software by failing to provide a product that functioned as promised. And finally, Beaton states a

claim for unjust enrichment (in the alternative to breach of contract) in that he alleges he

conferred a benefit upon SpeedyPC in the form of the monies he paid to purchase the Software,

which SpeedyPC has unjustly retained as a result of the fraud.

      For all of these reasons and as explained further below, SpeedyPC's motion to dismiss

should be denied in its entirety.

## FACTUAL BACKGROUND

**I.**      **SpeedyPC Misrepresents the Software's Functional Capabilities.**

      Through its advertisements, website, and in-software representations, SpeedyPC engages

in a three-part scheme to mislead consumers about the true functionality of its SpeedyPC Pro

software and induce them into purchasing (and continuing to use) the full version of the

Software. First, consumers who search the Internet for software to improve the performance of

their personal computers ("PCs") and repair common computer problems will encounter

SpeedyPC's representations—both in its online advertisements and on its website—that the

SpeedyPC Pro software can:

- "clean[] away all traces of your private and confidential information" (Compl. ¶¶ 18, 21);

- "find[ and] remove[] malware to make your PC safe and stable" (*id.* ¶ 18);

- "process performance problems, dangerous malware, privacy and junk files" and "take care" of them (*id.* ¶ 20);

- "improve[] PC startup times" (*id.* ¶ 21);

- "optimize[] memory" (*id.*);

- "manage[] your computer's resources for improved performance" (*id.*);

- "eliminate clutter, error messages, freezing, crashes or erratic performance" (*id.*);

- "clean and optimize your computer for peak performance" (*id.* ¶ 43); and

- "oust[] dangerous malware, dispose[] of junk files, defrag[] your hard drive." (*Id.*)

SpeedyPC then offers consumers a free diagnostic scan—or "trial" version of the Software—that will supposedly identify and report the types of errors the Software is advertised to fix. (*Id.* ¶¶ 23-24.) But, the results of the free diagnostic scan are the same for every user: it reports that there are hundreds, if not thousands, of serious problems plaguing the PC, rendering its "Performance" and "Security" in "Serious" or "Critical" condition, and requiring immediate repair. (*Id.* ¶¶ 29-30, 31-36.) Those alarmist "assessments" are accompanied by graphical warnings representing the PC's overall status as "in the red." (*Id.* ¶¶ 28-29, 32.) Next, SpeedyPC represents that the errors detected can be "fixed", and the users' computers protected from similar problems in the future, if they pay for the full version of the Software (typically $39). (*Id.* ¶ 31.)

Despite SpeedyPC's representations, the free trial version of the Software does not accurately identify errors or other problems on a user's computer. Instead, SpeedyPC intentionally designed the Software to misrepresent and exaggerate the existence and severity of errors and problems on a consumer's PC so as to induce them to purchase the full version of the Software to fix them. (*Id.* ¶¶ 31, 36-37, 49.) Once purchased, the full version of the Software operates in a nearly identical manner and thus, lulls the consumer into a false sense of security that it is functioning as advertised. (*Id.* ¶ 37.) Because the full version is designed in the same deceptive manner, it is incapable of repairing the supposed errors and problems detected, or otherwise functioning as advertised. (*Id.*)

II.    **Plaintiff Beaton Relied Upon SpeedyPC's Misrepresentations in Purchasing and Continuing to Use the SpeedyPC Pro Software.**

In or around August 2012, Plaintiff Beaton searched the Internet for software that could repair and optimize his computer. (*Id.* ¶ 42.) During his search, he encountered one of SpeedyPC's online advertisements, through which SpeedyPC represented that the SpeedyPC Pro software was capable of improving his computer's overall health, boosting its speed, optimizing its performance, detecting and removing malware, and protecting his confidential information. (*Id.* ¶¶ 16, 18, 42.) After clicking on the advertisement, Beaton was directed to SpeedyPC's website (www.SpeedyPC.com), where he was presented with and viewed its same representations about the Software's supposed functionality. (*Id.* ¶ 43.) Relying upon those representations, Beaton downloaded the free trial version of the Software and performed a scan of his computer. (*Id.* ¶¶ 44-45.) Upon completing the scan, the Software reported that Beaton's PC's "Performance" and "Security" levels were in the red (meaning in "Serious" or "Critical" condition) and required immediate repair. (*Id.*) Beaton was then informed that the reported issues could be fixed if by purchasing and using the full version of the Software, which he did at a price of $39.94. (*Id.* ¶¶ 45-47.) Despite his continued use of the full version of the Software, however, the performance of Beaton's computer never improved. (*Id.* ¶ 49.)

III.   **Plaintiff's Computer Forensic Expert Confirmed that the Software Does Not Function as Advertised.**

Prior to filing this case, Plaintiff (through his counsel) engaged a computer forensic expert to examine the Software. (*Id.* ¶ 31.) The expert performed a series of tests on a *brand new* computer and confirmed that both the free trial and full registered versions of SpeedyPC Pro were designed to *always* report that various errors and problems plague users' computers and consequently, that the machines are damaged or at risk. (*Id.* ¶¶ 31-33, 36.) In so doing, the Software identifies harmless and naturally recurring system files as problems causing damage,

5

artificially inflates the number of errors and security risks, and reports that computers have poor "Security" and "Performance", all without ever performing any meaningful analysis of the system. (*Id.* ¶¶ 34-36.) In the end, the expert found that the full version of the Software performs just two functions—neither of which square with SpeedyPC's representations: it acts as a registry cleaner[3] and removes superfluous "temporary" files from a user's hard drive. (*Id.* ¶ 22.)

## IV. This is not the First Lawsuit Against SpeedyPC Related to its Deceptive Design and Marketing Practices, and SpeedyPC is by no Means Alone in its Conduct.

This is not the first time SpeedyPC has been sued for the conduct at issue here. Beaton's counsel previously prosecuted a putative class action against SpeedyPC for nearly identical claims in the *Robichaud* matter.[4] SpeedyPC moved to dismiss the claims in that case as well, and asserted many of the same arguments now before this Court. After full briefing by the parties, the *Robichaud* court rejected each of those arguments and found that the plaintiff's allegations regarding SpeedyPC's deceptive programmatic design and marketing—allegations nearly identical to those in Beaton's Complaint—were sufficient to state claims for common law fraud, violations of California's consumer protection statute, and breach of contract. *See* Exhibit 1.

Moreover, SpeedyPC is not alone in the sorts of software design and marketing practices at issue here. The "utility software" industry has been fraught with variations of these tactics for over a decade. Only recently have software developers—like SpeedyPC and its competitors—been called to

---

[3]      The "registry" is a database of configuration settings that helps facilitate the operation of computer applications on the operating system. A "registry key" can be thought of as a placeholder within the registry that contains a value, such as the default font size in Microsoft Word. In any event, SpeedyPC's representations that registry keys are causing any appreciable harm to a user's computer are simply false. Indeed, research commissioned by Plaintiff's counsel shows that it would require close to 100,000 empty registry keys to cause any statistically significant impact on a user's computer. Simply put, the representation that small numbers of empty registry keys are causing "harm" is deceptive at best.

[4]      As Plaintiff's counsel explained during the initial status conference in this case, the plaintiff in *Robichaud* voluntarily dismissed her claims following the court's denial of SpeedyPC's motion to dismiss—not because of any substantive shortcoming in her claims, but because she later discovered that just days before filing suit, SpeedyPC had issued her a full refund of the monies she paid for the Software.

account for their profiting off of consumers who lack the necessary knowledge and expertise to identify the fraudulent nature of these products. (*Id.*) Indeed, as SpeedyPC points out, numerous lawsuits have been filed against many of its well-known competitors (*e.g.*, Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel here—alleging similar claims related to the fraudulent design and marketing of so-called utility software. (Compl. ¶ 40.) Contrary to SpeedyPC's accusations that this case is just a cut-and-paste job by Plaintiff's counsel and their "hired-gun" expert, however, SpeedyPC's conduct is very much real and has resulted in consumers collectively being tricked out of millions of dollars. Not surprisingly, the broader litigation in the industry has not only resulted in multi-million dollar class action settlements, but also in industry-changing reforms to the software products at issue. (*Id.*; *see also supra* n.2.)

## ARGUMENT

### I.    Legal Standard.

On a motion to dismiss, courts must view all facts in a complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, "[t]o survive a motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 1941 (citing *Twombly*, 550 U.S. at 570). As explained below, Beaton's Complaint easily meets and exceeds federal pleading requirements.

### II.    Beaton Sufficiently Pleads His Fraud-Based Claims.

A.    SpeedyPC's reliance on the *Bilodeau* and *Kulesa* matters is misplaced.

As an initial matter, SpeedyPC's reliance on the dismissals *without prejudice* in the *Bilodeau v. McAfee, Inc., et al*, No. 12-cv-04589, 2013 WL 3200658 (N.D. Cal. June 24, 2013)

and *Kulesa*, No. 12-c-00725, matters is misplaced. While the pleadings in the three cases are similar in that they are all aimed at recovering on behalf of consumers who paid for utility software that did not perform as advertised, the similarities end there.

First, the level of specificity in the three complaints could not be more different. Whereas the pleadings in *Bilodeau* and *Kulesa*—at least those referenced by SpeedyPC[5]—were found to include what the courts viewed as less substantive allegations regarding the marketing at issue and the software's functionality, Beaton's complaint here includes nearly fifty (50) allegations spanning eighteen (18) pages, supplemented by sixteen (16) screenshots and more than a dozen direct quotes from SpeedyPC's marketing materials, website and in-software representations. (*See generally* Compl.) That detail is aimed at specifically (i) identifying the representations made by SpeedyPC (*id.* ¶¶ 20-21, 24, 43); (ii) distinguishing between the free trial and full registered versions of the Software and their functionality (*id.* ¶¶ 4-5, 24-25, 31-32, 36-38, 49); (iii) describing the methodologies used by the Software and how the results of the scans are reported (*id.* ¶¶ 31-37); and (iv) explaining that those processes are ultimately deceptive and unreliable. (*Id.* ¶ 2, 19-38).

Additionally and contrary to SpeedyPC's contentions, Beaton goes to great lengths to describe his own experience with the Software.[6] He pleads why he was looking for the Software

---

[5]    SpeedyPC fails to note, for example, that it relies only on the *Kulesa* court's order dismissing the *first amended complaint* in that case. Importantly, the court later allowed the plaintiff's fraud claims to proceed, finding that the quotations of the defendant's misrepresentations, numerous screenshots, and descriptions of the plaintiff's own experiences that were included in her subsequent pleadings—like those in Beaton's Complaint—were more than sufficient to satisfy Rule 9(b)'s heightened pleading requirement. *See Kulesa*, No. 12-cv-00725, Dkt. 57, at 5 (C.D. Cal. Jan. 7, 2013). It also bears noting that since then, the parties in the *Kulesa* matter have reached a proposed class action settlement, which received preliminary approval by the court on February 10, 2014. *Id.* at Dkt. 88.

[6]    SpeedyPC's reliance upon *Parker v. iolo Technologies,* No. 12-cv-00984, Dkt. 63 (C.D. Cal. Aug. 20, 2012)*,* in this regard is misplaced as well. (Def. Mot. at 8.) Indeed, the *Parker* dismissal was based upon the court's view that the purchase of software of a diminished value was not sufficient injury to establish Article III standing. No other court considering that issue in these cases has agreed— including the *Parker* court's sister-court in the *Kulesa* matter. *See* No. 12-cv-00725, Dkt. 63, at 6-7; *see*

(*id.* ¶ 42), how he found it (*id.*), where he found it (*id.*), what representations he viewed about it (*id.* ¶¶ 42-43), why he downloaded the free trial version (*id.* ¶ 44), the results of the free diagnostic scan (*id.* ¶ 44), why he purchased the full version of the Software (*id.* ¶¶ 46-47), and how the full version of the Software operated on his computer. (*Id.* ¶ 47.) Once again, Beaton also provided screenshots of the advertisements and representations he relied on in downloading the free trial version of the Software (*id.* ¶¶ 27, 43), as well as error reports similar to the one he relied on in purchasing (and continuing to use) the full version of the Software. (*Id.* ¶¶ 29, 32, 34.)

In light of these differences, SpeedyPC's reliance on the dismissal orders in *Bilodeau* and *Kulesa* is misplaced and should not stand as a basis to dismiss the claims asserted here.[7]

B.    Beaton's Complaint satisfies Rule 9(b)'s heightened pleading requirement.

In any event, to adequately allege a claim for fraud, Rule 9(b) requires that a plaintiff "state the identity of the person who made the misrepresentation, the time, place, and context of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Simonian v. Webser-Stephen Prods. Co.*, 272 F.R.D. 218, 220 (N.D. Ill. 2011). In other words, plaintiffs must state the "who, what, when, where, and how" of the alleged fraud. *AncorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citations omitted); *see also*

_____

*also Worley v. Avanquest N. Am., Inc.*, No. 12-cv-04391, Dkt. 48, at 3-4 (N.D. Cal. Feb. 5, 2013). In any event, SpeedyPC has not challenged Beaton's standing in this case nor could it reasonably do so.

[7]    SpeedyPC's reliance on the orders in the *Gross v. Symantec Corp., et al.*, No. 12-cv-00154 (N.D. Cal.) and *Worley, et al. v. Avanquest N. Am., Inc.*, No. 12-cv-04391 cases is also questionable. Indeed, SpeedyPC fails to explain that the *Gross* court found that any pleading defects were "curable", that the plaintiff, in fact, filed an amended pleading, that the parties have since entered into a nationwide class action settlement, and that they will appear for a final fairness hearing before the court on March 17th. With respect to *Worley*, SpeedyPC similarly fails to mention that the court ultimately found the plaintiffs' amended pleadings sufficient to state a claim for, *inter alia*, fraudulent inducement, and that the case is now well into the discovery phase—which has included the court's issuance of an order compelling Avanquest to preserve and produce the entirety of the source code base for the software products at issue there.

*Laborers' Pension Fund v. Glendale Assoc., Ltd.*, No. 10-cv-7371, 2011 WL 2976792, at *6 (N.D Ill. July 14, 2011) (holding that fraud allegations are sufficient if they "provide a general outline of the alleged fraud scheme….").

The Complaint in this case meets—and exceeds—those standards. First, Beaton alleges *when* he searched the Internet for software to "repair and optimize his computer"—in August of 2012. (Compl. ¶ 42.) Next, he specifies *what* representations he saw—namely, that the Software could "optimize [his] computer for peak performance," "oust[] dangerous malware," "improve[] PC startup times," "clean[] away all traces of [his] private and confidential information," and "eliminate clutter, error messages, freezing, crashes or erratic performance…." (*Id.* ¶¶ 21, 43.) Beaton also identifies *where* he saw the representations—as online advertisements when searching the Internet for utility software and on SpeedyPC's website (www.SpeedyPC.com). (*Id.* ¶¶ 42-43.) And, he alleges what software he purchased as a result of his reliance on those representations—SpeedyPC Pro. (*Id.* ¶ 47.) As a result, Beaton (*who*) plainly alleges that in August 2012 (*when*) he saw online advertisements and representations (*what*), on the Internet and SpeedyPC's website (*where*), regarding the supposed utility of the SpeedyPC Pro software, and that he purchased the Software in reliance on Defendant's representations that it could perform the numerous functions advertised (*how*). These allegations alone satisfy Rule 9(b). *See Hall*, No. 13-cv-01804, Dkt. 40, at 6.

Nevertheless, Beaton goes further and lays out, in detail, the role of the Software's diagnostic scans (both the free trial and full versions) and provides sample screenshots of what consumers—like himself—were presented with while using the Software. Figure 6, for instance, depicts the typical screen individuals see once the Software performs a diagnostic scan—namely, that the "computer requires immediate attention" because of its "Critical" condition, while also

representing that the supposed problems can be fixed by registering the full version of the Software. (Compl. ¶ 29.) Figure 7 shows how SpeedyPC exaggerates the threats various files pose to a user's computer, characterizing (hundreds or thousands of) harmless files as critical issues, graphically depicting a system's status as "in the red," and presenting consumers with alarming warning signs. (*Id.* ¶ 32.) It is these reports (in addition to the advertising described above) that lead reasonable consumers to believe (as Beaton did) that the problems afflicting their computers will be resolved by purchasing and using the full version of the Software.

Unfortunately for those consumers, as the Complaint details, SpeedyPC's advertisements and in-software representations are false. The Software does not actually perform a meaningful scan of an individual's computer. Rather, it performs just "two main functions: it's a registry cleaner and it removes superfluous 'files' from a user's hard drive", neither of which will "remove malware, credibly protect a user's privacy, remove serious security threats, nor prevent damaging PC errors." (*Id.* ¶ 22.) Indeed, even though Beaton purchased the full version of the Software and repeatedly scanned and "fixed" the supposed problems it detected, "his computer's performance did not improve." (*Id.* ¶ 49.)

With these details—even going so far as to provide actual screenshots of the fraudulent statements and images of the Software in operation—it is hard to imagine what more could be required of Beaton when it comes to pleading his fraud claims. Not surprisingly, courts have found nearly identical allegations against SpeedyPC and its industry competitors sufficient to state a claim for fraud. *See, e.g., Robichaud*, Exhibit 1 at 15-16; *see also Hall*, No. 13-cv-01804, Dkt. 40, at 6. The result should be no different here.

11

C.      Beaton sufficiently pleaded his ICFA claim.

SpeedyPC next argues that Beaton's claims for its violations of the Illinois Consumer Fraud Act should be dismissed because Beaton has not established that he was deceived by SpeedyPC's conduct nor harmed as a result of any deception. These arguments fail too.

First, as described in Section II.B *supra*, Beaton sufficiently alleges that he was deceived by SpeedyPC's representations. That is, he not only viewed SpeedyPC's representations in its online advertisements and on its website—including, that the Software "would 'clean[], optimize[] and protect [his] computer for improved speed, performance and operations' as well as protect it from viruses, malware and privacy threats" (Compl. ¶ 44)—but he actually relied upon them in downloading and installing the free trial version of the Software. (*Id.* ¶¶ 44-45.) After running the free scan, Beaton was informed that his PC's "Performance" and "Security" levels were in "Serious" or "Critical" condition and "required immediate attention." (*Id.* ¶ 45.) Relying upon these representations as well (*id.* ¶ 46), Beaton paid SpeedyPC approximately $39.94 to register a full version of the Software. (*Id.* ¶ 47.) Lacking the requisite knowledge and expertise to independently assess his computer's health or the Software's utility, Beaton reasonably believed that SpeedyPC's representations about the Software's functional capabilities and the health of his computer were truthful, and was deceived inasmuch as the Software could not function as advertised and did not provide a credible assessment of his computer's health. (*Id.* ¶¶ 44-48.) Nothing more need be pleaded in this respect. *See Hall*, No. 13-cv-01804, Dkt. 40, at 7-8 (finding that a plaintiff who viewed and relied upon alleged misrepresentations in purchasing and continuing to use utility software stated a claim for a defendant's violation of the ICFA); *see also Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996)) (holding that deception under the ICFA can be

established "where a buyer would have acted differently knowing [truthful] information, or if [the information is] the type…upon which a buyer would be expected to rely in making a decision…").

Next, Beaton also sufficiently alleges that he was harmed as a result of SpeedyPC's deceptive conduct inasmuch as he would not have purchased the full version of the Software had he known its true utility (or lack thereof). As a result, he seeks actual damages "in the form of the price paid for SpeedyPC Pro (or, at least, a portion thereof)." (Compl. ¶ 68); *see also Jamison*, 675 F. Supp. 2d at 912 ("The Court finds that this harm—the purchase price of the Video Monitors—is sufficiently concrete to meet the 'actual damages' pleading requirement under the ICFA.").

Accordingly, Beaton's claim for violations of the ICFA should stand as well.[8]

## III.     Beaton Sufficiently Pleaded His Breach of Contract Claim.

SpeedyPC next argues that Beaton failed to sufficiently state a claim for breach of contract because he does not specify how SpeedyPC breached the parties' contract for the sale of the Software based on how the Software performed on *his* computer. This argument is a red herring. To state a claim for breach of contract, Beaton was required to allege: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of

---

[8]     Additionally, SpeedyPC contends that certification of a nationwide class of individuals under the ICFA would be inappropriate. (Def. Mot. at 11.) Setting aside that argument's prematurity at this stage of the proceedings, *see De Falco v. Vibram USA, Inc.*, No. 12-cv-7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) (collecting cases and holding that class issues "are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification."), it also fails to account for the fact that class definitions may be amended (or subclasses created) later in the proceedings based upon, for example,  information learned in discovery or to address issues with respect to application of various jurisdictions' law. *See, e.g., Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) (finding that even at the class certification stage, an overbroad class definition "should be solved by refining the class definition rather than by flatly denying class certification on that basis."). Regardless, concerns about whether a nationwide class is appropriate for certification is not a basis to dismiss the ICFA claim outright.

13

all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673

F.3d 547, 560 (7th Cir. 2012) (quoting *Assoc. Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d

841, 849 (7th Cir. 2007)). He does just that.

Beaton alleges the existence of a valid sales contract through which he agreed to

purchase, and SpeedyPC agreed to sell, software that would accurately scan his computer to

identify problems, remove malware, increase startup times, remove traces of private information,

and otherwise improve the overall health and performance of his computer (the "contract").

(Compl. ¶¶ 82-84.) Beaton also alleges that he paid, and SpeedyPC accepted, the purchase price

of the Software—in his case, $39.94 (Beaton's "performance"). (*Id.* ¶ 83.) SpeedyPC breached

the parties' agreement by failing to provide software that could perform the functions promised

(the "breach"). (*Id.* ¶ 85.) Consequently, Beaton was damaged in the form of the monies he

overpaid for the Software ("damage"). (*Id.* ¶ 90.) Moreover and contrary to SpeedyPC's

assertions, Beaton does, in fact, describe how the Software failed to improve the performance of

*his* computer in particular.

Allegations like these have consistently been held sufficient to state a claim for breach of

contract and the result should be no different here. *See, e.g., Hall*, No. 13-cv-01804, Dkt. 40, at 9

(finding the plaintiff adequately pled a breach of contract claim when she "alleged that TuneUp

offered Hall a full version of the Software, that Hall accepted the offer to purchase the full

version of the Software, that Hall paid $29.99 in consideration for the Software, that TuneUp

represented that the Software was designed to detect, report, and fix computer problems, that the

Software did not perform as warranted, and that Hall sustained damages as a result.").[9] Thus,

Beaton's breach of contract claim should stand too.

---

[9]     Beaton also adequately alleges that SpeedyPC breached the implied covenant of good faith and
fair dealing, which "is implicit in every contract," *Horwithz v. Sonnenschein Nath and Rosenthal LLP*,

IV.     **Beaton Sufficiently Pleaded His Unjust Enrichment Claim.**

Finally, SpeedyPC argues that Beaton's unjust enrichment claim must fail because it is based upon the same allegations as his common law fraud and ICFA claims, which themselves are insufficiently pleaded. That argument misses its mark. As explained above, Beaton's fraud allegations are pleaded with more than sufficient specificity to support those claims and the same holds true with respect to unjust enrichment.

That aside, to state a claim for unjust enrichment, Beaton was required to allege that SpeedyPC "(1) received a benefit, (2) to [his] detriment, and (3) [its] retention of the benefit would be unjust." *See TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). Here, Beaton alleges that SpeedyPC received a benefit from him in the form of the $39.94 he paid to purchase the SpeedyPC Pro Software, and that SpeedyPC has retained that benefit. (Compl. ¶¶ 93-94.) He alleges further the retention of those monies is unjust, because SpeedyPC provided him Software that it knew (and intentionally designed such that it) does not (and cannot) perform the advertised functions. (*Id.* ¶ 9.)

Accordingly, Beaton has adequately pleaded his claim for unjust enrichment as well. *See Hall*, No. 13-cv-01804, Dkt. 40, at 11.

## CONCLUSION

For the foregoing reasons, Plaintiff Archie Beaton, respectfully requests that the Court enter an Order denying SpeedyPC's motion to dismiss in its entirety.[10]

---

926 N.E.2d 934 (Ill. App. Ct. 2010), by taking advantage of his inability to assess the deceptive nature of SpeedyPC's representations and the Software's functionality. Indeed, SpeedyPC's behavior deprived Beaton of receiving the "intended fruits of the contract"— software that would actually scan for, identify, and repair errors and optimize his computer—and therefore frustrated its purpose. (Compl. ¶¶ 86-89.)

[10]     In the event that the Court grants SpeedyPC's motion to dismiss (partially or otherwise), Beaton respectfully requests that the Court grant him leave to add further detail, additional claims, or otherwise

Respectfully submitted,

**ARCHIE BEATON**, individually and on behalf of all others similarly situated,

Dated: March 12, 2014

By: /s/ Benjamin H. Richman
      One of Plaintiff's Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Courtney C. Booth
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

---

take the necessary steps to cure any defects found by the Court in his pleadings. *See, e.g., Sloan v. Vill. of Hickory Hills, Illinois*, No. 07-cv-7038, 2008 WL 4089966 (N.D. Ill. Aug. 27, 2008) (holding that leave to amend should be freely given by courts).

16

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on March 12, 2014, I served the above and foregoing ***Plaintiff Beaton's Response in Opposition to Defendant SpeedyPC Software's Motion to Dismiss*** by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the court's CM/ECF electronic filing system, on this the 12th day of March, 2014.

/s/ Benjamin H. Richman

17