IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) SPEEDYPC SOFTWARE, a British Columbia company, ) ) ) Defendant. ) | No. 13-cv-08389<br><br>Judge Andrea R. Wood |

### MEMORANDUM OPINION AND ORDER

Plaintiff Archie Beaton has sued Defendant SpeedyPC Software ("SpeedyPC"), a Canadian computer software producer, alleging that it has engaged in fraudulent and deceptive marketing of SpeedyPC Pro (the "Software"), a software product that SpeedyPC claims diagnoses and repairs various computer errors. SpeedyPC has filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) (the "Motion") (Dkt. No. 16). For the reasons discussed below, the Motion is denied.

### BACKGROUND

This putative class action arises out of Beaton's purchase of a license to use the Software.[1] SpeedyPC promotes the Software through online advertisements and on websites as being capable of increasing computer speed and performance, removing harmful computer errors, and protecting users' privacy and security. (Compl. ¶ 15, Dkt. No. 1.) Beaton alleges that these representations do not reflect the Software's true capabilities. (*Id.* ¶ 22.) Instead, the

---

[1] The following facts are drawn from Beaton's class action complaint and accepted as true for the purposes of the Motion. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Software has two main functions: first, it is a registry cleaner;[2] and second, it removes superfluous "temporary" files from a user's hard drive. (*Id.*) According to Beaton, these functions "do not come close to squaring with SpeedyPC's representations about the functionality of SpeedyPC Pro." (*Id.*)

As alleged in his complaint, Beaton claims that SpeedyPC engages in a deceptive marketing scheme to induce consumers to purchase the Software. Online ads for the Software promise that the Software can, among other things, "[b]oost your PC's speed and performance," "[f]ind your PC's performance potential," and "improve[] your PC's health." (*Id.* ¶ 16.) Consumers who click on one of SpeedyPC's advertisements are directed to one of SpeedyPC's websites, which warns consumers about various risks to their computers. (*Id.* ¶ 17.) The websites recommend that consumers download the trial version of the Software to detect issues that the product is supposedly designed to identify and fix. (*Id.* ¶ 24.) Once a consumer downloads and runs the trial version of the Software, it displays hundreds or thousands of serious problems that it claims are affecting the computer and "require attention." (*Id.* ¶ 28.) After presenting the results of the diagnostic scan, the Software displays to the user a half-page warning with bold red letters stating: "SpeedyPC Pro has determined that your computer requires immediate attention!" and is in "Serious" or "Critical" condition. (*Id.* ¶ 29.) The user is then given the option to purchase the full version of the Software to fix and repair the supposedly harmful errors that have been detected. (*Id.*)

In August 2012, while browsing the Internet for software to repair and optimize his computer, Beaton encountered one of SpeedyPC's ads. (*Id.* ¶ 42.) Based on various representations made in the ad, Beaton went to one of SpeedyPC's websites, which presented

---

[2] Registry cleaner software is a type of utility program designed to remove unwanted or redundant items from the Microsoft Windows operating system registry. The "registry" is a database of configuration settings that help facilitate the operation of computer applications in the operating system. (*Id.* ¶ 21 n.1.)

more representations regarding the utility of the Software. (*Id.* ¶ 43.) Beaton includes in his complaint screenshots of several of these representations. One such screenshot makes the claim that the Software can "clean and optimize your computer for peak performance." (*Id.* ¶ 43 fig. 10.) Based on SpeedyPC's representations, Beaton downloaded and installed the Software. (*Id.* ¶ 44.) The Software scanned Beaton's computer and reported that it detected hundreds of serious errors, some of which were causing damage to the computer. (*Id.* ¶ 45.) The Software warned Beaton that these problems were decreasing his computer's performance and compromising his security, and urged him to purchase the Software to "fix" the problems. (*Id.*) Beaton clicked on a button labeled "Fix All," which forwarded him to a SpeedyPC website that urged him to register the Software to fix the problems identified. (*Id.* ¶ 46.) After reaching the registration webpage, SpeedyPC again represented to Beaton that it "detected some problems that needed to be fixed" and instructed him to "Register SpeedyPC Pro now!" (*Id.* (citing ¶ 43 fig. 10).) Relying on these representations about the Software's capabilities and his computer's condition, Beaton paid approximately $39.94 to activate the Software and repair the purported errors. (*Id.* ¶ 47.) After he downloaded the Software, every time Beaton ran it, the Software reported harmful errors that were adversely affecting his computer and that he needed to fix. The Software continued to report harmful errors even though Beaton repeatedly ran the program and "fixed" any errors that were found. (*Id.* ¶ 49.) Beaton's computer performance did not improve despite his repeatedly running the Software's scan. (*Id.*)

   In addition to his personal experience with the Software, Beaton, through his attorneys, also engaged a computer forensics expert to examine it. (*Id.* ¶ 31.) The expert concluded that the free and registered versions of the Software are designed always to report that a user's computer is severely damaged, regardless of the condition or type of computer on which the Software is

3

installed. (*Id.*) Beaton's expert further concluded that errors identified by the Software as "Serious" or "Critical" were not in fact credible threats to a computer's functionality. (*Id.*) The expert also used the Software to perform a diagnostic scan of a brand-new, never-used computer. (*Id.* ¶¶ 32-33.) After being run on the new computer, the Software reported the computer's overall performance as "poor," stated that 125 "problems require attention," and represented that at least some of those errors were causing "Serious" or "Critical" damage to the computer system. (*Id.* ¶¶ 32 fig. 7, 33.) Finally, Beaton's expert planted fake, innocuous errors on a computer. The Software registered these harmless errors as causing "Serious" or "Critical" damage to the computer. (*Id.* ¶ 34.)

Based on these allegations, Beaton filed the instant lawsuit on behalf of himself and a class of similarly-situated individuals, defined (with certain exceptions) to include "[a]ll individuals and entities in the United States who have purchased SpeedyPC Pro." (*Id.* ¶ 50.) The complaint asserts several causes of action on behalf of Beaton and the putative class: (1) an Illinois common law claim for fraudulent inducement; (2) a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*; (3) a claim for breach of contract; and (4) in the alternative to Beaton's breach of contract claim, a claim for unjust enrichment. The Court addresses the sufficiency of each claim in turn below.

## DISCUSSION

To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). The basic pleading requirement is set forth in Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled

4

to relief." Fed. R. Civ. P. 8(a)(2). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

In addition, Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to state the circumstances constituting the fraud "with particularity." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud." *AnchorBank*, 649 F.3d at 615 (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)). In other words, Rule 9(b) requires a plaintiff pleading fraud "to state 'the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni *Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

I.   **Plaintiff's Claim for Fraudulent Inducement**

Under Illinois state law, fraudulent inducement is a form of common law fraud. *Lagen v. Balcor Co.*, 653 N.E.2d 968, 972 (2d Dist. 1995). The elements of common law fraud in Illinois are: (1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intent to induce reliance on the statement; (4) reasonable reliance upon the truth of the statement; and (5) damages resulting from that reliance. *Id.* Because fraudulent inducement is a claim that sounds in fraud, it is subject to Rule 9(b)'s heightened pleading requirements. *Hoffman v. Nationwide Mut. Ins. Co.*, No. 10-cv-3841, 2011 WL 3158708, at *5 (N.D. Ill. July 26, 2011).

SpeedyPC challenges the sufficiency of Beaton's fraudulent inducement claim under the heightened pleading standard of Rule 9(b). This argument fails because the complaint more than adequately pleads the "who, what, when, where, and how" of the alleged fraud. For example, the complaint alleges that, in August 2012, Beaton encountered a series of advertisements containing claims made by SpeedyPC. (Compl. ¶ 42, Dkt. No. 1.) Beaton asserts that these advertisements claimed that SpeedyPC Pro could, among other things, "remov[e] malware and privacy files," "clean[] away . . . private and confidential information," and "improve[] PC startup times." (*Id.* ¶¶ 21, 42.) Beaton further alleges that, as a result of these representations, he visited the SpeedyPC Pro website, which made similar claims. (*Id.* ¶ 43 Figs. 10-16.) He includes in the complaint screenshots that are the same as, or substantially similar to, the alleged misrepresentations he viewed. (*Id.*) Beaton also specifies the manner in which he believes these representations to be false, both through his expert's analysis and his own experience, alleging that "every time Beaton ran SpeedyPC Pro, the Software reported that harmful errors were adversely affecting his computer and that he needed to 'fix' the errors using SpeedyPC Pro," but that "despite repeatedly running SpeedyPC Pro's scan, and purportedly 'fixing' the reported errors, his computer's performance did not improve." (*Id.* ¶ 49.) These allegations state the circumstances constituting SpeedyPC's alleged fraud with sufficient particularity as required under Rule 9(b).[3]

---

[3] In support of the Motion, Beaton identifies several lawsuits similar to this one but naming other defendants, filed in this jurisdiction and elsewhere. Courts in these other cases have found that allegations virtually identical to those here stated a claim under Rule 9(b). *See e.g., Hall v. TuneUp Corp.*, No. 13 C 1804, 2013 WL 4012642 (N.D. Ill. Aug. 6, 2013); *Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *10-12 (N.D. Cal. Mar. 05, 2013); *Worley v. Avanquest N. Am., Inc.*, No. C 12–04391 SI, 2013 WL 1820002, at *2-3 (N.D. Cal. Apr. 30, 2013). Despite the fact that Beaton relies heavily upon these decisions in his response brief, SpeedyPC does not address the substance of these decisions in its briefs.

SpeedyPC also argues that Beaton has failed to state a claim for fraudulent inducement because there is no link between the allegations regarding the computer forensic expert's examination of the Software and those based on Beaton's personal experience. (Memo in Supp. of Def's Mot. to Dismiss ("Memo") at 8, Dkt. No. 17.) According to SpeedyPC, the complaint is fatally flawed because it "does not allege that any expert ever examined Beaton's computer to determine whether the reported errors were in fact false." (*Id*.) But even without reference to the portion of the complaint describing the expert's analysis, Beaton adequately alleges that the Software falsely identified errors. For example, Beaton alleges that SpeedyPC represented that the Software could "fix" the purported "problems" the Software detected. (Compl. ¶ 29 Fig. 6, Dkt. No. 1.) Beaton further claims that despite this representation, he repeatedly ran the Software and saw no improvement in his computer's performance. (*Id.* ¶ 49.) Moreover, the Software continued to indicate that harmful errors existed on his computer . (*Id.*) These factual allegations are sufficient to plead that the Software falsely reported errors, and thus any failure by Beaton to connect his computer expert's tests of the Software to his personal experience is immaterial at the pleading stage.

SpeedyPC further faults Beaton for failing to allege what computer problems Beaton had experienced before using the Software, or "the specific problems the [S]oftware identified as needing to be fixed, what solutions it recommended and whether the [S]oftware fixed the problems it identified." (Memo. at 9, Dkt. No. 17.) However, at the pleading stage, Beaton need not allege facts regarding particular computer problems he experienced, nor must he allege the nature of the problems identified by the Software. *See Worley*, 2013 WL 1820002, at *3 (the "actual state of plaintiffs' own computers prior to and after defendant's software was used" is a matter subject to discovery and need not be pleaded in the complaint).

7

Finally, SpeedyPC cites a number of cases in which courts have dismissed complaints that alleged facts similar to those pleaded in the instant case. Each of these cases is distinguishable, however. For example, SpeedyPC first cites *Bilodeau et al. v. McAfee*, 12-cv-04589-lhk, 2013 WL 3200658 (N.D. Cal. Jun. 24, 2013), in which the district court dismissed a similar complaint for failing to satisfy the heightened pleading requirements of Rule 9(b). *Id.* at *7. However, the *Bilodeau* court primarily based its decision on the rationale that the complaint paraphrased the allegedly false representations by the defendants, rather than including direct quotations. *Id.* at *9. That is not the situation here, as Beaton's complaint includes direct quotations of the allegedly false representations as well as screenshots of representations taken directly from the SpeedyPC Pro website. SpeedyPC also cites *Kulesa v. PC Cleaner Inc.*, 12-cv-725, 2012 U.S. Dist. LEXIS 188542, at *20-21 (C.D. Cal. Oct. 12, 2012). However, the *Kulesa* court based its decision on the fact that the plaintiff there did not allege the timing of the fraud with sufficient particularity and also merely summarized the alleged misrepresentations by the defendant rather than providing direct quotations. *Id.* The complaint currently before this Court does not suffer from these defects.

**II.    Plaintiff's Claim under the ICFA**

SpeedyPC also seeks dismissal of Beaton's ICFA claim. To state a claim under the ICFA, a plaintiff must allege that (1) the defendant engaged in a deceptive or unfair practice, (2) the defendant intended for the plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception. *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 603 (3d Dist. 2009). A claim for deceptive conduct under the ICFA

sounds in fraud and must be pleaded with particularity to satisfy Rule 9(b). *O'Brien v. Landers*, 10-cv-2765, 2011 WL 221865, at *4 (N.D. Ill. Jan. 24, 2011).

SpeedyPC argues that "Beaton fails to plead how Speedy's alleged misrepresentations regarding the [S]oftware's functionality caused him harm," and that this purported failure is fatal to Beaton's case because "[w]here a plaintiff cannot show how he was deceived by the misrepresentation, he cannot establish proximate causation" under the ICFA. (Memo. at 10-11, Dkt. No. 17 (citing *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E. 2d 801, 861 (Ill. 2005)). However, contrary to SpeedyPC's assertions, Beaton does allege facts that trace the connection between SpeedyPC's alleged misrepresentations and his injury.

Specifically, Beaton alleges that SpeedyPC's advertising represented that the Software would "clean[], optimize[] and protect [Beaton's] computer for improved speed, performance and operations." (Compl. ¶ 44, Dkt. No. 1.) Beaton relied upon these representations when he decided to download and install the free trial version of the Software. (*Id.* ¶¶ 44-45.) After running the free scan, the Software informed Beaton that his PC's "Performance" and "Security" levels were in "Serious" or "Critical" condition and "required immediate attention." (*Id.* ¶ 45.) Relying on these representations, Beaton paid SpeedyPC $39.94 to purchase the Software. (*Id.* ¶ 47.) Moreover, Beaton alleges that the Software did not "fix" the errors it reported and the performance of his computer did not improve. (*Id.* ¶ 49.) In light of these factual allegations, the Court finds that Beaton has adequately pleaded that SpeedyPC's alleged misrepresentations caused him harm in the form of money he paid for software that failed to function as advertised. *See Hall*, 2013 WL 4012642, at *4 (finding that a plaintiff who viewed and relied upon alleged misrepresentations in purchasing and continuing to use utility software stated a claim for a defendant's violation of ICFA).

9

SpeedyPC also contends that Beaton "does not allege the specific problems the [S]oftware identified as needing to be fixed, what it recommended and whether the [S]oftware fixed these problems." (Memo. at 11, Dkt. No. 17.) However, Beaton does not need to include in the complaint the detailed information that SpeedyPC claims is missing. *See Worley*, 2013 WL 1820002, at *3. As with his fraudulent inducement claim, Beaton has pleaded sufficient factual allegations to state a claim under the ICFA and survive a motion to dismiss. Whether Beaton ultimately will be able to adduce sufficient evidence to prove his claim is another matter that need not be determined at this early stage in the litigation.

In a final challenge to Beaton's ICFA claim, SpeedyPC argues that Beaton improperly seeks to certify a class of individuals that includes non-Illinois residents because the ICFA has no application to transactions that take place outside of the State of Illinois. (Memo. at 11-12, Dkt. No. 17 (citing *Avery*, 835 N.E. 2d at 853; *Landau v. CNA Fin. Corp.*, 886 N.E. 2d 405, 406 (1st Dist. 2008))). While there may be some merit to the argument that Beaton's proposed class definition is overbroad, that matter is immaterial to the Motion. The Court declines to resolve class certification issues until the parties have had time to conduct appropriate class discovery and brief a motion for class certification. *See, e.g., De Falco v. Vibram USA, Inc.*, No. 12-cv-7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) (collecting cases).

### III.    Plaintiff's Claim for Breach of Contract

To state a claim for breach of contract, Beaton must plead the following elements: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012); *Assoc. Benefit Servs., Inc. v. Caremark RX, Inc.*, 493

F.3d 841, 849 (7th Cir. 2007). Of these elements, SpeedyPC challenges only whether Beaton has sufficiently alleged that SpeedyPC breached the agreement between the two parties.

In support of the Motion, SpeedyPC argues that "there are insufficient factual allegations to establish that Speedy falsely reported errors on Beaton's own computer or even whether the [S]oftware fixed the reported errors on Beaton's own computer." (Memo. at 12, Dkt. No. 17.) However, as noted above, Beaton specifically alleges that he repeatedly ran the Software and saw no improvement in his computer's performance, and that despite SpeedyPC's representation that the Software could "fix" computer errors, it failed to do so with respect to his computer. (Compl. ¶¶ 29, 49 & fig. 6, Dkt. No. 1.) At the pleadings stage, these allegations are sufficient for Beaton to plead breach of a contract.

### IV.     Plaintiff's Claim for Unjust Enrichment

To state a claim based on a theory of unjust enrichment under Illinois law, a plaintiff must allege "that the defendant has unjustly retained a benefit to the plaintiff's detriment and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E. 2d 672 (Ill. 1989)). Where a claim of unjust enrichment is premised on the same improper conduct as alleged in another claim, then the unjust enrichment cause of action will "stand or fall" based on the disposition of the related claim. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516-517 (7th Cir. 2011) (citing *Assoc. Benefit Servs., Inc.*, 493 F.3d at 855).

SpeedyPC argues that Beaton's unjust enrichment claim is predicated on the same conduct as his ICFA and fraudulent inducement claims, and thus the unjust enrichment claim must fail for the same reasons that those associated claims fail. (Memo. at 13-14, Dkt. No. 17.)

11

However, as explained above, the Court finds that Beaton's claims for fraudulent inducement and violation of the ICFA survive. Accordingly, Beaton's unjust enrichment claim may proceed as well.

## CONCLUSION

For the reasons stated above, Beaton has satisfactorily pleaded each of his claims. Accordingly, SpeedyPC's motion to dismiss the complaint is denied. SpeedyPC shall file an answer to Beaton's complaint by September 17, 2014.

ENTERED:

Dated: September 2, 2014

Andrea R. Wood
United States District Judge