## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 13-cv-08389 |
| v. | ) ) | Judge Andrea R. Wood |
| SPEEDYPC SOFTWARE, a British Columbia company, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Archie Beaton sued Defendant SpeedyPC Software ("SpeedyPC"),[1] a British

Columbia company, alleging that it engaged in fraudulent and deceptive marketing of SpeedyPC

Pro ("Speedy PC Pro" or the "Software"), a computer software product that purports to be able

to diagnose and repair various PC errors. SpeedyPC has filed a motion to dismiss the complaint

under the doctrine of *forum non conveniens*, arguing that British Columbia, Canada is a more

appropriate forum for this action. (Dkt. No. 16.) Because the factors the Court must consider in

determining this motion do not clearly outweigh the presumption in favor of keeping this matter

in Beaton's chosen forum, SpeedyPC's motion is denied.

## BACKGROUND

Beaton, a resident of Algonquin, Illinois, filed this putative class action against

SpeedyPC alleging that he purchased the Software as a result of false and misleading statements

regarding its capabilities. Beaton alleges that, in or around August 2012, he viewed an ad for the

Software on the Internet and subsequently purchased it. (Compl. ¶¶ 22-47, Dkt. No. 1.) Beaton

---

[1] SpeedyPC Software appears to be the trade name of a company known as ParetoLogic, Inc. (*See* Dodd. Decl., Mot. Ex. A, Dkt. No. 44-1.) To avoid confusion, the Court will refer to the defendant only as SpeedyPC Software.

further claims that the Software overstates the amount and severity of errors that it purportedly fixes to convince consumers that the product functions as advertised. (*Id.* ¶¶ 16-18, 20-21, 24, 30-38, 43-49, 62-64.) The Complaint contains four counts: claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), fraudulent inducement, breach of contract, and unjust enrichment.

Before installing the Software, Beaton first had to click "I Agree" when the End User License Agreement ("EULA") appeared on his computer screen. (*See* Theobald Decl. ¶¶ 5-9, Mot. Ex. B, Dkt. No. 44-2.) Section 3.9 of the EULA states:

> Governing Law - This Agreement shall be governed exclusively by the laws of the Province of British Columbia and the laws of Canada applicable therein except any principles regarding conflicts of law rules and the United Nations Convention on Contracts for the International Sale of Goods. You hereby irrevocably attorn and submit to the non-exclusive jurisdiction of the courts of Victoria, British Columbia, and any competent Courts of Appeal therefrom. If any provision shall be considered unlawful, void or otherwise unenforceable, then that provision shall be deemed severable from this License and not affect the validity and enforceability of any other provisions.

(*Id.* at Ex. 1.)

SpeedyPC is a Canadian corporation with its principal place of business in British Columbia. (Dodd Decl. ¶¶ 2-3, Mot. Ex. A, Dkt. No.44-1.) The persons responsible for the design, development, marketing, and maintenance (including testing and ongoing upgrades) of the Software and its day-to-day management are current or former employees of Speedy PC and reside in British Columbia. (*Id.* ¶¶ 5-6, 12-14.) Both SpeedyPC's CEO and Vice President of Business Operations also reside in British Columbia, Canada. (*Id.* ¶¶ 5-6.) Speedy markets and sells the Software in a number of countries, including Canada and the United States. (*Id.* ¶ 4.)

**DISCUSSION**

The doctrine of *forum non conveniens* permits a court, in its discretion, to dismiss an

action over which it has jurisdiction when there is an adequate alternative forum in which the

case can be more conveniently heard. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir.

1997) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)). Deciding a *forum non*

*conveniens* motion involves two steps. First, an adequate alternative forum must be available to

hear the case. *Id.* at 802. If that threshold criterion is satisfied, the court must then balance the

private interests of the litigants and the public interests of the forum to determine the superior

venue. *Id.* at 803. The burden is on SpeedyPC to demonstrate that the balance of the factors

weighs in favor of dismissal. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S.

422, 423 (2007).

In determining SpeedyPC's motion, the Court must give deference to Beaton's chosen

forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Where the plaintiff is not a citizen

of its chosen forum, the district court "is entitled to be far less deferential toward his choice."

*Interpane Coatings, Inc. v. Australia and New Zealand Banking Grp., Ltd.*, 732 F. Supp. 909,

915 (N.D. Ill. 1990). SpeedyPC argues that Beaton is not entitled to deference in his choice of

forum because he resides in McHenry County, Illinois, which is part of this District's Western

Division. (*See* Mot. Ex. E, Dkt. No. 69-1.) However, in cases involving potential dismissal to a

foreign country, "the relevant inquiry is not whether the plaintiff is a citizen of the chosen forum;

rather, it is whether the plaintiff is [a United States ] citizen." *Interpane Coatings*, 732 F. Supp.

at 915. There is no indication that Beaton is not a United States citizen; therefore, his choice of

forum is entitled to presumptive weight.[2] At the same time, United States citizens do not have the

---

[2] Furthermore, although Defendants argue that Beaton's choice of venue is not entitled to any weight
because this is a putative nationwide class action, the class definition is limited to "[a]ll individuals and

absolute right to sue in an United States court, *see id.*, and a defendant may overcome this deference by demonstrating that the "private and public interest factors clearly point towards trial in the alternative forum." *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982).

## I.     Alternative Forums

SpeedyPC seeks to have this matter litigated in British Columbia, Canada. To determine whether British Columbia is available as a forum, the Court must ascertain whether all parties are amenable to process and within the forum's jurisdiction. *Kamel*, 108 F.3d at 802-03. Here, the Court finds that the British Columbia courts have jurisdiction over both parties: SpeedyPC is located in Victoria, British Columbia and, under the EULA, Beaton has submitted to the non-exclusive jurisdiction of the courts of Victoria, British Columbia. Furthermore, SpeedyPC has agreed that it will not contest service of process. (Sec. Dodd. Decl. ¶ 2, Dkt. No. 69-3.) Accordingly, British Columbia is an available alternative forum.

The Court also finds that British Columbia is an adequate forum. A forum is "adequate" if "the parties will not be deprived of all remedies or treated unfairly." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 704 (7th Cir. 2005); *see also Piper Aircraft Co.*, 454 U.S. at 254 ("if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, [an] unfavorable change in law may be given substantial weight."). Judges in this District generally have found that Canadian courts are adequate alternative fora in the context of deciding *forum non conveniens* motions. *See, e.g., ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, No. 98 C 7614, 2001 WL 1382572, at *3 (N.D. Ill. Nov. 5, 2001); *Berndorf Belt Sys. v. Asocona Food Grp. Ltd.*, No. 98 C 1055, 1998 WL 851496, at *9 (N.D. Ill. Dec. 3, 1998).

---

entities in the United States who have purchased SpeedyPC Pro." (Compl. ¶ 50, Dkt. No. 1.) The Court does not deem this definition to lessen the presumption that Beaton is entitled to a domestic forum.

Beaton nonetheless argues that British Columbia is not an adequate alternative forum because his claims would be time-barred under the relevant statute of limitations there. In response, SpeedyPC has submitted a declaration from Rajiv Gandhhi, a barrister and solicitor who is qualified and licensed to practice law in British Columbia, stating that Beaton's suit would not be barred under either of the relevant limitations statutes in British Columbia. (Gandhi Decl. ¶ 5, Mot. Ex. F, Dkt. No. 69-2.) Furthermore, SpeedyPC has filed a separate declaration from Barry Dodd, CEO of SpeedyPC, stating that in the event Beaton files suit in a British Columbia court based on the allegations of the complaint, SpeedyPC will not assert a statute of limitations defense to those claims. (2nd Dodd Decl. ¶ 2, Mot. Ex. G, Dkt. No. 69-3.) In light of these unrebutted declarations, the Court finds that Canada is an adequate alternative forum. *See, e.g., ISI Int'l, Inc.*, 2001 WL 1382572, at *3 (recognizing waiver of statute of limitations defense in determining whether alternative forum is "adequate" for purposes of *forum non conveniens* dismissal); *Interpane Coatings, Inc.*, 732 F. Supp. at 918 (same).

## II.     Private Interest Factors

The private interest factors include (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) the possibility of viewing the premises, if necessary, and (4) all other practical problems that make trial of a case easy, efficient, and economical. *Wozniak v. Wyndham Hotels and Resorts, LLC*, No. 08 CV 1361, 2009 WL 901134, at *3 (N.D. Ill., Mar. 31, 2009) (citing *Kamel*, 108 F.3d at 803). Taken as a whole, the private interest factors in this case favor dismissal.

The relative ease of access to sources of proof does not favor either forum. Most of the evidence that will be produced in this matter is located in British Columbia; all documentary

evidence and the source code for the Software would be stored at SpeedyPC's headquarters in

Victoria. At his deposition, however, SpeedyPC's Vice President of Business Operations, Gary

Theobald, testified that most of the documents relevant to this matter are stored primarily in

electronic form. (Theobald Nov. Dep. at 61:4-24, Dkt. No. 67-2; Theobald Dec. Dep. at 246:5-

10, Dkt. No. 67-3.) Furthermore, while SpeedyPC argues that certain contracts and other

documents are not kept in electronic form, Theobald testified that those documents are typically

scanned into electronic form. (Theobald Nov. Dep. at 61:8-14, Dkt. No. 67-2.) Because the

relevant records are digitally stored, ease of access to evidence is a neutral factor. *See Nalco Co.*

*v. Chen*, No. 12-cv-9931, 2013 WL 4501425, at *8 (N.D. Ill. Aug. 22, 2013); *Metz v. U.S. Life*

*Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009).

　　Of greater concern is the unavailability of compulsory process for the attendance of

unwilling witnesses. SpeedyPC provides a list of seven former employees that it describes as key

witnesses to the "the critical period that the marketing materials and website on which Beaton's

claims are based were designed, created and maintained."[3] (Reply Br. at 7, Dkt. No. 69.) Because

these witnesses are no longer employees of SpeedyPC and live in Victoria (Rai Decl., Mot. Ex.

H, Dkt. No. 69-4), this Court would not be able to compel these former employees to appear at

trial. *See* Fed. R. Civ. P. 45(b)(2); 45(c)(3). SpeedyPC somewhat undercuts its own argument by

failing to provide the Court with any evidence that these witnesses would be unwilling to testify

at trial. *See, e.g., Gupta v. Austrian Airlines*, 211 F. Supp. 2d 1078, 1087 (N.D. Ill. 2002) (noting

that movant for dismissal for *forum non conveniens* failed to identify "any specific witness who

refuses to submit to discovery here, and some of these witnesses may be willing to testify here")

---

[3] These former employees are: Alycia Mitchell, who formerly served as Team Lead of Marketing
Campaigns; David McArthur, former Senior Graphic and Web Designer; Kai Davis, Online Marketing
Specialist; Michelle Macklin, former Senior Graphic and Web Designer; Samantha Fraser, former
Graphic and Web Designer; Rick Young, former Quality Assurance Manager; and Nicole Clement-
Reynier, former Product Manage.

(citing *In re Bridgestone/Firestone, Inc.*, 190 F. Supp. 2d 1125, 1141 n.22 (S.D. Ind. 2002)).

Still, as a matter of common sense it seems likely that some, if not all, of these witnesses would

balk at travelling to Chicago to testify at trial, especially given the rigors of traveling between

Victoria and the United States (as further discussed below). Beaton points out, rightly, that

deposition testimony from these witnesses may be introduced at trial under the unavailable

witness exception to the hearsay rule. *See* Fed. R. Evid. 804(a)(5), (b)(1). Furthermore, the

former employees' roles have been taken up by other SpeedyPC employees, who are under

SpeedyPC's control and who may be able to testify regarding at least some of the same

information as the former employees. (*See, e.g.*, Dodd Dep. at 79:8-12, 80:24–81:6, 86:17-18,

95:15-16; Theobald Dec. Dep. at 98:13-14, 98:22-23, 103:16.) But given the importance of live

testimony to a fraud case, the inability of the Court to compel live testimony of the former

employees is a factor that weighs in favor of dismissing this case. *ISI Int'l, Inc.*, 2001 WL

1382572, at *5.

Furthermore, should the former employees decide to testify, the time and expense for

them to attend trial favors dismissal. The convenience of witnesses and the costs of litigation are

the paramount considerations in analyzing the private factors. *See Chelios v. Nat'l Hockey

League Players' Ass'n*, No. 06-cv-5333, 2007 WL 178326, at *5 (N.D. Ill. Jan. 18, 2007);

*Interpane Coatings, Inc.*, 732 F. Supp. at 916. Defense counsel submitted a declaration attesting

that traveling from Victoria, British Columbia to Chicago, Illinois is very onerous. (Borcia Decl.,

Supp. Mem. Ex. 1, Dkt. No. 58-1.)  On the occasion that defense counsel chose to travel to

Victoria, the round trip took approximately 28 hours and cost in excess of $1,000. (*Id.* ¶¶ 3-10.)

While the Court is not convinced that this is typical of travel between Victoria and Chicago, it

does share SpeedyPC's concern about the potential hardships in transporting witnesses between

Victoria and Chicago.[4]

This concern does not extend, however, to SpeedyPC's current employees. *MacNeil*

*Auto. Prods. Ltd. v. Cannon Auto. Ltd.*, No. 08 C 139, 2009 WL 65498, at *6 (N.D. Ill. Jan. 8,

2009) ("courts do not generally consider the convenience of witness employees, for the

employer-party can arrange for their presence.") (citing *Ashmore v. Ne. Petroleum Div. of*

*Cargill, Inc.*, 925 F. Supp. 36 (D. Me. 1996)). Furthermore, the expense to SpeedyPC is not a

cognizable argument in favor of dismissal: forcing Beaton to litigate in Victoria would simply

shift the expense to Beaton, who is almost certainly less likely to be able to bear the expenses of

travel to a remote forum in which he did not choose to file suit. *See, e.g., Peter Rosenbaum*

*Photography Corp. v. Otto Doosan Mail Order Ltd.,* No. 04 C 0767, 2005 WL 2387687, at *5

(N.D. Ill. Sept. 26, 2005) (denying motion to dismiss for *forum non conveniens* because there

was no showing that it was more inconvenient for defendants to litigate in Illinois than for

plaintiff to litigate in South Korea or Japan).

In sum, although the private factors favor dismissal of the suit on *forum non conveniens*

grounds, the force of this determination is lessened by the fact that SpeedyPC has not established

that its former witnesses are unwilling to testify in this forum, nor has it established that they are

truly necessary to its defense.

## III.    Public Interest Factors

The public interests factors include (1) the administrative difficulties stemming from

court congestion, (2) the local interest in having localized disputes decided at home, (3) the

interest in having the trial of a diversity case in a forum that is at home with the laws that must

---

[4] The remote nature of Victoria, as opposed to other parts of Canada, distinguishes this case from those cited by Beaton for the proposition that travel between Chicago and other cities in Canada is insufficiently onerous to justify dismissal. (*See* Resp. in Opp. at 11-12, Dkt. No. 67.)

govern the action, (4) the avoidance of unnecessary problems in conflicts of laws or in the

application of foreign law, and (5) the unfairness of burdening citizens in an unrelated forum

with jury duty. *Kamel*, 108 F.3d at 803. On the whole, these factors favor retaining the case in

this forum.

In terms of court congestion, SpeedyPC adduces evidence that litigating this case in

British Columbia would be significantly faster than litigating it before this Court. SpeedyPC cites

June 2014 Federal Court Management Statistics showing that the median time from filing to trial

in this District is 35.4 months for civil actions; the comparable figure for civil cases in British

Columbia is 11-12 months. (Mot. Exs. C, D, Dkt. Nos. 44-3, 44-4.) However, this disparity is

undercut by the fact that this case has been pending before the Court for a year, and this is the

second occasion on which it is spending significant resources in understanding and familiarizing

itself with the claims and defenses put forward by the parties. *See MacNeil Auto. Prods., Ltd.*,

2012 WL 6021547, at *4. Dismissing the case for re-filing in British Columbia would effectively

re-start the case from scratch. Accordingly, the Court finds that this factor only slightly favors

SpeedyPC.

More importantly, SpeedyPC argues that this is a diversity case in which Canadian law

exclusively governs, citing the choice-of-law provision in the EULA. *See, e.g., Wozniak*, 2009

WL 901134, at *8 (where foreign law governs a case, "this factor weighs heavily in favor of

dismissal."). However, SpeedyPC has overstated its argument that Canadian law applies. A

federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits.

*Wilkes v. AccuStaff, Inc.*, 42 F. Supp. 2d 842, 844 (N.D. Ill. 1999) (citing *GATX Leasing Corp. v.

Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)). Under Illinois law, choice-of law

provisions are generally upheld, but a two-part analysis applies to determine "the breadth of a

contractual choice-of-law provision." *Birnberg v. Milk St. Residential Assoc. Ltd. P'ship.*, Nos.

02 C 0978, 02 C 3436, 2003 WL 151929, at \*13 (N.D. Ill. Jan. 21, 2003). The first part of the

analysis "examine[s] the language of the contract's choice-of-law clause to determine if the

parties 'intended [it] to govern all claims between them.'" *Id.* (quoting *Medline Indus. Inc. v.*

*Maersk Med., Ltd.*, 230 F.Supp.2d 857, 863 (N.D. Ill. Nov. 14, 2002)). Here, the EULA states

only that "*[t]his Agreement* shall be governed exclusively by the laws of the Province of British

Columbia and the laws of Canada applicable therein . . . ." (Mot. Ex. B. Att. 1, Dkt. No. 44-2.)

(emphasis added). The plain language of this provision limits its effect to the interpretation of the

EULA itself, and is significantly more limited than broadly-stated choice of law provisions that

apply the choice of law to all claims "arising out of" or "relating to" the contract. *See Amakua*

*Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955-56 (N.D. Ill. 2006). Thus, the Court finds that

there was no intent for the EULA to apply Canadian law to all claims relating to the Software.

Even though the EULA's choice-of-law provision does not necessarily apply to all claims

brought by purchasers of the Software, tort claims that are dependent on a contract are "subject

to [the] contract's choice-of-law clause regardless of the breadth of the clause." *Medline Indus.*

*Inc.*, 230 F. Supp. 2d at 862. To determine if a tort claim depends on a contract, courts examine

whether: (1) "the [claim] alleges a wrong based upon interpretation and construction of the

contract," (2) "the tort claims are closely related to the parties' contractual relationship," and (3)

"the tort claim could exist without the contractual agreement which contains the choice-of-law

provision." *M. Block & Sons, Inc. v. Int'l Bus. Machs. Corp.*, No. 04 C 340, 2004 WL 1557631,

at \*4 (N.D. Ill. July 8, 2004) (citations omitted). Here, aside from perhaps Beaton's breach of

contract claim, the claims being asserted are not sufficiently related to the EULA for the choice

of law provision to govern them. Beaton's claims under the ICFA and Illinois common law of

10

fraudulent inducement and unjust enrichment have nothing to do with the subject matter of the

EULA, which dictates only the terms on which the purchaser of the SpeedyPC Pro license may

use the Software, rather than the specifications and functions of the Software itself. Instead,

Beaton's claims against SpeedyPC are based on its marketing and advertising activities, which

are separate and apart from the specifications set out in the EULA.[5]

  With the choice of law provision in the EULA not determinative, the Court applies

general Illinois choice of law principles. For the ICFA, fraudulent inducement, and unjust

enrichment claims, "the law of the state where the injury occurred applies unless another state

has a more significant relationship to the occurrence and parties." *Wilcox v. Incandela*, No. 91 C

5730, 1992 WL 137165, at *4 (N.D. Ill. June 1, 1992) (fraud based claims); *In re Sears, Roebuck

& Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 2623, 2006 WL 3754823, at *2 (N.D. Ill.

Dec. 18, 2006) (unjust enrichment). Here, the injury to Beaton occurred in Illinois, and the Court

cannot say that British Columbia had a more significant relationship to the occurrence and

parties: SpeedyPC made the alleged misrepresentations about the software in this forum, Beaton

viewed them here, Beaton purchased the Software here, and Beaton entered into a contract with

SpeedyPC here. (*See* Compl. ¶¶ 16, 18, 42, 43, 45-49, Dkt. No. 1.) Thus Illinois law will apply to

at least three of the four claims asserted by Beaton, and to the extent his breach of contract claim

is governed by Canadian law, this Court is fully capable of applying that law. *See Lehman v.

Humphrey Cayman, Ltd.*, 713 F.2d 339, 345 (8th Cir. 1983) ("Federal courts are quite capable of

applying foreign law when required to do so[.]"); *see also, e.g., Rowell v. Franconia Minerals

Corp.*, 582 F. Supp. 2d 1031, 1037 (N.D. Ill. 2008) (in assessing a motion to dismiss for *forum

non conveniens*, "the Court does not view the mere potential for Canadian law to play a role in

---

[5] Furthermore, because Beaton's claims have little or nothing to do with the terms of the EULA, it is not clear whether Canadian law would even apply to Beaton's breach of contract claim. However, this issue is not currently before the Court.

this case as a strong reason to dismiss."). Accordingly, this factor favors retaining this matter in Beaton's chosen forum.

Finally, the Court weighs the respective forums' interests in deciding the dispute and the fairness of requiring citizens in this forum to serve jury duty should this case proceed to trial here. *Kamel*, 108 F.3d at 803. The Court finds that this forum, and any jury that is called in this District, will have a greater interest in this matter than would a court in British Columbia. As discussed above, the circumstances that led to Beaton filing this suit occurred in this forum. Furthermore, Illinois has a strong interest in protecting its consumers from the sorts of fraudulent and unlawful activities alleged in this case; indeed, the ICFA is "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Accordingly, the Court finds that this forum and any jury that would hear the case here have a greater interest in resolving this matter than would a British Columbia forum and jury.

In sum, the public factors favor keeping the case in this Court. Although the private factors weigh toward dismissal, the Court cannot say that, taken as a whole, the public and private factors warrant overturning the presumption that Beaton is entitled to a domestic forum. Accordingly, the Court denies SpeedyPC's motion to dismiss pursuant to the *forum non conveniens* doctrine.

**CONCLUSION**

SpeedyPC has not met its burden of showing that the private and public factors weigh strongly in favor of trying this case in British Columbia. Trial here would not result in "oppressiveness and vexation to [SpeedyPC] as to be out of all proportion to Beaton's

12

convenience." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

Thus, SpeedyPC has not shown sufficient cause to dismiss this action on the ground of *forum non conveniens*. Accordingly, the Court denies SpeedyPC's motion to dismiss on this basis.


ENTERED:

Dated: June 5, 2015

                                   _____

Andrea R. Wood
United States District Judge

13