JKB/ls3/643584                                                                                                     2246-756-51

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARCHIE BEATON, individual and on behalf of all others similarly situated, | )<br>)<br>) | |
| Plaintiff, | ) | |
| v. | )<br>) | Case No. 1:13-cv-08389 |
| SPEEDYPC SOFTWARE, a British Columbia company, | )<br>)<br>) | Judge Andrea R. Wood |
| | ) | Magistrate Judge Geraldine Soat Brown |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO COMPEL INSPECTION OF PLAINTIFF'S COMPUTER**

Defendant, SpeedyPC Software ("Speedy"), by and through its attorneys, hereby submits its *Motion to Compel Inspection of Plaintiff's Computer*.

## I. INTRODUCTION

Speedy brings this motion to compel inspection of Plaintiff's computer identified and described in his Complaint. (ECF 1). Speedy is a software development company that develops software products designed to improve personal computers, including the product at issue in this case, SpeedyPC Pro. Plaintiff allegedly downloaded and installed SpeedyPC Pro on his personal computer in or around August 2012. (ECF 1 at ¶¶ 42-49). The Complaint alleges (without any specificity) that Plaintiff was fraudulently induced by the free version of SpeedyPC Pro to download the full version. Plaintiff claims that the free version of SpeedyPC Pro is designed to find errors that do not exist in the user's computer, which induces the user to purchase and download the full version of SpeedyPC Pro in order to "clean" the detected errors. (*Id*. at ¶ 4). As a result of these allegations, Speedy requested the opportunity to inspect, test, or sample the personal computer used by Plaintiff to download the SpeedyPC Pro software. Plaintiff refused to permit such an inspection. After meeting and conferring with Plaintiff's counsel about this issue,

Defendant was forced to file this motion to gain access to the computer that is the subject of this case.

## II. STATEMENT OF FACTS

According to Plaintiff's Complaint:

42. In or around August 2012, while browsing the Internet for software to repair and optimize his computer, Plaintiff Beaton encountered one of Defendant's online advertisements for SpeedyPC Pro — substantially similar to the advertisements described in Section II above.

43. After viewing Defendant's advertisement for SpeedyPC Pro, Beaton navigated to one of Defendant's websites (www.SpeedyPC.com) and read Defendant's express warranties about the software's utility, which were the same, or substantially similar to the representations shown in Figures 10-16 below. See Figures 10-16 (showing screenshots of SpeedyPC's representations regarding the SpeedyPC Pro software displayed on SpeedyPC's websites).

44. Relying upon these representations made by SpeedyPC–namely, that SpeedyPC Pro would "clean[], optimize[] and protect [his] computer for improved speed, performance and operation" as well as protect it from viruses, malware and privacy threats, and otherwise perform the functions depicted in Figures 10-16 — Beaton downloaded the software.

45. After Beaton installed SpeedyPC Pro, the software conducted a "scan" of his computer. Beaton recalls that the software informed him that a hundreds of serious errors were detected, at least some of which SpeedyPC Pro informed him were causing his computer damage. SpeedyPC Pro also displayed gauges representing his system's "Performance" and "Security" levels, with both gauges containing a needle pointing "in the red" (indicating that such levels were in "Serious" or "Critical" condition). Additionally, SpeedyPC Pro warned him that these problems were decreasing his computer's performance and compromising his security — thus requiring his immediate attention–and urged him to purchase the software in order to "fix" these problems. See Figure 6 above (showing a screenshot of SpeedyPC Pro's error reporting interface and registration and/or activation page).

46. After clicking a button in the software labeled "Fix All," Beaton was forwarded to a SpeedyPC webpage to "register" SpeedyPC Pro to fix the purported problems the software identified on his computer. After reaching SpeedyPC's registration webpage, SpeedyPC again represented to Beaton that "SpeedyPC Pro detected some problems that need to be fixed" and instructed him to "Register SpeedyPC Pro now!" See Figure 10 above.

> 47. Relying upon all of SpeedyPC's representations about the software's capabilities and the condition of his computer (made both online and in the software itself) and thus, reasonably believing that SpeedyPC Pro's analysis was correct and that his computer urgently needed repair, Beaton paid approximately $39.94 to activate his copy of SpeedyPC Pro, which SpeedyPC represented would repair the purported errors.
>
> 48. In reality, as discussed above, SpeedyPC Pro did not actually detect hundreds of "Serious" or "Critical" errors as SpeedyPC claimed that it would—because the software arbitrarily detects and reports problems as "Serious" or "Critical", and cannot actually perform the beneficial tasks described in its marketing materials and advertisements. Nor did the software accurately identify and report the actual condition of Beaton's computer. Rather, SpeedyPC Pro was designed to always report the damning results discussed above. As such, Beaton was misled into believing that his computer was at serious risk, and that he needed to pay to register SpeedyPC Pro in order to repair it.
>
> 49. Similarly, the full version of the SpeedyPC Pro software that Beaton purchased could not and did not perform as advertised by SpeedyPC. Instead, it was designed, like the trial version, to invariably return false errors as detailed in Section II.C above. In fact, every time Beaton ran SpeedyPC Pro, the software reported that harmful errors were adversely affecting his computer and that he needed to "fix" the errors using SpeedyPC Pro. Yet, despite repeatedly running SpeedyPC Pro's scan, and purportedly "fixing" the reported errors, his computer's performance did not improve.

(ECF 1 ¶¶ 42-49).

Speedy simply has no way of determining whether Plaintiff's computer had the errors detected by the free version of SpeedyPC Pro without forensically examining his computer that he put at issue. Also, without forensically examining Plaintiff's computer, Speedy has no way of determining whether Plaintiff's computer's performance did not improve as he alleges.

The identical issue to this Motion was raised in two similar lawsuits filed by Plaintiff's counsel, one against Speedy's parent company, ParetoLogic, in the United States District Court for the Western District of Washington, *Pedroza v. ParetoLogic*, Inc., Case No. 2:12-cv-00183-MJP (copies of the briefs and the court's ruling on that motion are attached hereto as Group Exhibit A), and the other against Avanquest, *Worley v. Avanquest*, Case No. C 12-04391 WHO (LB). In *Pedroza*, similar allegations were made by Plaintiff's counsel with respect to a product

3

similar to SpeedyPC Pro, RegCure. Speedy's consulting expert in this case, Eric Blank, the founder of Blank Law & Technology P.S., also served as an expert for ParetoLogic in the RegCure case. In *Pedroza,* Mr. Blank submitted an affidavit affirming that the need to conduct a forensic analysis of the computer described in plaintiff's complaint in order to assess the plaintiff's claims. (*Id.*). The courts in both Pedroza and *Worley* agreed that production of the plaintiffs' computers were required. (Exhibit B).

      The same analysis applies here. In order for Mr. Blank to evaluate Plaintiff's claims in this case, he needs to examine Plaintiffs computer's hard disk drive as it existed subsequent to the cleaning undertaken by SpeedyPC Pro. He needs to examine at a forensic level not just the registry, but also the various applications and scripts resident on the hard drive so that he could evaluate relationships between the 'cleaned' computer and these applications, scripts, and commands. Because SpeedyPC Pro creates and stores to the hard drive an 'archive' copy of the registry as it existed before the 'cleaning,' Plaintiff's hard drive should also have the archive copy for comparison. Moreover, because the efficacy of each SpeedyPC Pro cleaning will be extremely specific to each user (based on the specific applications and so forth used by the computer), it is especially important that Speedy has access to Plaintiff's hard drive, and not to some 'control' or 'typical' drive. In sum, a forensic evaluation of Plaintiff's computer as it existed following SpeedyPC Pro's registry 'repair' is necessary to evaluate Plaintiff's claims as set forth in the Complaint.

      Speedy would agree to a protective order that would only allow the computer to be used for purposes of this lawsuit, thus allaying any concerns over any private information contained on Plaintiff's computer.

### III. ARGUMENT

**A.  An Examination of Plaintiff's Computer is Central to Determining the Truth or Falsity of Plaintiff's Claims**

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), Speedy moves for an order compelling Plaintiff to permit inspection of his computer pursuant to Rule 34. Federal Rule of Civil Procedure 34 provides that a "party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and inspect ... (B) any designated tangible things[.]"

Here, Speedy moves for an order compelling Plaintiff to produce the computer at issue in this case. Speedy is entitled to examine the computer because it is central to both Plaintiff's claims and Speedy's defenses thereto. Fed.R.Civ.P. 26(b)(l) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense"). Relevant information for purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence." *Surfoivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *G.D. v. Monarch Plastic Surgery, P.A.,* 239 F.R.D. 641, 644 (D. Kan. 2007) (granting motion to compel inspection of defendants' computer). District courts have broad discretion in determining relevancy for discovery purposes. *Surfvivor*, 406 F.3d at 635. Here, the question of relevancy is not even a close call.

As explained above, the crux of this case and Plaintiff's claims against Speedy revolve around whether Speedy's SpeedyPC Pro software falsely identified errors or exaggerated errors on Plaintiff's personal computer, and whether the software performed a utility function on Plaintiff's computer. A forensic analysis of Plaintiff's computer is the first step -- and one of the most important steps -- in determining the truth or falsity of Plaintiff's claims against Speedy.

5

Courts consistently order plaintiffs to produce their personal computers that are at issue in litigation for inspection. *See, e.g., Illinois Tool Works, Inc. v. Metro Mark Prods., Ltd.*, 43 F.Supp.2d 951, 960-961 (N.D. Ill. 1999) (court may order party to produce computer on which data is stored).

In *Pedroza* and *Worley*, the court was faced with an issue identical to the issue here. In granting ParetoLogic's motion to compel in *Pedroza*, the court noted "[a]t the core of Plaintiff's complaint is his claim that 'the errors purportedly found on Plaintiff's PC did not actually exist and/or were dramatically overstated." As a result, the court found that "the state of Plaintiff's hard drive is plainly relevant. This is especially the case when the individual plaintiff seeks to represent an entire class, because the class representative must show individualized harm." (Exhibit A). In compelling production of Plaintiff's computer in *Worley,* the court ruled "Plaintiffs' proposal is not workable. Avanquest needs to see how the Software runs on Plaintiffs' computers." (Exhibit B).

Similarly, in *G.D.* plaintiffs alleged that the defendants wrongfully disclosed plaintiffs' confidential medical information stored on a computer hard drive by placing the computer on the curb of one of the defendants' homes for trash disposal. *G.D.,* 239 F.R.D. at 643. Plaintiffs moved for an order compelling defendants to produce the computer that was the subject matter of the litigation. *Id*. Plaintiffs sought to inspect, test, and evaluate the operation of the computer. *Id*. Defendants objected that the request was overly broad and that the computer contained information that is outside the scope of plaintiffs' claims. *Id.* at 644. The court found that "plaintiffs have articulated purposes that are appropriate for such a discovery request, are relevant on their face to plaintiffs' causes of action, and are likely to lead to the discovery of admissible evidence." *Id*. at 646.

Here, like in *Pedroza, Worley* and *G. D.*, Speedy should be permitted to inspect, test, and evaluate Plaintiff's computer. Speedy's reasons for needing to inspect the computer are "relevant on their face to plaintiffs' causes of action." Plaintiff claims that SpeedyPC Pro did not accurately identify and remedy problems with Plaintiff's computer. Speedy cannot possibly evaluate that claim without being permitted to inspect the computer in question. It would be manifestly unjust not to permit Speedy to conduct an evaluation of Plaintiff's computer.

**B.** **Speedy Is Entitled to Examine Plaintiff's Computer So That It Can Respond to Plaintiff's Motion for Class Certification**

Plaintiff's motion for class certification must be filed by May 31, 2016. (ECF 80). In order to assess the merits of Plaintiff's motion for class certification, it is imperative that Speedy access and examine Plaintiffs computer. *See Pedroza; Worley; Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978) (pre-class certification discovery in a putative class action is generally limited to certification issues, including the typicality of the claims and the representative's ability to represent the class).

Speedy's analysis of Plaintiff's computer may very well render Plaintiff an improper class representative. The procedural mechanism of a class action does not confer standing that a plaintiff does not otherwise have in an individual capacity. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465-66 (9th Cir. 1973). A class representative, therefore, cannot litigate a claim against a defendant who the representative cannot sue individually. *Id.*; *see also Wash. Educ. Ass'n v. Shelton School Dist. No. 309*, 93 Wn.2d 783, 790, 613 P.2d 769 (1980) (named plaintiff cannot litigate on behalf of a class "merely because the class has a claim if he himself does not"). In *La Mar*, the Ninth Circuit found that the typicality requirement was "obviously" "not met when the 'representative' plaintiff never had a claim" against the defendant. *La Mar*, 489 F.2d at 465. The court went on to say that the plaintiff "who has no cause of action against

the defendant cannot 'fairly and adequately protect the interests' of those who do have such causes of action." *Id.* at 466. Accordingly, the putative class representative failed both the adequacy and typicality requirements. *Id*. at 465-66.

Here, like in *La Mar*, if SpeedyPC Pro did not identify false errors on Plaintiff's personal computer or exaggerate any such errors, or if it performed a utility function, then Plaintiff would neither be an adequate representative or a typical representative. Moreover, Speedy's expert explains that the efficacy of each cleaning will be extremely specific to each user, based on the specific applications used by each computer. (Blank Decl. at ¶ 19). Speedy needs to examine Plaintiff's computer in order to understand these individualized issues so that Speedy can address the absence of common questions of fact, the difficulties in maintaining a class action, and the predominance of individualized issues in responding to Plaintiff's class certification motion.

**C.** **Alternatively, Speedy Requests a Mirror Image of Plaintiff's Hard Drive**

Most of the forensic analysis Mr. Blank needs to conduct to assess Plaintiff's claims could be undertaken against a forensically correct mirror image of Plaintiff's hard drive. (*Id.*). Unfortunately, there are some tests that cannot be run against a mirror image of Plaintiffs hard drive. (*Id.* at ¶¶ 19, 21). "Each hard drive has its own unique properties tied to its organic controller, disk speed, drive errors, and other factors that would prevent [an expert] from running fully definitive tests against the 'repaired' registry-the registry would be working with the imaged hard drive and communicating with the substitute host computer, internet connection, printers, cd burners, flash drive connectors, and so forth." (*Id*. at ¶ 21). For these reasons, Speedy needs access to Plaintiff's actual computer in the same state as when the registry repair was conducted. (*Id*). If the Court is not inclined to force Plaintiff to turn his personal computer over to Speedy's expert, the Court should order that a *forensically sound image or duplicate* – sometimes called a

"bit-by-bit image" of Plaintiff's computer be taken by a neutral, third-party forensic expert at a cost shared by the parties. Because Speedy's expert opines that this method will not allow him to access all of the information needed for his opinion, there is a possibility that there may be a need for a full forensic analysis of Plaintiff's personal computer at a later time. (*Id*. at ¶¶ 19, 21). Speedy would reserve its right to seek access to Plaintiff's personal computer should the need arise.

### IV. **CERTIFICATION**

Pursuant to Fed.R.Civ.P. 37(a)(l), counsel for Speedy certifies that he and Speedy's representative Barry Dodd had a telephone conference with Plaintiff's counsel on the issues raised in this motion on August 6, 2015, and follow up communications on August 7, 2015 to seek a good faith resolution of the issue without Court involvement. The parties were unable to come to a resolution of this matter.

### V. **CONCLUSION**

For the foregoing reasons, Defendant's motion to compel inspection of Plaintiff's computer must be granted.

SPEEDYPC SOFTWARE

By: /s/James K. Borcia
One of Its Attorneys

James K. Borcia (jborcia@tresslerllp.com)
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000