**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     *v.*<br><br>SPEEDYPC SOFTWARE, a British Columbia company,<br><br>              Defendant. | Case No. 1:13-cv-08389<br><br>Honorable Andrea R. Wood |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

Defendant, SpeedyPC Software ("Speedy"), by and through its attorneys, hereby submits its Memorandum in support of its Motion for Sanctions for Spoliation of Evidence against Plaintiff Archie Beaton ("Beaton") and his counsel Edelson PC ("Edelson").

## I.      INTRODUCTION

Speedy has recently learned that critical evidence in this case, Beaton's computer on which Speedy's software was loaded, was spoliated shortly before this lawsuit was filed.  As a result, this case should be dismissed and Speedy should be awarded its attorneys' fees.

## II.     FACTUAL BACKGROUND[1]

### A.    The Parties

#### 1.    Speedy

Speedy is  based in Victoria, Canada and is a registered entity brand that is owned by Paretologic, Inc. ("Paretologic") and is in the business of developing innovative computer

---

[1] A timeline of the events relevant to this Motion is attached in the Appendix hereto.

software to help PC users combat common problems. (Ex. A ¶ 2). One of the products that Speedy sells is SpeedyPC Pro ("the Software"), which is utility software that solves common problems that diminish a computer's performance. (Ex. A ¶ 3).

Speedy has been a Microsoft certified partner since April 2010, in November 2011 was awarded the outstanding rating of 5 out of 5 by Tucows for the quality of its software and since July 2005 has been a Better Business Bureau Accredited Business. (Ex. A ¶¶ 4-6). The Software is sold with an unconditional 30 day money back guarantee that allows purchasers to obtain a full refund within 30 days of purchase for any reason. (Ex. A ¶ 7).

### 2. Beaton

Beaton is 63 years old and resides in Algonquin, Illinois with his girlfriend. (Ex. B at 5-6). Beaton is a convicted felon, having previously pled guilty to manslaughter after being charged with murder in the death of Randy L. Hopson. (Ex. C).

Beaton began using computers when he was in college. (Ex. B at 50). He has an educational background in computer programming. (Ex. B at 50). After graduating from college Beaton used computers both in his employment and for personal reasons. (Ex. B at 51).

Beaton purchased and downloaded the Software on the evening of August 24, 2012 because the computer he was using at that time, a Dell laptop ("the Laptop"), was displaying error codes. (Ex. B at 49, 64, 87). The Software was running a Windows 7 operating system. (Ex. B at 51, 56-57). Beaton was the only person who used the Laptop. (Ex. B at 63). He claims that the next morning the Laptop was running worse than before and the Software was running another scan. (Ex. B at 87). Beaton then went on a month long trip to China. (Ex. B at 88-89). When he returned from the trip the Laptop had the same critical errors and he tried to uninstall the Software and did not need Speedy's help to do so because he is good at it. (Ex. B at 89-92). However, Beaton does not think he was successful. (Ex. B at 92). As a result, Beaton

set the Laptop to the side and began using one of the five desktop computers that were in his company's office. (Ex. B at 53, 93). He used that desktop until December 2014 when he bought a new Sony VAIO laptop. (Ex. B at 92-93). Between the time he stopped using the Laptop and purchased the Sony laptop he ran across an advertisement from Edelson soliciting litigation against Speedy. (Ex. B at 93-94). Beaton contacted Speedy in February 2013 seeking a refund but was denied because it was more than 30 days after his purchase. (Ex. B at 139-140, Ex. 8). In response, Beaton threatened Speedy with a class action lawsuit. (Ex. B at 139-140, Ex. 8).

### 3. Edelson Solicits Beaton

Edelson is a Chicago based law firm that specializes in pursuing class actions. Edelson boasts that its practice "stands at the intersection of law and technology" and "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." (Ex. D ¶ 4). To solicit clients for purposes of bringing lawsuits, Edelson advertises on the Internet using companies' registered trademarks without their permission. Pertinent to this case, Edelson ran ads with using Speedy and ParetoLogic's trademarks as keywords. For example, Edelson used the following Speedy keywords to solicit clients:

| Keyword(s) | Title | Ad Body |
|---|---|---|
| speedy pc pro,speedpc | Did you buy SpeedyPC? | The Software May Not Actually Work. Take Action & Recover Your Money. |
| speedy pc pro,speedpc | Did You Buy SpeedyPC? | It May Not Work. Recover Your Money Find Out How to Take Action Here! |
| speedy pc pro | Did you buy SpeedyPC? | The Software May Not Actually Work. Take Action & Recover Your Money. |
| speedpc | Did you buy SpeedyPC? | The Software May Not Actually Work. Take Action & Recover Your Money. |
| speedpc | Bought SpeedyPC? | The software may not actually work. Find out more information here. |
| speedpc | Upset About SpeedyPC? | It Might Not Work. You May Be Able To Recover Money. It's Fast & Easy. |

(Ex. D ¶ 5).  Edelson used approximately 108 additional keyword/ad combinations targeting other ParetoLogic products.  Clicking on any of Edelson's ads brings the user to *www.consumer-classactions.com*, a website owned and operated by Edelson.  Depending on the context of the advertisement and the product it references, the site contains information regarding an investigation launched by a "team of class action attorneys" regarding the "design and sale of various pieces of software that claim to repair registry errors on your computer, protect the privacy of your computer from virus, spyware and malware threats, and improve the overall performance of the computer."  The site encourages users to fill out a simple form for a "free attorney review".  (Ex. D ¶ 6).  In response to these ads Beaton contacted Edelson and they told him there was an option to bring litigation.  (Ex. B at 97).

### 4. Edelson's Prior Lawsuits Against Speedy and ParetoLogic

This is now Edelson's third class action lawsuit involving ParetoLogic and Speedy.  The first lawsuit was filed on February 2, 2012 in the United States District Court for the Western District of Washington, *Pedroza v. RevenueWire Inc., d/b/a Safecart and ParetoLogic*, Case No. 2:12-cv-00183 (W.D.Wash.).  In that suit Edelson alleged various claims against RevenueWire and ParetoLogic relating to the RegCure utility software.  (ECF 1).  RevenueWire and ParetoLogic filed a motion to inspect plaintiff's computer, which Edelson resisted.  (ECF 32, 39).  Soon after the court entered an order allowing that inspection, the case was voluntarily dismissed by Edelson.  (ECF 43, 45).

The second case was filed on September 11, 2012 in the United States District Court for the Northern District of California, *Bastion v. SpeedyPC Software*, Case No. 3:12-cv-04730 (N.D.Cal.).  In that suit Edelson alleged claims similar to those alleged in this case relating to the Software.  On December 11, 2012 Edelson filed an amended complaint on behalf of a different

plaintiff, Rose-Mai Robichaud. Edelson then voluntarily dismissed that case on May 2, 2013. (ECF 48).

Soon before dismissing the *Bastian/Robichaud* case, Edeslon entered into a retainer agreement with Beaton on April 5, 2013 to pursue claims against Speedy relating to the Software. (Ex. E). In that retainer agreement Beaton was instructed that he would have to produce evidence for the case and was advised:

> **You also understand that you have an obligation to preserve evidence, including electronic evidence such as your computer, hard-drive, or e-mails. You must preserve evidence that common sense would dictate is relevant to your claims. You should conference with us prior to destroying any evidence you believe might be relevant to your claims.**

### 5. This Lawsuit

Edeslon filed this lawsuit on November 20, 2013 asserting claims for violation of the Illinois Consumer Fraud Act, fraudulent inducement, breach of contract and unjust enrichment. In its Complaint Edeslon alleged that (1) the Software informed Beaton that hundreds of serious errors were detected on the Laptop that were decreasing his computer's performance and compromising his security, (2) the Software did not actually detect these errors because the Software arbitrarily detects and reports problems as "Serious" or "Critical" and cannot actually perform the beneficial tasks described in its marketing materials and advertisements, (3) despite repeatedly running the Software's scan and purportedly "fixing" the reported errors, the Laptop's performance did not improve. (Ex. F ¶¶ 45-49).

Beaton was deposed twice in this case, the first time on July 28, 2016, and a second time on November 28, 2016. Beaton produced documents responsive to pre-deposition document requests after his first deposition, prompting Speedy to ask for a second deposition, which Edelson refused, requiring Speedy to file a motion to compel, which the Court granted. (ECF 104). One of those documents produced was a Federal Express receipt showing a shipment

between Beaton and Edelson in August 2015, which likely is when Beaton sent Edelson the Laptop. (Ex. G at 47-48). Beaton claimed to have sent the Laptop to Edelson 1 ½ to 2 years prior to his first deposition. (Ex. B at 83-84). Edelson claims to have had made an exact duplicate digital copy of the original forensic image of the Laptop on February 3, 2014. (Ex. H ¶ 4). Beaton has not seen the Laptop since he sent it to Edelson. (Ex. B at 160).

### 6.    Speedy's Expert Discovers The Spoliation

In January 2016 Speedy retained an expert witness in this case, Monty Meyers, to evaluate Beaton/Edelson's claims. Speedy requested in discovery that Edelson produce the Laptop. Edelson resisted, forcing Speedy to file a motion to compel. (ECF 81). That motion was presented to the Court on August 7, 2015. (ECF 83). The parties eventually reached an agreement on inspecting the Laptop, which was documented in a stipulation filed with the Court on June 28, 2016. (ECF 96). Pursuant to that agreement, the hard drive of the Laptop, along with the image of the Laptop's hard drive previously taken by Edelson, were copied by an agreed local vendor (Forensicon) and sent to Meyers in July 2016. (Ex. D ¶ 7).

In the course of examining the subject hard drives, Meyers discovered that on October 16, 2013 someone formatted the hard drive and did a new install of the Windows 7 Home Premium operating system on the Laptop and thereafter transferred user data files back on to the Laptop from an outside source. (Ex. I ¶ 70). Formatting a hard drive is a destructive process that removes everything on the drive and creates a new file system, after which an operating system is installed. (Ex. I ¶ 70). After a format, the more the computer is used (with data being written to the drive) the more difficult it becomes to recover deleted files. (Ex. I ¶ 70). As a result of this formatting and operating system installation procedure, key critical files that normally would have been found on the Laptop and would have given insight into the health and situation of the Laptop during the critical time period relevant to the claims in this case are no longer accessible.

(Ex. I ¶ 71).  As a result, Speedy's ability to evaluate the Laptop in any reasonable way that would be relevant to this case has been almost completely eliminated.  (Ex. I ¶ 71).  If this formatting/reinstall of the operating system on the Laptop had not occurred, most, if not all, of the log file entries relevant to the analysis of Beaton's use and alleged issues with the Software would be available for analysis.  (Ex. I ¶ 80).  The formatting/reinstall event that Meyers observed on the Laptop is not an action that could happen accidentally or unexpectedly on a computer, but rather is the type of activity that requires a deliberate and intentional decision and set of actions on the part of a reasonably experienced computer user in order to properly complete.  (Ex. I ¶ 81).  Given Beaton's claims that the Laptop had issues that lead him to download and use the Software and his claims that the Software did not perform as represented on the Laptop, it would not make sense for Beaton to format his hard drive after retaining counsel and shortly before this lawsuit was filed unless he had concerns about exposing the content of the Laptop in the course of this lawsuit or had concern that the content of the Laptop would not support the allegations of this lawsuit.  (Ex. I ¶ 83).

### 7. Effect of the Spoliation

The formatting of the hard drive, reinstalling of the operating system, reinstalling of applications, and moving of data back onto the drive made it impossible for Meyers to find the relevant log and application data needed to determine much of anything that occurred on the Laptop related to the Software at the time that Beaton claims to have downloaded, installed and used the Software.  (Ex. I ¶ 84).  In fact, the Software was not even present on the forensic image of the Laptop's hard drive and the only thing that Meyers was able to tell about the Software as it relates to the Laptop was to determine that it had been installed on such hard drive at some point

based on certain fragments and remnants forensically recovered from deleted folders that were observed on the hard drive. (Ex. I ¶ 85).

### III.     ARGUMENT

Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Silvestri v. Gen. Motors*, 271 F.3d 583, 590 (4th Cir. 2001); *Thompson v. U.S. Dep't of Housing & Urban Dev.,* 219 F.R.D. 93, 100 (D. Md. 2003) ("The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences."). A party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster Copyright Litig*., 462 F.Supp.2d 1060, 1070 (N.D. Cal. 2006). Spoliation of evidence abuses the judicial process. *Chambers v. NASCO,* 501 U.S. 32, 44-45 (1991). The Court's authority to sanction a party for despoiling evidence derives from two sources: (1) the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and (2) the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006), *quoting* Fed.R.Civ.P. 37(b)(2).

Sanctions for spoliation are appropriate when (1) there was a duty to preserve the specific documents, (2) the duty was breached, (3) the opposing party was harmed by the breach, and (4) the breach was the result of willfulness, bad faith, or fault. *Id.* Sanctions may be imposed the even in the absence of bad faith. *Hodge v. Wal-Mart Stores*, 360 F.3d 446, 450 (4th Cir. 2004).

### A.     Beaton/Edelson Had a Duty to Preserve

The duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation. *Surowiec v. Capital Title Agency,* 790 F.Supp.2d 997,

1005 (D. Ariz. 2011). "Stated differently, the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.*; *Patton v. Wal-Mart Stores,* 2013 WL 6158467, *6 (D. Nev. Nov. 20, 2013); *Napster,* 462 F.Supp.2d at 1067. A litigant must preserve what it knows or reasonably should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request. *Samsung Elecs. v. Rambus*, 439 F.Supp.2d 524, 543 (E.D. Va. 2006). The party alleging spoliation has the burden to prove that the spoliated material falls into one of those categories. *Id.* Of course, a party moving for sanctions based on spoliation "cannot be expected to demonstrate with certainty the content of destroyed documents." *Id.* at 561. Rather, that responsibility falls on the shoulders of the adverse party. *Id.* The non-spoliator does not have to show that the evidence would have been favorable to its case -- it is enough to show that the evidence "naturally would have elucidated a fact at issue." *Vodusek v. Bayliner Marine*, 71 F.3d 148, 156 (4th Cir. 1995). Thus, once the moving party shows that the spoliated material "is [or is likely to be] relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is likely to be requested during discovery, and/or is the subject of a pending discovery request" the burden to show otherwise falls on the party charged with spoliation. *Samsung*, 439 F.Supp.2d at 543. Also, if the record shows that a party destroyed or materially altered documents or materials in bad faith, that establishes, without more, that the destroyed documents or materials were relevant. *Victor Stanley v. Creative Pipe*, 269 F.R.D. 497, 520-21 (D. Me. 2010); *Sampson v. City of Cambridge*, 251 F.R.D. 172, 179 (D. Md. 2008); *Samsung*, 439 F.Supp.2d at 561-62; *Thompson,* 219 F.R.D. at 101. "The reason relevance is presumed following a showing of

intentional or willful conduct is because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts." *Sampson*, 251 F.R.D. at 179, *citing Vodusek*, 71 F.3d at 156; *Samsung*, 439 F.Supp.2d at 561. Since the Seventeenth Century, courts have followed the rule "omnia praesumuntur contra spoliatorem", which means "all things are presumed against the destroyer". *Gurvey v. Fixzit Nat. Install Services,* 2011 WL 550628, *4 (D. N.J. Feb. 8, 2011). A party's destruction of evidence is considered "willful" if the party "has some notice that the [evidence was] potentially relevant to the litigation before [it was] destroyed." *Leon,* 464 F.3d at 959. "Once the duty to preserve attaches, a party must 'suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation.'" *Lopez v. Santoyo*, 2012 WL 5427957, *7 (S.D. Cal. Nov. 7, 2012).

Here there is no question that on October 16, 2013 Beaton/Edelson had a duty to preserve the Laptop. Beaton/Edelson were on notice as soon as they contemplated litigation against Speedy that they had a duty to preserve this evidence. They entered into an agreement to that effect on April 7, 2013. Prior to that date, Edelson had put ads out suggesting claims against Speedy for the Software and Beaton had threatened Speedy with a class action lawsuit.[2]

The Laptop is not only critical evidence in this case – it is the most important evidence in the case. Edelson/Beaton allege in the Complaint that the Software did not accurately identify and report the actual condition of the Laptop and that Beaton was misled into believing that the Laptop was at serious risk and that he needed to pay to register SpeedyPC Pro in order to repair it, and further that the Software did not perform as advertised and was designed to invariably return false errors, and that and that after purportedly "fixing" the reported errors, the Laptop's

---

[2] Edelson's actions in soliciting this lawsuit are counter to President Abraham Lincoln's sage advice to "***Never stir up litigation…A worse man can scarcely be found than one who does this***." Abraham Lincoln: *Notes for a Law Lecture* (July 1, 1850), in 2 Collected Works of Abraham Lincoln (Roy P. Basler, ed., Rutgers Univ. Press, 1953).

performance did not improve. Obviously to defend against these allegations Speedy would need to be able to have the Laptop preserved to determine whether these allegations were in fact true.

### B.     Beaton/Edelson Breached Their Duty to Preserve

Once a court concludes that a party was obliged to preserve relevant evidence, it must then consider whether the party breached this obligation, either by failing to preserve, or by destroying or altering the evidence. Any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence, suffices to support a finding of spoliation. *Silvestri,* 271 F.3d at 590; *Pandora Jewelry v. Chamilia,* 2008 WL 4533902, *9 (D. Md. Sept. 30, 2008); *Samsung,* 439 F.Supp.2d at 540. The relevant documents or materials "may have been lost or destroyed inadvertently, 'for reasons unrelated to the litigation,' or the loss may result from intentional acts, calculated to prevent the other party from accessing the evidence." *Victor Stanley,* 269 F.R.D. at 529; *Rimkus Consulting Grp. v. Cammarata,* 688 F.Supp.2d 598, 613 (S.D. Tex. 2010).

The evidence here shows beyond question that Beaton/Edelson breached their duty to preserve the Laptop. On October 16, 2013, over a year after Beaton claims to have used the Software on the Laptop, six months after he had signed the engagement letter with Edelson, and just over a month prior to the filing of this case, someone formatted the hard drive on and did a new install of the Windows 7 Home Premium operating system on the Laptop and thereafter transferred user data files back on to the Laptop from an outside source. (Ex. I ¶ 70). Formatting a hard drive is a destructive process that removes everything on the drive and creates a new file system, after which an operating system is installed. (Ex. I ¶ 70).

### C.     Appropriate Sanctions

A district court can sanction a party who has engaged in spoliation of evidence under the inherent power of federal courts to levy sanctions in response to abusive litigation practices. *Leon,* 464 F.3d at 958. Specifically, sanctions that a federal court may impose for spoliation

include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh and case-dispositive sanctions of dismissal or judgment. *Med. Lab Mgmt. Consultants v. Am. Broad. Cos.,* 306 F.3d 806, 824 (9th Cir. 2002); *Surowiec,* 790 F.Supp.2d at 1008. When assessing what sanction to impose, courts consider the degree of culpability and the extent of the prejudice. *Marrocco v. General Motors*, 966 F.2d 220, 224 (7th Cir. 1992); *Silvestri*, 271 F.3d at 590; *Samsung,* 439 F.Supp.2d at 541.

A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *U.S. v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002). Moreover, because "the relevance of...[destroyed] documents cannot be clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Alexander v. Nat'l Farmers Org.,* 687 F.2d 1173, 1205 (8th Cir. 1982). "The prevailing rule [in this circuit] is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985); *see also Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 272 (7th Cir. 1993) ("[I]f, being sensitive to the possibility of a suit, a company then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence.").

In this case the conduct of the spoliator was either deliberate or negligent. Beaton/Edelson knew that the Laptop was the central piece of evidence in their case against Speedy. Whether Beaton/Edelson believed they were securing advantage to their case by deliberately destroying the evidence or whether they simply ignored their responsibilities does

not matter. *See Nucor Corp. v. Bell*, 251 F.R.D. 191 (D. S.C. 2008) (sanctions issued for spoliation of evidence through continued use of laptop). Assessing the quantum of fault becomes appropriate when determining the appropriate sanction, not in deciding whether spoliation has taken place. *Silvestri*, 271 F.3d at 590F.R.D. at 529; *Trigon Ins. v. U.S.,* 204 F.R.D. 277, 287 (E.D. Va. 2001).

Here the destruction of evidence was highly prejudicial to Speedy. Beaton/Edelson's actions denied Speedy access to the only evidence from which it could adequately develop its defenses to Beaton/Edelson's claims that the Software falsely reported errors on the Laptop and did nothing to enhance the Laptop's performance.

### 1. Dismissal Is An Appropriate Sanction

Dismissal is an available sanction when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch,* 69 F.3d at 348; *Leon,* 464 F.3d at 957 (dismissal of case warranted as sanction for spoliation). Imposing a sanction that terminates a case is "severe" and is "the ultimate sanction for spoliation." *Silvestri,* 271 F.3d at 593. Entry of dismissal is justified in circumstances of bad faith or where the spoliation is so prejudicial that it prevents the non-spoliating party from maintaining its case. *Chambers,* 501 U.S. at 44-45; *Silvestri*, 271 F.3d at 593 ("even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case). "Destruction is willful when it is deliberate or intentional," whereas bad faith destruction occurs when a party engages in destruction "for the purpose of depriving the adversary of evidence." *Powell v. Town of Sharpsburg,* 591 F.Supp.2d 814, 820 (E.D.N.C. 2008); *Buckley v. Mukasey,* 538 F.3d 306, 323 (4th Cir. 2008). There is a national

trend to dismiss cases based upon spoliation of evidence. *See* 20 The National Law Journal 2 (1997).

Dismissal of Beaton's Complaint is appropriate here. Given the timing of the spoliation on the Laptop being shortly before this lawsuit was filed, there is evidence of deliberate bad faith conduct. This is particularly inexcusable where Beaton testified that as of October 2013 he was no longer using the Laptop. While it is not clear exactly when Edelson took possession of the Laptop, if Beaton still had the Laptop in October 2013 he should not have. Beaton retained Edelson back in April 2013 and at that time Beaton was no longer using the Laptop. Edelson, who purports to be experienced in these types of cases, solicited the filing of this lawsuit and had filed numerous similar lawsuits, including two against Speedy/Partetologic, surely knew the importance of maintaining the condition of the Laptop. Edelson should have immediately secured the Laptop upon its engagement to prevent this type of thing from happening. The bottom line is that the destruction of this evidence is inexcusable and highly prejudicial and deserving of the harsh sanction of dismissal. *See Domanus v. Lewicki,* 742 F.3d 290 (7th Cir. 2014) (upholding $413 million default judgment for failure to preserve evidence).

### 2.     Attorneys' Fees Are An Appropriate Sanction

Under its inherent powers "a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Leon*, 464 F.3d at 961 (dismissal of case plus imposition of $65,000 monetary sanction warranted as sanction for spoliation); *Rimkus,* 688 F.Supp.2d at 647; *Herson v. City of Richmond,* 2011 WL 3516162 (N.D. Cal. Aug. 11, 2011). The court may impose monetary sanctions even in the absence of willful destruction. *Realnetworks v. DVD Copy Control Ass'n,* 264 F.R.D. 517, 530 (N.D. Cal. 2009). Also, even when a moving party does not demonstrate prejudice, a court may impose monetary sanctions. *See, e.g., Kopitar v. Nationwide*

*Mut. Ins.*, 266 F.R.D. 493, 501 (E.D. Cal. 2010); *Pension Comm. v. Banc of Am. Sec.*, 685 F.Supp.2d 456, 467 (S.D.N.Y. 2010); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008). An award of costs serves both punitive and remedial purposes – it deters spoliation and compensates the opposing party for the costs incurred. *Capellupo v. FMC*, 126 F.R.D. 545 (D. Minn. 1989).

For the same reasons that dismissal is proper, an award of attorneys' fees is also proper here. Speedy has needlessly expended significant attorneys' fees and costs in defending this case and in discovering the spoliation of evidence for which it should be reimbursed by Beaton/Edelson.

## IV.   CONCLUSION

WHEREFORE, Defendant, SpeedyPC Software, Inc. requests that this Court grant its Motion for Sanctions against Plaintiff and enter an Order dismissing this case and awarding SpeedyPC Software, Inc. its attorneys' fees and expenses incurred in defending this lawsuit and for such further relief as this Court deems proper.

SPEEDYPC SOFTWARE

By: /s/James K. Borcia
        One of Its Attorneys

James K. Borcia (jborcia@tresslerllp.com)
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000

# **APPENDIX**

**TIMELINE OF THE KEY EVENTS RELEVANT TO**
<u>**SPEEDY'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**</u>

| | |
|---|---|
| 8/24/2012 | Beaton purchases the Software |
| 9/2012 | Beaton returns from China and stops using the Laptop and begins using desktop computer |
| 2/2013 | Beaton contacts Speedy seeking a refund |
| 4/5/2013 | Beaton signs retainer agreement with Edelson |
| 10/16/2013 | Laptop hard drive reformatted, new install and data transfer |
| 11/20/2013 | Edeslon/Beaton file this lawsuit |
| 12/2014 | Beaton purchases Sony VAIO laptop |

**EXHIBIT INDEX TO**
**SPEEDY'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

Exhibit A        Barry Dodd Affidavit

Exhibit B        Beaton 7/28/16 Deposition Transcript

Exhibit C        Beaton 7/28/16 Deposition Exhibit 1

Exhibit D        Kevin Kearney Affidavit

Exhibit E        Beaton 7/28/16 Deposition Exhibit 8

Exhibit F        Complaint

Exhibit G        Beaton 11/28/16 Deposition Transcript

Exhibit H        Stipulated Protocol for Defendant's Inspection of Beaton's Computer

Exhibit I        Monty Myers Report