# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, | Case No. 1:13-cv-08389 |
| *Plaintiff*, | Honorable Andrea R. Wood |
| *v.* | |
| SPEEDYPC SOFTWARE, a British Columbia company, | |
| *Defendant*. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.........................................2

I.      This Case is About SpeedyPC Pro's Underlying Coding and Its Uniform Inability
        to Perform the Functions Promised by SpeedyPC...................................................2

II.     Defendant's Characterizations of the Status of Plaintiff's Computer and His
        Preservation Efforts are Inaccurate and Misleading .............................................5

III.    Defendant Baselessly Calls into Question Plaintiff's Motives................................7

ARGUMENT .......................................................................................................................10

I.      Sanctions are Inappropriate Given that Plaintiff did not Destroy Relevant
        Information, Let Alone Act Willfully or in Bad Faith..............................................10

        A.      Defendant could not possibly show that it has been harmed because the
                data on Plaintiff's hard drive was not destroyed ........................................10

        B.      Plaintiff did not act willfully or in bad faith...............................................12

        C.      The Sanctions Requested are Severe, to be Imposed in Only the Rarest
                of Cases, and Would be Inappropriate Under the Circumstances Here ........14

CONCLUSION ...................................................................................................................16

## **TABLE OF AUTHORITIES**

### UNITED STATES CIRCUIT COURTS OF APPEALS CASES

*Bracey v. Grondin*,
    712 F.3d 1012 (7th Cir. 2013) ...........................................................................12

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ...............................................................................9

*Faas v. Sears, Roebuck & Co.*,
    532 F.3d 633 (7th Cir. 2008) .............................................................................12

*Long v. Steepro*,
    213 F.3d 983 (7th Cir. 2000) .............................................................................12

*Madamba v. Certified Grocers Cal., Ltd.*,
    145 F.3d 1339 (9th Cir. 1998) ...........................................................................15

*Marrocco v. General Motors Corp.*,
    966 F.2d 220 (7th Cir. 1992) .............................................................................14

*Mathis v. John Morden Buick, Inc.*,
    136 F.3d 1153 (7th Cir. 1998) ...........................................................................12

*Park v. City of Chicago*,
    297 F.3d 606 (7th Cir. 2002) .............................................................................12

*Smith v. United States*,
    293 F.3d 984 (7th Cir. 2002) .............................................................................10

### UNITED STATES DISTRICT COURT CASES

*Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*,
    No. 09-cv-141-MHT, 2010 WL 11425322 (M.D. Ala. Feb. 18, 2010) ......................12, 13

*BP Amoco Chem. Co. v. Flint Hills Res., LLC*,
    697 F. Supp. 2d 1001 (N.D. Ill. 2010) ..............................................................10

*Certain Underwriters at Loyd's of London v. Rauw*,
    No. 05-cv-2377-SBA, 2007 WL 2729117 (N.D. Cal. Sept. 18, 2007) ...........................15

*China Ocean Shipping (Group) Co. v. Simone Metals Inc.*,
    No. 97-cv-2694, 1999 WL 966443 (N.D. Ill. Sept. 30, 1999) ...........................................14

*Cohn v. Guaranteed Rate, Inc.*,
No. 14-cv-9369, 2016 WL 7157358 (N.D. Ill. Dec. 8, 2016)...........................................10

*Domanus v. Lewicki*,
No. 08 C 4922, 2012 WL 3307364 (N.D. Ill. Aug. 13, 2012).........................................14

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
No. 09-cv-3633, 2011 WL 5598365 (N.D. Ill. Nov. 16, 2011) ........................................9

*Krumwiede v. Brighton Assocs., L.L.C.*,
No. 05-cv-3003, 2006 WL 1308629 (N.D. Ill. May 8, 2006)...........................................11

*MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*,
715 F. Supp. 2d 786 (N.D. Ill. 2010) ..............................................................................12

*Olson v. Brown*,
284 F.R.D. 398 (N.D. Ind. 2012) ......................................................................................9

*Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*,
No. 05 C 4088, 2011 WL 722467 (N.D. Ill. Feb. 23, 2011)...........................................14

*Thomas Kinkade Co. v. Hazlewood*,
No. 06-cv-7034, 2007 WL 1655846 (N.D. Cal. June 6, 2007).......................................15

**MISCELLANEOUS**

Data Recovery Pro | Recovering Deleted Files, http://www.recovering-deleted-files.net/
recovery-software/data-recovery (last visited Feb. 13, 2017). ...........................................6

Fed. R. Evid. 609 ........................................................................................................................9

xx

iii

## INTRODUCTION

Defendant SpeedyPC Software's ("Defendant" or "SpeedyPC") motion for spoliation sanctions is a mess of factual inaccuracies and mischaracterizations of the claims asserted. Indeed, more than three years into the litigation, SpeedyPC still doesn't understand the central theory of this case. It is not, as Defendant contends, that the case turns on the condition of any individual user's computer when they used its SpeedyPC Pro software ("SpeedyPC Pro" or the "Software"). Rather, this case is (and always has been) about whether Defendant's representations about the Software's functional capabilities were consistent with what the Software was actually coded to do.[1] Simply put, the condition of any user's computer had no effect on the content of SpeedyPC's widespread representations or how the code was actually written and designed to function. As a result, it has never been necessary for Defendant to inspect or otherwise analyze Plaintiff's or any other class member's computer.

SpeedyPC couldn't be more off base about the circumstances surrounding Plaintiff Archie Beaton's ("Beaton's" or "Plaintiff's") computer from a factual perspective either. Plaintiff didn't (as Defendant represents) use any special tools to reformat the hard drive and thereby destroy all data on it. Instead, an IT professional performed a basic reinstallation of the Windows operating system (which included formatting of the hard drive, one of several methods Microsoft offers upon installation) as a way to fix his computer. Moreover, and as shown below, the data Defendant purports to need from the hard drive is still accessible from it. Defendant just didn't take the time necessary to locate it. Further, Defendant has offered not a single shred of evidence to support its contention that Plaintiff went through the process of formatting his hard

---

[1] Based on the evidence adduced to date, there is no question that representations regarding the Software are not consistent with the code written for it. Notwithstanding, a determination that Defendant misrepresented the functionality of the Software is not necessary to dispose of Defendant's request for sanctions.

drive with the intent to destroy information adverse to his case. That's because it couldn't. Plaintiff simply hoped to get his laptop functioning properly again.

For these reasons and as explained below, SpeedyPC has failed to carry its burden to show that sanctions are warranted here. Therefore, its motion should be denied in its entirety.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**I.    This Case is About SpeedyPC Pro's Underlying Coding and Its Uniform Inability to Perform the Functions Promised by SpeedyPC.**

As alleged in detail in Plaintiff's complaint, and explained at length in his briefing in support of class certification, this case is not about the problems afflicting any one consumer's computer. It is and always has been focused on the fact that SpeedyPC Pro's underlying source code and resulting functionality is inconsistent with Defendant's representations about what the Software could deliver to consumers. Plaintiff's two primary theories of recovery—his contract-based theory and his consumer-fraud based theory—rise and fall on those representations and functionality alone. (Dkt. 1, ¶¶ 58-69, 81-90.)

The contract theory forms the basis for the broader proposed Class's claims: Under this theory, Beaton alleges that SpeedyPC Pro failed to live up to Defendant's assertions about the Software's capability and seeks to recover the difference between the value of the Software as advertised and the value of the Software as actually coded and delivered. (*Id.* at ¶¶ 84-85, 90.) This is a classic breach of warranty claim, both in terms of the theory of liability and the theory of damages. Beaton's consumer-fraud theory, the basis for the claims of the proposed Subclass, alleges that the marketing materials developed and disseminated by Defendant were objectively deceptive because they would mislead a reasonable consumer given that, Beaton alleges, the Software's actual functionality is nothing like what is represented in its marketing. (*Id.* at ¶¶ 61-66.) Key to both are the consistency (or lack thereof) between what Defendant represented it was

2

delivering to consumers in terms of the Software's functional capabilities, and what the Software was actually capable of given its underlying coding and design. What does not affect either is the condition of any particular user's computer.

The evidence adduced to date shows that Defendant's primary focus was to design its marketing representations regarding the Software to place SpeedyPC Pro among the top results for Internet searches related to slow computers, crashes, errors, malware, and viruses. (Dkt. 127-1 at 18:1-9, 19:3-12; 19:18-20; 20:10-11.) Whether the Software could perform in a way consistent with those representations was beside the point. Defendant devised marketing representations so that anyone looking for solutions to their computer problems using Google's Internet search engine would find SpeedyPC Pro. (*Id.* at 20:22-25, 24:17-20.) The result was a comprehensive campaign that advertised the Software as capable of "Fix[ing] Common Errors," "Boost[ing] PC Speed," "Clean[ing] Up Clutter," and "Fix[ing] All" problems. (Dkt. 125-4.) It promised the "free scan [would] take a comprehensive look at your PC and do a performance check," (Dkt. 125-5), and that it was "The Premium Solution" because it "has a complete suite of cleaning, repair and optimization tools" that "addresses the various areas that can cause errors and drastically diminish PC performance." (*Id.*)

Ultimately, neither the free-trial nor full versions of the Software delivered on those promises. According to Defendant itself, the free version of the Software "doesn't" know whether a problem or error will "have an impact on the performance of a computer." (Dkt. 127-2 at 43:10-44:11.) And its own expert recognizes that having SpeedyPC Pro assess the health of a computer is an "unrealistic standard. I could say I want Microsoft Word to cook dinner for me, but that doesn't mean it's a reasonable standard for the software package." (Dkt. 127-4 at 170:24–176:4.) In other words, the Software did not perform any actual analysis to determine if

the "Performance" level of a user's computer was *actually* low or if the computer was in "Critical" condition. (*See* Dkt. 127-3 at ¶¶ 26, 31, 35, 41, 45-46; Dkt. 127-2 at 43:10-44:11.)

For its part, the full version of the Software was designed to look only for certain files and entries and count the overall number or collective size identified. (Dkt. 127-2 at 37:1, 49:2-20.) It did not and could not detect whether any files on a given computer were actually harmful or had any negative effect on the computer; instead the Software was an arbitrary counting mechanism, a pure numbers game. (*Id.* at 44:4-11, 49:10-20.) In fact, the Software wasn't coded to even consider the model and speed of the central processing unit, the hard drive used, the amount of RAM installed and available, or the amount of available disk space when determining the "Performance" level of the computer or its "Damage" rating—information that is undoubtedly relevant to the performance and health of an individual computer. (*See* Dkt. 127-3 at ¶ 12.) Indeed, Defendant's expert testified that the types of problems afflicting Plaintiff's computer could not be fixed by the Software, but Defendant never disclosed as much. (*See* Dkt. 127-4 at 124:1-128:14) (stating that SpeedyPC Pro can't fix hardware problems, amongst other things, and that requiring such functionality "would be like saying Microsoft Word doesn't automatically correct my spelling as good as I'd like it to . . . no product does everything, and -- and so it does what it does . . . that's just the way the software industry works.").

Not surprisingly, a review of its source code confirms that the Software was programmed to execute these primary features and function *the same way on every computer*. (Dkt. 127-3 at ¶ 7.) Despite its characterizations to the contrary, Defendant has failed to adduce a shred of evidence to suggest otherwise, let alone that the Software would have had different functionality

depending upon the computer on which it was installed.[2] Thus, the idea that the condition or contents of Plaintiff's computer are material to the claims asserted continues to be an unsupported and illogical theory of Defendant's.

## II. Defendant's Characterizations of the Status of Plaintiff's Computer and His Preservation Efforts are Inaccurate and Misleading.

In addition to ignoring the actual claims asserted by Plaintiff, Defendant also severely mischaracterizes the factual circumstances surrounding the condition of his computer and preservation efforts. Contrary to Defendant's assertions, the record demonstrates that Plaintiff did not destroy the data on his hard drive, let alone do so in bad faith or to hide any information adverse to his positions in the litigation.

Although SpeedyPC contends that, "[f]ormatting a hard drive is a destructive process that removes everything on the drive and creates a new file system, after which an operating system is installed," (Mot. at 6 (citing Dkt. 114-9 ¶ 70)), its expert admitted—as he must—that the type of formatting that occurred on Plaintiff's hard drive *does not* "remove everything on the drive." (Dec. 21, 2016 Deposition Transcript of Monty Myers ("Myers Tr.") at 152:3–154:23, excerpts of which are attached as Exhibit 1). Instead, the type of formatting that would actually "remove everything on the drive" requires "'advanced tools" of the kind used by the Department of Defense. (*Id.* at 154:23.) No one suggests Plaintiff used (or knew how to use) those sorts of tools here.[3]

In any event, the type of formatting that occurred on Plaintiff's computer did not

---

[2]     Of course, there is no basis in reality—or the record—to believe that a consumer software company, like Defendant, would design its products using different coding and features for each individual purchaser. That doesn't happen generally and did not happen here.

[3]     It appears that Defendant's expert misrepresented the type of formatting executed on Plaintiff's computer because he was "trying to speak to a pretty non-technical audience" through his report, whom he assumed couldn't understand the difference. (Myers Tr. at 152:9–10.)

"remove[] everything on the drive." It "released areas of the disc," leaving data behind and allowing Defendant's expert to "determine that SpeedyPC was on there." (*Id.* at 153:18-154:16.)[4] Nevertheless, the expert still claims that he couldn't find "key critical files that normally would have been found." (Mot. at 6.) That said, he admitted that he didn't bother to actually look for any of these so-called "key" files nor could he identify them or state their importance in the litigation (other than them being "critical"). (*See, e.g.,* Myers Tr. at 148:22–151:22; 161:13–162:3; *see also id.* at 149:15–23) (stating that "[t]here was no information to describe" the configuration of the SpeedyPC Pro software on Plaintiff's laptop).)

If he had conducted a meaningful analysis of the hard drive images produced, however, the expert would have discovered that the SpeedyPC configuration files and other "key" files do exist on Plaintiff's laptop. For instance, the "settings.xml" file, amongst others, is still accessible on Plaintiff's hard drive and, as the name indicates, it contains information regarding the version of the Software that ran on the computer, the scan order, the scan types, and other information. (*See* Figure 1.) It's not difficult to compare the contents of that file to a file containing the default settings of the Software to find that the settings are, in fact, the same. (*See* Figure 2.)

In other words, the data on Plaintiff's hard drive was never destroyed (as Defendant contends) and the sorts of files that Defendant's expert claims were necessary but missing (despite never looking for them) were still present on the hard drive.[5]

---

[4]    Though explained in further detail in Plaintiff's opposition to Defendant's motion to file a third amended answer, this testimony—along with significant other documentary evidence—belies Defendant's position that Plaintiff never actually purchased or used the Software.

[5]    In addition, Defendant and its expert represent to the Court that the "formatting/reinstall event that Meyers [*sic*] observed on the Laptop is not an action that could happen accidentally or unexpectedly on a computer," (Mot. at 7), but Defendant markets a data recovery tool that can help "locate and restore data lost to an accidental reformat." Data Recovery Pro | Recovering Deleted Files, http://www.recovering-deleted-files.net/recovery-software/data-recovery (last visited Feb. 13, 2017).

```
settings.xml   € ên  1  ˡh ↑  <PARETOSETTINGS>
        <APPNAME>SpeedyPC Pro</APPNAME>
        <APPVER>3.1.4</APPVER>

        <EXENAME>speedypc.exe</EXENAME>
        <COMPANYNAME>SpeedyPC Software</COMPANYNAME>
        <COMPANYURL>http://www.speedypc.com</COMPANYURL>
        < MPANY_WEB_BUTTON>SpeedyPC.com</COMPANY_WEB_BUTTON>

        <VENDID>1</VENDID>
        <LANGID>en</LANGID>
        <CPID>129</CPID>
        <PID>31</PID>
        <MerchantFID>paretologic</MerchantFID>
        <ProductFID>speedypc</ProductFID>
        <UCN>SPEEDY_EB78B4C2-2D35-4c10-A6E2-DA40D9B3401A</UCN>
        <ULID>{CD2C2C47-0FDB-4980-B215-40FA21A65392}</ULID>
        <UUSPATH>\\speedypc software\\UUS3\\UUS3.dll</UUSPATH>

        <SCAN_ORDER>1;2;4;5</SCAN_ORDER>
        <SCAN_TYPES>1;2;4;5</SCAN_TYPES>
        <SHOW_TOKEN>1</SHOW_TOKEN>

</PARETOSETTINGS>
```

```
<PARETOSETTINGS>
        <APPNAME>SpeedyPC Pro</APPNAME>
        <APPVER>3.1.4</APPVER>

        <EXENAME>speedypc.exe</EXENAME>
        <COMPANYNAME>SpeedyPC Software</COMPANYNAME>
        <COMPANYURL>http://www.speedypc.com</COMPANYURL>
        <COMPANY_WEB_BUTTON>SpeedyPC.com</COMPANY_WEB_BUTTON>

        <VENDID>1</VENDID>
        <LANGID>en</LANGID>
        <CPID>129</CPID>
        <PID>31</PID>
        <MerchantFID>paretologic</MerchantFID>
        <ProductFID>speedypc</ProductFID>
        <UCN>SPEEDY_EB78B4C2-2D35-4c10-A6E2-DA40D9B3401A</UCN>
        <ULID>{CD2C2C47-0FDB-4980-B215-40FA21A65392}</ULID>
        <UUSPATH>\\speedypc software\\UUS3\\UUS3.dll</UUSPATH>

        <SCAN_ORDER>1;2;4;5</SCAN_ORDER>
        <SCAN_TYPES>1;2;4;5</SCAN_TYPES>
        <SHOW_TOKEN>1</SHOW_TOKEN>

</PARETOSETTINGS>
```

(**Figure 1**, showing settings.xml found on Plaintiff's laptop at logical Sector: 313,590,871, offset 256208AE70)

(**Figure 2**, showing default settings.xml)

### III.    Defendant Baselessly Calls into Question Plaintiff's Motives.

Much like the record debunks Defendant's characterizations of the status of Plaintiff's computer and the files available on it, it also belies Defendant's claims about Beaton's motives. It was not that Beaton was hoping to destroy relevant evidence—again, all of the evidence still exists—but rather, that his computer continued to fail and he was looking for a way to fix it. As Defendant's expert explained, Plaintiff's laptop had hardware problems that could never have been fixed by the Software. (Myers Tr. at 127:11-19.) And that with "[a]n older computer, as -- as we have here, if it's having issues, you might try a SpeedyPC pro[duct]. … You might try SpeedyPC, *you might reformat your drive or reinstall your operating system. So I would say [reformatting] might be a reasonable step under certain circumstances*." (*See id.* at 118:12–123:19 (emphasis added).) That was exactly Plaintiff's experience: Beaton was having trouble with his computer, purchased the Software to fix it and, when that didn't work, requested assistance from an IT professional who suggested reinstalling his operating system. (*See* Dkt. 1 ¶¶ 42-49; *see also* Declaration of Archie Beaton ("Beaton Decl.") ¶¶ 2-3, attached as Exhibit 2;

Declaration of Brian Sargent ¶¶ 2-5, attached as Exhibit 3.)

Similarly, nothing about how or when Plaintiff's computer was produced to Defendant for inspection suggests that he was attempting to withhold evidence. The Parties held their Rule 26(f) conference in February 2014, at which point Defendant requested—for the first time—unfettered access to Plaintiff's computer for inspection. Plaintiff's counsel responded by explaining that the request was inappropriate for a number of reasons, including that Plaintiff's claims are based upon Defendant's misrepresentations regarding the functionality of the Software, regardless of the machine on which is installed and therefore, the focus of the action and any discovery should be on the design and coding of the Software, not any one class member's individual computer. (*See* Mar. 19, 2014 Letter to Kevin Kearney, attached as Exhibit 4.) In an effort to compromise, however, Plaintiff proposed that he provide an image of his hard drive to a third-party forensic expert of Defendant's choosing who would search the drive for discoverable information requested by Defendant. (*See* April 3, 2014 Letter to Kevin Kearney, attached as Exhibit 5.) Except for concluding that his computer was at issue, SpeedyPC never provided a substantive explanation as to why reviewing an image was not workable or would not adduce the information it needed.[6] (*See id*.) Despite its so-called need, Defendant did not take any action with the Court on the matter after its initial request to stay discovery was denied. (*See* Dkts. 26, 28.) And after the Court denied its motion to dismiss, SpeedyPC chose to move to dismiss the action based on *forum non* conveniens and seek a stay of discovery (which the Court granted) rather than compel the information it so desperately needed. (*See* Dkt. 53.)

---

[6] Despite its protests then and to this day, a physical inspection of Plaintiff's computer has never been necessary to support SpeedyPC's defenses, however misguided they may be. Defendant's own expert confirmed as much. (Myers Tr. at 83:9-21; *see also id.* at 85:14-10) ("I don't want to go in somebody else's place and start mucking around with their computer. I wanted to take an image and do it that way.").)

Nearly a year later, on August 7, 2015, Defendant filed a motion to compel the inspection of Plaintiff's computer or, in the alternative, a mirror image of its hard drive, which Plaintiff had already offered a year and a half prior. (Dkts. 81, 82.) Despite not believing that access to his computer was necessary, Plaintiff agreed to allow Defendant to inspect the machine under controlled conditions. (*See* Dkt. 83.) Plaintiff's counsel sent a proposed protocol to defense counsel on September 14, 2015. (*See* Sept. 14, 2015 Email to J. Borcia, attached as Exhibit 6.) Defendant delayed more than six months—i.e., until March 20, 2016—before sending any edits to the draft protocol. (*See* Mar. 20, 2016 Email to B. Richman, C. Booth, attached as Exhibit 7.)

In other words, it was Defendant's own delay that prevented it from gaining access to the computer until several years into the case, not any motivation by Plaintiff to avoid providing information. In fact, he repeatedly attempted to do so despite not believing it necessary.[7]

---

[7] Defendant's recent filings also show that it plans to dredge up Plaintiff's nearly 40-year-old conviction to call his character (or adequacy to represent the proposed classes) into question. (See Dkt. 114, at 2.) That argument fails. A criminal history can be relevant if the crime involves dishonesty or untrustworthiness. *See Olson v. Brown*, 284 F.R.D. 398, 413 (N.D. Ind. 2012) ("personal characteristics, such as the credibility and integrity of a putative class representative, have a direct bearing on the ability to adequately represent absent members of the class"). But "[f]or an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

SpeedyPC cannot meet this standard. The evidence shows that Beaton is credible. He is a contributing member of his community and a successful entrepreneur. (Dkt. 125-13 at 19:24-22:14, 60:1-10.) In fact, Canada itself has recognized Beaton's character, as the Canadian government has provided him with a Letter of Rehabilitation that allows him to travel to Canada and even to work there if he chooses. (*See* Dkt. 125-15.) Moreover, Beaton's conviction is so stale at this point that it is inadmissible as evidence of his character. *See* Fed. R. Evid. 609(b); *see also Hawkins v. Securitas Sec. Servs. USA, Inc.*, No. 09-cv-3633, 2011 WL 5598365, at *5 (N.D. Ill. Nov. 16, 2011) (rejecting argument that evidence of previous bad acts rendered class representative inadequate because the "alleged dishonesties and bad acts are likely inadmissible").

**ARGUMENT**

**I.    Sanctions are Inappropriate Given that Plaintiff did not Destroy Relevant Information, Let Alone Act Willfully or in Bad Faith.**

"Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002); *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1035 (N.D. Ill. 2010) ("It is clear that the 'destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the [plaintiff's] case.'"). Before a court may award sanctions for spoliation, it must find that all of the following occurred: "(1) there was a duty to preserve the specific documents and/or evidence; (2) the duty was breached; (3) the other party was harmed by the breach; and (4) the breach was caused by the breaching party's willfulness, bad faith, or fault." *Cohn v. Guaranteed Rate, Inc.*, No. 14-cv-9369, 2016 WL 7157358, at *3 (N.D. Ill. Dec. 8, 2016). Here, Plaintiff's reinstallation of his operating system and reformatting of his hard drive didn't result in the destruction of evidence and thus cannot have harmed or otherwise prejudiced Defendant in any way. Nor do the actions taken by him in hopes of making his laptop usable again amount to willful or bad faith conduct.[8]

**A.    Defendant could not possibly show that it has been harmed because the data on Plaintiff's hard drive was not destroyed.**

In addition to the fact that Plaintiff's computer has nothing to do with how the Software was coded or the veracity of Defendant's representations regarding its functionality, Defendant's

---

[8]    Plaintiff questions whether he had a duty to preserve his laptop given that the claims at issue are focused on (i) the alleged misrepresentations Defendant made regarding the functionality of its Software, and (ii) the functions the Software actually performed based on its coding, neither of which are affected by the contents or condition of Plaintiff's computer. *See, e.g., Cohn*, 2016 WL 7157358, at *3 (explaining that the duty to preserve applies to "material" evidence likely to be used to support a claim or defense). Nevertheless and as explained herein, Plaintiff did preserve his computer and its contents, including the information Defendant and its expert now say they need.

motion fails because Plaintiff did not destroy the data Defendant seeks and therefore, it cannot have been harmed.[9] As explained above, the relevant files related to his purchase and use of the Software remain accessible from the image of Plaintiff's hard drive, which he first offered to produce nearly three years ago. Plaintiff can hardly be blamed—much less sanctioned—for Defendant's delay in taking him up on the offer or failing to even look for the files it now contends it needs. (*See* Myers Dep. at 150:6-13 (Q. So you said you found five files, and then you didn't do an exhaustive search of the rest? A. Keep in mind, these are not -- these aren't really complete files. All we're finding is that the files by these names were on the drive. So doing exhaustive work, most of these files might have been partial or not even complete. So it would be un -- you know, really a waste of time.").) Had Defendant or its expert been at all diligent, they would have found the "Settings" file they contend is material to their defenses. They were not and have only themselves to blame.

Indeed, a party only suffers harm or prejudice due to spoliation when "lost evidence prevents the aggrieved party from using evidence essential to its underlying claim." *Krumwiede v. Brighton Assocs., L.L.C.*, No. 05-cv-3003, 2006 WL 1308629, at *10 (N.D. Ill. May 8, 2006). Given the files Defendant's expert claims are needed for its defense are still available, there can be no question that Defendant has not met its burden to show any harm or prejudice whatsoever. In any event, Defendant fails to offer any explanation as to why the files are relevant, instead making bald assertions that the "Laptop is not only critical evidence in this case – it is the most important evidence in the case." (Mot. at 10.) Those sorts of conclusory allegations are not

---

[9]     In the retention letter signed by Mr. Beaton, the letter states "[y]ou also understand that you have an obligation to preserve evidence, including electronic evidence such as your computer, hard-drive, or e-mails. You must preserve evidence that common sense would dictate is relevant to your claims. You should conference with us prior to destroying any evidence you believe might be relevant to your claims." (Dkt. 120 at 8.)

enough to carry its burden here, nor are they sufficient to force dismissal of the action.

**B. Plaintiff did not act willfully or in bad faith.**

Not only is it clear that Defendant has not been harmed, the record also confirms that Beaton did not act willfully or in bad faith. "In the context of Rule 37, willfulness and bad faith are associated with intentional or reckless conduct." *MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 801 (N.D. Ill. 2010) (citing *Long v. Steepro,* 213 F.3d 983, 987 (7th Cir. 2000)). That means not only the intentional destruction of evidence, but "destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.,* 136 F.3d 1153, 1155 (7th Cir. 1998). "The crucial element is not that evidence was destroyed but rather the reason for the destruction." *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 644 (7th Cir. 2008) (quoting *Park v. City of Chicago,* 297 F.3d 606, 615 (7th Cir. 2002)). "[F]ault has been interpreted to mean that a party acted in an objectively unreasonable manner." *MacNeil*, 715 F. Supp. 2d at 801 (citing *Long,* 213 F.3d at 987). As the Seventh Circuit has explained, this standard is more "stringent" in comparison to others. *Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013).

Courts considering similar issues related to the formatting of computer hard drives agree. For example, the *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.* matter is particularly instructive here. In that case, the court considered whether the destruction of certain digital evidence—namely spreadsheets on an eight-year-old laptop—was sanctionable and if so, whether the harshest of available sanctions—default judgment against the defendant—was warranted. *Bell Aerospace*, No. 09-cv-141-MHT, 2010 WL 11425322, at *1-3 (M.D. Ala. Feb. 18, 2010), *report and recommendation adopted*, No. 09-cv-141-MHT, 2010 WL 11425321 (M.D. Ala. Mar. 5, 2010). Although the court determined that the data in question was material to the claims and defenses raised, and that the defendant had affirmatively caused its destruction

12

by reformatting a laptop's hard drive such that there was a "complete loss of data on the computer," it nevertheless held that sanctions were inappropriate. *Id.* at *2–3. The court found:

> …it credible that a 2002 laptop would freeze up and the only way to restore its proper function is to reformat it. Other than conclusory assertions by Plaintiff, there is no evidence that Hall provided his laptop to [an] IT technician in order to hide evidence from the Plaintiff. Rather, the declarations of both Hall and Jeremiah Armstrong—[the] IT Manager—indicate the 2002 laptop simply crashed and the only way to get it working again was to reformat the hard drive and perform a new install of Windows. Under these circumstances, the Court cannot find bad faith on the part of Hall or USAS and consequently, spoliation sanctions are not appropriate here.

*Id.* at *3.

The circumstances of this case are nearly identical. Plaintiff's laptop was, as described by Defendant's expert, "older" at the time in question—approximately 5 years old, in fact. (Myers Tr. 118:12–123:19.) Plaintiff has consistently alleged that at the time his computer was suffering from numerous issues, that he attempted to fix those issues by downloading and running Defendant's Software and when that didn't work, he had no choice but to attempt to reinstall Windows and format his hard drive to get the laptop running properly again. (*See* Beaton Decl. ¶¶ 2-3.) Even Defendant's expert admits that, "you might reformat your drive or reinstall your operating system. So I would say [reformatting] might be a reasonable step under certain circumstances." (*See* Myers Tr. at 123:12-19.) Defendant has failed to present any evidence to support the contention that Plaintiff acted intentionally to destroy adverse evidence—the truth is that he wasn't trying to destroy anything, but rather trying to get his laptop working again. Unlike in *Bell Aerospace*, however, Plaintiff's hard drive was not reformatted such that there was a "complete loss" of data; the information Defendant seeks from Plaintiff's computer—namely the SpeedyPC Pro settings file—is still accessible.

None of that is disputed and there is zero evidence to support a finding of willfulness or bad faith on Plaintiff's part. As a result, sanctions would be improper. This simply is not the sort

of record that reveals "a pattern of blurring [the] facts, the presenting of misleading and false statements to the Court, failure to comply with discovery orders, failure to preserve evidence, [nor] destruction of material evidence[,]" that would rise to the bad faith required for sanctions. *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2011 WL 722467, at *8 (N.D. Ill. Feb. 23, 2011); *see Domanus v. Lewicki*, No. 08 C 4922, 2012 WL 3307364, at *2 (N.D. Ill. Aug. 13, 2012) (imposing, *inter alia*, sanction of adverse inference where defendant discarded hard drive in the midst of discovery and after having produced certain information from it, but before plaintiff had an opportunity to forensically inspect it).

### C. The Sanctions Requested are Severe, to be Imposed in Only the Rarest of Cases, and Would be Inappropriate Under the Circumstances Here.

Lastly, it is worth noting that the primary sanction Defendant seeks—dismissal *with prejudice*—is the harshest of sanctions ever available and may be awarded in only the most egregious of circumstances. *See Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (describing "dismissal with prejudice [as] a harsh sanction which should usually be employed only in extreme situations, where there is a clear record of delay or *contumacious conduct*, or when other less drastic sanctions have proven unavailable."); *China Ocean Shipping (Group) Co. v. Simone Metals Inc.*, No. 97-cv-2694, 1999 WL 966443, at *2 (N.D. Ill. Sept. 30, 1999) ("there must be at least some finding of contumacious conduct, dilatory tactics, the failure of less drastic sanctions, bad faith, willfulness, or fault before sanctions may be imposed by a party who fails to comply with a discovery order."). As described above, Plaintiff did not act in bad faith in formatting his hard drive, he did not destroy the data contained on the hard drive, the information Defendant has identified as necessary to its case (to say nothing of the propriety of that position) is still available to it, and Plaintiff was justified in his actions given the condition of his computer. This is not the extreme or egregious conduct of a party seeking to destroy

adverse information.

Awarding the attorneys' fees and costs Defendant seeks would be inappropriate for similar reasons. In addition, the suggestion that Defendant is entitled to attorneys' fees and costs for "defending this case and [] discovering the spoliation of evidence," (Mot. at 15), borders on the specious. Even assuming *arguendo* that some sanction was appropriate here (it is not), the fact that Defendant has litigated the case this long is attributable to itself and its counsel only. Again, Plaintiff began offering his hard drive for inspection approximately three years ago. Defendant refused those offers, obtained a stay of discovery while it pursued a failed bid for dismissal, ignored a proposed protocol for inspection for six months, and didn't produce an expert report about the supposed spoliation until many months after that (whose author did not even spend time looking for the "key" files). The information now in question was available to it in early 2014. That it chose not to pursue it and incurred attorneys' fees and costs for years' worth of work means the request is certainly untimely, but not that Plaintiff has to bear it. *See, e.g., Thomas Kinkade Co. v. Hazlewood*, No. 06-cv-7034, 2007 WL 1655846, at *5 (N.D. Cal. June 6, 2007) (finding the timing of defendants' motion for sanctions "troubling" when the conduct giving rise to the motion occurred between six weeks and three months prior and the "motion was filed after nearly all of the substantive briefing and argument had been completed"); *Certain Underwriters at Loyd's of London v. Rauw*, No. 05-cv-2377, 2007 WL 2729117, at *4 (N.D. Cal. Sept. 18, 2007) (denying motion for sanctions when the defendant moved "almost a year after discovering most of the facts on which to base his motion" and after the court granted its motion to dismiss); *Madamba v. Certified Grocers Cal., Ltd.*, 145 F.3d 1339 (9th Cir. 1998) (affirming district court's denial of motion for sanctions as untimely when the motion was served before a ruling on a motion for summary judgment but filed after the court entered judgment).

## CONCLUSION

For the foregoing reasons, Plaintiff Archie Beaton respectfully requests that the Court enter an Order (i) denying SpeedyPC's motion for sanctions and request for attorneys' fees and (ii) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**ARCHIE BEATON**, individually and on behalf of all others similarly situated,

Dated: February 14, 2017

By: /s/ Benjamin H. Richman
        One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Courtney C. Booth
cbooth@edelson.com
Amir C. Missaghi
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

16

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on February 14, 2017 I caused to be served the above and foregoing ***Plaintiff's Opposition to Defendant's Motion for Sanctions for Spoliation of Evidence*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.

/s/ Benjamin H. Richman

17