**Edelson PC**

350 North LaSalle Street, Suite 1300, Chicago, Illinois 60654
t 312.589.6370 f 312.589.6378

www.edelson.com

March 19, 2014

**VIA ELECTRONIC MAIL**

Jacqueline A. Criswell
Kevin Kearney
Tressler LLP
233 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606
*JCriswell@tresslerllp.com*
*KKearney@tresslerllp.com*

      **Re:**    *Beaton v. SpeedyPC Software*, Case No. 13-cv-08389 (N.D. Ill.)

Dear Kevin:

      I write in response to your March 17, 2014 letter regarding Plaintiff's objections ("Objections") to SpeedyPC's request for inspection of his personal computer ("Request for Inspection"). In your letter, you make three primary arguments regarding Plaintiff's Objections—namely that (i) SpeedyPC's Request for Inspection is not harassing or unduly burdensome because "Beaton has put the contents and configuration of his computer at issue"; (ii) SpeedyPC does not have any relevant information regarding Beaton's computer in its possession or control and thus, an inspection is necessary and appropriate; and (iii) any concerns regarding the existence of confidential or privileged information on the computer can be alleviated with the entry of an appropriate protective order. We'll respond to each of those arguments in turn.

      First, the idea that SpeedyPC is entitled to unfettered access to Plaintiff's computer because he placed it at issue in the complaint misunderstands his theory of the case. Plaintiff's claims are based upon SpeedyPC Pro's uniform reporting of fake errors regardless of the machines on which it is installed. Thus, the focus here is on the design and development of the software itself and the reasons that it performs in such a uniform manner—along with SpeedyPC's marketing of the software—not on the status of any particular user's computer. Notwithstanding, and in an effort to reach a compromise, we offered (in Plaintiff's Objections) to have a forensic expert (of SpeedyPC's choosing) search Plaintiff's hard drive for specific information and files SpeedyPC believes are relevant and discoverable, and to produce all such information and files that are not otherwise protected from disclosure.

      Again, the standard protocol (as we proposed) endorsed by Federal Courts throughout the country, including in this District, would be for Plaintiff to provide an image of his hard

**Illinois / Colorado / California**

**Edelson PC**  *Beaton v. SpeedyPC Software*
March 19, 2014
Page 2 of 3

drive to a forensic expert (of SpeedyPC's choosing) who will maintain the data. *See, e.g.*, *Han v. Futurewei Tech., Inc.*, No. 11-cv-831, 2011 WL 4344301, at *6 (S.D. Cal. Sept. 15, 2011) (this approach "takes into account the significant privilege and privacy interests implicated in this case, is reasonable at this stage of the case, and follows the convention under the Federal Rules that the party *responding* to discovery determines what is relevant, responsive, and protected by privilege or privacy interests."); *Lee v. Stonebridge Life Ins. Co.*, No. 11-cv-43 RS (JSC), 2013 WL 3889209 (N.D. Cal. 2013); *Dunstan, et al. v. comScore, Inc.*, No. 11-cv-05807, Dkt. 240 (N.D. Ill. Oct. 23, 2013); *Ferron v. Search Cactus, L.L.C.*, No. 06-cv-327, 2008 WL 1902499 (S.D. Ohio Apr. 28, 2008). Then, SpeedyPC may make formal discovery requests for specific data and information it believes may be contained on the hard drive and that is otherwise relevant and discoverable. The expert will search the hard drive for the requested information and allow Plaintiff to review the results of the search to remove any irrelevant, privileged or otherwise protected materials. Plaintiff would then provide SpeedyPC a description of any information withheld—much like a traditional privilege log—and the balance of the data would be produced to SpeedyPC. *See* Scheindlin, Shira A., and Capra, Daniel J., *Electronic Discovery and Digital Evidence in a Nutshell* (St. Paul, MN: West, 2009). For illustrative purposes, enclosed herewith is the Protective Order we previously mentioned governing the production of our client's hard drive in another class action pending in the Northern District of Illinois.

To date, you've not responded to our proposal, nor explained why you believe it is unworkable here (if you do believe that) and if that is the case, what (if any) other proposals you have to make. We think that should be the first step in the meet and confer process. If you'd like, we're also willing to have our technical people speak with yours to discuss the best way forward in this regard.

Your second argument—that SpeedyPC has no relevant information regarding Plaintiff's computer in its possession and control and therefore, inspection is necessary and required—fails for the same reasons. Moreover, the only information on the computer that you claim is relevant—"what software and files were loaded onto it at the time [Beaton] allegedly downloaded Speedy[PC]'s software"—can be obtained with much less than a physical inspection of the computer.[1] For example, the proposed process described above would allow SpeedyPC to gain access to that information or, even short of that, an interrogatory requesting the information would suffice.[2]

Finally, we appreciate your representation that SpeedyPC "does not wish to infringe on [any] privileges or needlessly intrude into Beaton's unrelated affairs", and your offer to enter into an appropriate protective order to alleviate such concerns. That said, you offered to circulate a draft protective order nearly five weeks ago during the Parties' 26(f) conference

---

[1] You also haven't explained why you believe the "software or files" found on Plaintiff's computer are relevant to his claims or SpeedyPC's defenses, nor do I think we would agree given Plaintiff's theory of the case. Nevertheless, subject to appropriate objections, Plaintiff would be willing to provide that information in response to a formal interrogatory or document request.
[2] The fact that SpeedyPC has thus far insisted on taking the much more intrusive—and less efficient—route of demanding physical inspection of the computer again leads us to believe that it is motivated by something other than the desire to obtain supposedly relevant information.

**Illinois / Colorado / California**

**Edelson PC**     *Beaton v. SpeedyPC Software*
March 19, 2014
Page 3 of 3

and we have yet to receive a draft. If you do have something in mind in that regard, please forward it to us. If not, we can prepare a first draft for your review.

      If you'd like to discuss any of the issues outlined above further, we're happy to set a time to meet and confer. I apologize we were unavailable earlier today as you suggested, but we can make ourselves available later this week or early next if that works on your end. In the meantime, we'll look forward to hearing from you.

                Very truly yours,

                EDELSON PC

                Benjamin H. Richman

BHR/ccb

Enclosure

**Edelson PC**

**Illinois / Colorado / California**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>COMSCORE, INC.,<br>a Delaware corporation,<br><br>Defendant. | No. 11 CV 5807<br><br><br><br>Magistrate Judge Young B. Kim<br><br><br>October 23, 2013 |

**PROTECTIVE ORDER GOVERNING
PRODUCTION OF PLAINTIFF JEFF DUNSTAN'S HARD DRIVE**

In accordance with this court's October 16, 2013 Order, it is hereby ordered that:

1. For purposes of this Protective Order, comScore's Expert shall be Mr. Mike Perry of Elysium Digital LLC, 2 Oliver Street, 11th Floor, Boston, MA 02109. comScore's Expert will be subject to sanctions if he fails to comply with this order.

2. Plaintiff Dunstan shall provide a full image (the "Image") of his hard drive, as preserved by Plaintiffs' forensic experts, to comScore's Expert by October 25, 2013. comScore's Expert may duplicate the Image upon receipt in order to use the duplicate for inspection.

3. comScore's Expert shall conduct his search and transfer the data requested by comScore (the "Retrieved Data") to a separate data storage device and

then make a duplicate of the same. This step must be completed by November 1, 2013.

4. Then comScore's Expert is ordered to provide the following to Plaintiffs' counsel by November 1, 2013: (a) a duplicate of the Retrieved Data; (b) a report describing the Retrieved Data and his email address; (c) the Image provided by Plaintiffs; and (d) a declaration that the duplicate of the Image used for his examination was erased, along with the method he used to erase the duplicate. After this step is completed, comScore's Expert should have only one copy of the Retrieved Data.

5. Neither comScore nor its counsel shall be permitted access to the Image or the Retrieved Data nor be present during its examination. comScore's Expert shall not show or disclose the Retrieved Data to comScore unless the court orders its release or Plaintiffs' counsel authorizes its release in writing.

6. If there are materials among the Retrieved Data that should not be disclosed to comScore ("Disputed Data"), Plaintiffs' counsel then has until November 5, 2013, to confer about the materials with comScore. If the matter cannot be resolved, Plaintiffs have until November 11, 2013, to move to exclude the Disputed Data from disclosure on any grounds provided for under the Federal Rules of Civil Procedure and notice the motion for November 15, 2013. Plaintiffs are to remove the Disputed Data from the Retrieved Data and transfer them to a separate storage device. Plaintiffs must then provide the Retrieved Data to comScore minus the Contested Data at the same time they file their motion to exclude. If a

2

protective order is necessary to limit the access to this information, Plaintiffs should first confer with comScore. The court will then issue a follow-up order providing additional directions pertaining to the Retrieved Data and Contested Data when it rules on the motion.

7. If there is nothing to dispute, Plaintiffs must contact comScore's Expert in writing authorizing the release of the Retrieved Data by November 11, 2013.

8. If the steps the court orders here are technically not possible, too cumbersome or expensive, the court grants the parties leave to agree on an alternative methodology or protocol for segregating the data as needed.

**IT IS SO ORDERED.**

_____
Young B. Kim
United States Magistrate Judge