JKB/ls3/cmj/684259            2246-756-51

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARCHIE BEATON, individual and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:13-cv-08389 |
| SPEEDYPC SOFTWARE, a British Columbia company, | ) ) ) ) | Judge Andrea R. Wood |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO BAR PLAINTIFF'S EXPERT CRAIG SNEAD

Defendant, SpeedyPC Software ("Speedy"), by and through its attorneys, pursuant to Federal Rule of Evidence 702 hereby moves to bar Plaintiff's expert Craig Snead from testifying in this case.

### INTRODUCTION

Plaintiff filed this lawsuit asserting that Speedy misled him into purchasing software that promised but failed to fix his computer. Plaintiff seeks to recover the difference between the purchase price paid and the actual value of the software.

Plaintiff proffers Craig Snead as a purported expert in this case and has submitted Snead's opinions in support of his motion for class certification. Snead should be not be permitted to testify because he is not qualified to render such opinions, he failed to conduct an adequate investigation, and his opinions are not reliable.

**FACTS**

Speedy sells software called "SpeedyPC Pro" ("the Software"). The Software is utility software that diagnoses and solves common problems that diminish a computer's performance. Speedy offers users to download a free trial version of the software to conduct a diagnostic scan of their computer. Speedy then offered consumers a licensed version of that required payment to help repair the computer. (Ex. A, Complaint ¶¶ 4, 47).

Plaintiff Archie Beaton ("Beaton") resides in Algonquin, Illinois and works for the Chlorine Free Products Association ("CFPA"). Beaton began searching for utility software to fix a laptop in August 2012. Beaton tried two to three utility software sites besides Speedy's. Each of them had him run a scan, which he did, and each told him the laptop had issues. The CFPA purchased the Software. Beaton claims that the Software not only did not work, it made the laptop worse. He later filed this lawsuit in seeking to recover money damages against Speedy, specifically the difference between the purchase price paid for the Software and its actual value. (Ex. B, Beaton Dep. at 19, 49, 64, 80, 87).

Plaintiff filed his motion to certify a class in this case on January 27, 2017. (ECF 124). In support of his motion, Plaintiff proffers Craig Snead as a purported expert and has submitted Snead's opinions in support of his motion for class certification. (ECF 125). Plaintiff cites Snead for the following statements in his motion:

1. "In addition to identifying "damage" levels, the free-trial version of the scan also made alarming representations to users in the forms of dials, gauges, colors and warnings. (*See* Snead Rep. ¶ 8, Fig. 1.)" (ECF 125 p. 12);

2. "Once the Software actually scanned the computers, it gave another "Warning!" with the number of "problems" identified, alarming graphics and colors, and a promise that by clicking "Fix All" the Software would "take care of these [problems] now!" (Snead Rep. ¶ 8, Fig. 1)" (ECF 125 p. 12);

3. "To "Fix" the problems "identified," however, consumers had to pay for the full version. (Snead Rep. ¶ 8.)" (ECF 125 p. 12);

4. "Based on Plaintiff's expert's review of the source code, the Software was programmed to execute the primary features and functions the same way on every computer. (Snead Rep. ¶ 7)" (ECF 125 p. 12);

5. "In fact, the Software didn't even consider the model and speed of the central processing unit, the hard drive used, the amount of RAM installed and available, or the amount of available disk space when determining the "Performance" level of the computer or its "Damage" rating—information that is undoubtedly relevant to the performance and health of an individual computer. (See Snead Rep. at ¶ 12.)" (ECF 125 p. 13);

6. "And, common evidence will show that instead of identifying and repairing errors, the Software was designed to identify arbitrary files as "problems" and assign corresponding arbitrary "damage" levels to those "problems." (See, e.g., Snead Rep. at ¶¶ 26, 31, 35, 41, 45-46)" (ECF 125 p. 25);

7. "Because all Class members purchased nearly identical Software (Snead Rep. at ¶ 6)" (ECF 125 p. 26).

At this deposition Snead conceded that he is not a computer forensics expert. (Ex. C, Snead Dep. at 32). The opinions in Snead's report were based on his "training". (Ex. C, Snead Dep. at 46). Most of Snead's training has been in developing websites. (Ex. C, Snead Dep. at 32, 37, 46).

Snead never looked at the Software at issue in this case, specifically the licensed version of the Software. (Ex. C, Snead Dep. at 66-67). Snead only looked at the code for the free scan. (Ex. C, Snead Dep. at 44-45, 66-67, 129). Snead did not look at the efficacy of the Software. (Ex. C, Snead Dep. at 37). Snead never looked at the Laptop or an image of the Laptop. (Ex. C, Snead Dep. at 32). Snead did not know if there are standards relating to the issues in this case and never bothered to research further if there were such standards. (Ex. C, Snead Dep. at 85).

**ARGUMENT**

Rule 702 governs the admissibility of expert evidence in federal court. As amended in 2000, the rule codifies the "exacting standards of reliability [expert] evidence must meet" under the *Daubert* trilogy of cases: *Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 579 (1993),

3

*General Electric Co. v. Joiner,* 522 U.S. 136 (1997), and *Kumho Tire v. Carmichael,* 526 U.S. 137 (1999). *Weisgram v. Marley Co.,* 528 U.S. 440, 455 (2000). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid 702. A district judge must consider the Rule 702 factors, also referred to as "the *Daubert* framework," when determining whether to admit expert testimony. *Hall v. Flannery,* 840 F.3d 922, 926 (7th Cir. 1016). Cast in the role of "gatekeeper," the district judge must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert,* 509 U.S. at 589. Where, as here, proffered expert evidence fails to satisfy the rule's requirements, it must be excluded. In analyzing the reliability of a proposed expert's testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his or her conclusions. *Kumho Tire,* 526 U.S. at 153. Even if the court finds that an expert is "supremely qualified", an expert "cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method". *Clark v. Takata Corp.,* 192 F.3d 750, 759 (7th Cir. 1999). Therefore, the court's gate keeping functioning does not focus on the "correctness" of the expert's conclusion, but instead upon "examination of the expert's methodology". *Smith v. Ford Motor,* 215 F.3d 713, 718 (7th Cir. 2000)

4

### A. Snead Is Not Qualified To Render The Opinions He Has Given

By proffering Snead as an expert witness, Plaintiff bears the burden of demonstrating that his proposed testimony satisfies Rule 702's exacting admissibly standards. *Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). Under the rule, Plaintiff must first show that Snead possesses "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid 702(a). If Snead flunks this test, he must be excluded. *Hall,* 840 F.3d at 926 (collecting cases). Whether a witness is qualified as an expert "can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony". *Carroll v. Otis Elevator*, 896 F.2d 210, 212 (7th Cir. 1990). A witness' general qualifications are of no concern. *Hall,* 840 F.3d at 928. Instead, to satisfy the rule's helpfulness factor, plaintiff must show that Snead's testimony falls squarely within an area in which he possesses bona fide expertise; if it does not, he should not be permitted to opine in the case because his testimony will not assist jurors, but serve only to confuse or mislead them. *Id.; Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 318 (7th Cir. 1996). Thus, when assessing evidence of Snead's qualifications, the Court must focus on whether he "has adequate education, skill, and training to reach" the specific opinions and conclusions Plaintiff intends for him to offer. *Hall,* 840 F.3d at 928.

Plaintiff offers only Snead's resume as proof of his qualifications. (ECF 125-6 pp.28-29). But that resume shows that Snead's knowledge, skill, experience, training, and education reside with matters wholly unrelated to the issues on which his opinions have been submitted. Snead lacks expertise in the field of computer forensics. In fact, Snead concedes that he is not a computer forensics expert. (Ex. C, Snead Dep. at 32). Snead testified that his report were based

on his "training". (Ex. C, Snead Dep. at 46; Ex. D, Snead Report). However, most of Snead's training has been in developing websites. (Ex. C, Snead Dep. at 32, 37, 46).

### B. Snead's Evidence Does Not Satisfy Rule 702's Reliability Standards

Possessing the requisite credentials is not enough to render expert testimony admissible. *Fuesting v. Zimmer*, 421 F.3d 528, 535 (7th Cir. 2005), *rev 'd on other grounds*, 448 F.3d 936 (7th Cir. 2006). In addition to scrutinizing a witness' qualifications, Rule 702 requires the court to examine whether: "(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702(b)-(d). Together, these factors require the district judge to "determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen,* 78 F.3d at 318. A review of Snead's report and his deposition testimony reveals that his proffered "opinions" do not rest on a solid factual foundation and do not derive from a reliable application of the principles and methods utilized by experts in the field.

Snead's opinions are unreliable because they are not based on sufficient facts or data. "Talking off the cuff -- deploying neither data nor analysis -- is not acceptable methodology." *Bourelle v. Crown Equip.*, 220 F.3d 532, 539 (7th Cir. 2000). Snead never even looked at the Software at issue in this case. (Ex. C, Snead Dep. at 66-67). Snead only looked at the code for the free scan. (Ex. C, Snead Dep. at 44-45, 66-67, 129). Snead did not look at the efficacy of the Software. (Ex. C, Snead Dep. at 37). Snead never looked at the laptop or an image of the laptop. (Ex. C, Snead Dep. at 32). Snead did not know if there are standards relating to the issues in this case and never bothered to research further if there were such standards. (Ex. C, Snead Dep. at 85). "[A]nd a conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence." *Navarro v. Fuji Heavy Indus.,* 117 F.3d 1027, 1032 (7th Cir. 1997),

*citing, Daubert,* 509 U.S at 590; *Deimer v. Cincinnati Sub-Zero Products,* 58 F.3d 341, 344-45 (7th Cir. 1995); *Bammerlin v. Navistar Int'l Transp.,* 30 F.3d 898, 901 (7th Cir. 1994).

      C.      **Snead Lacks a Proper Methodology**

"Experts' work is admissible only to the extent that it is reasoned, uses the methods of the discipline, and is founded on data." *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 608 (7th Cir. 2006), *quoting Lang v. Kohl's Food Stores,* 217 F.3d 919, 924 (7th Cir. 2000). The court must exclude testimony based on subjective belief or unsupported speculation. *Deimer,* 58 F.3d at 344. "The courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *Rosen,* 78 F.3d at 319. Snead's opinions are the type of subjective belief that Rule 702 and *Daubert* prohibit. In explaining the testing requirement, the Seventh Circuit has held, "personal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert's* most significant guidepost." *O'Connor v. Commonwealth Edison Co.,* 13 F.3d 1090, 1107 (7th Cir. 1994). Another indicator of unreliability is the unjustifiable extrapolation from a premise to an unfounded conclusion. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). Snead's "opinions" amount to nothing more than uninformed speculation, conjecture, and guesswork and should therefore be excluded under Rule 702.

## CONCLUSION

WHEREFORE, Defendant, SpeedyPC Software respectfully requests this Honorable Court bar Plaintiff's purported expert Craig Snead from testifying in this case.

    SPEEDYPC SOFTWARE

    By:   /s/James K. Borcia
           One of Its Attorneys

James K. Borcia (jborcia@tresslerllp.com)
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000