**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, *Plaintiff*, v. SPEEDYPC SOFTWARE, a British Columbia company, *Defendant*. | Case No. 1:13-cv-08389 <br><br> Honorable Andrea R. Wood |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF MONTY G. MYERS**

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | Introduction | 1 |
| II. | Relevant Factual Background | 3 |
| III. | Legal Standard | 3 |
| IV. | Myers' Report Contains Improper Factual Narrative | 4 |
| V. | Myers' Testimony Improperly Speculates About Plaintiff's Mental State and Offers Improper Legal Conclusions | 6 |
| VI. | Myers' Testimony Exceeds the Scope of a Rebuttal Report | 7 |
| VII. | Sections of Myers' Report Should Be Stricken Under *Daubert* | 10 |
| VIII. | Conclusion | 14 |

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993)....................... 2 – 4,10 – 13

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ................................................................ 3

**United States Circuit Court of Appeals Cases:**

*Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765 (7th Cir. 2014)............................ 10 – 11

*C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827 (7th Cir. 2015).................................................. 10

*DePaepe v. General Motors Corp.*, 141 F.3d 715 (7th Cir. 1998) ............................................. 1, 6

*Goodwin v. MTD Prods., Inc.*, 232 F.3d 600 (7th Cir. 2000)..................................................... 1, 6

*Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810 (7th Cir. 2014)..................................................... 10

*Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016)................................................. 7

*Menasha Corp. v. News America Mktg. In-Store Inc.*, 354 F.3d. 661 (7th Cir. 2004) ................. 12

*United States v. Hall*, 165 F.3d 1095 (7th Cir. 1991) ..................................................................... 4

*United States v. Mamah*, 332 F.3d 475 (7th Cir. 2003) .......................................................... 10, 13

**United States District Court Cases:**

*Butler v. Sears Roebuck & Co.*,
    No. 06 C 7023, 2010 WL 2697601 (N.D. Ill. July 7, 2010) ............................... 1, 7 – 8, 10

*Cage v. City of Chicago*,
    No. 09 C 3078, 2012 WL 5557410 (N.D. Ill. Nov. 14, 2012) ........................................... 8

*Client Funding Solutions Corp. v. Crim*, 943 F. Supp. 2d 849 (N.D. Ill. 2013)............................. 6

*In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871 (E.D. Ark. 2008).................................... 4

*Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585 (N.D. Ill. 2015)........................................... 7 – 9

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940 (N.D. Ill. 2009)......................... 11

*Menasha Corp. v. News America Mktg. In-Store Inc.*,
    238 F. Supp. 2d 1024 (N.D. Ill. 2003) ............................................................................ 12

*Noffsinger v. The Valspar Corp.*,
    No. 09 C 916, 2011 WL 9795 (N.D. Ill. Jan. 3, 2011) ........................................................ 8

*Scienton Tech., Inc., NI Group, Inc., Secure-It, Inc. v. Computer Assoc. Int'l, Inc.*,
    Case No. 2:04-cv-02652 ................................................................................................... 5

*United States v. Vance*, No. 07–CR–351,
    2011 WL 2633842 (N.D. Ill. July 5, 2011)................................................................... 1, 4

**<u>Miscellaneous Authorities:</u>**

Fed. R. Evid. 702 ................................................................................................................ 2 – 3, 10

Fed. R. Evid. 703 ........................................................................................................................ 10

*Scienton Tech., Inc., NI Group, Inc., Secure-It, Inc.,*
    *Plaintiffs-Appellants, v. Computer Assoc. Int'l, Inc.*, Defendant-Appellee.,
    2017 WL 75607 (C.A.2), 4 .............................................................................................. 5

## I. Introduction

Monty G. Myers was retained by Defendant SpeedyPC Software ("Defendant") *solely to rebut* Plaintiff expert Craig Snead's report and opinions regarding the source code underlying Defendant's SpeedyPC Pro software (the "Software") at issue here. Myers himself testifies that he was retained for this purpose, and that Snead's report is similarly limited in scope. Myers also admits—as he must—that his professional expertise is limited: he has experience negotiating software agreements and developing source code, but nothing else relevant to this case. Nevertheless, in his report and testimony Myers ignores these limitations—both his own professional ones and those placed on rebuttal experts—and addresses a variety of subjects not raised in Snead's report, not properly included in any expert report (let alone a rebuttal report), and upon which he has no basis or expertise to pass. Thus, Myers' report and testimony—or at least these objectionable portions—cannot be considered and must be stricken.

First, Myers' report contains lengthy and improper factual narrative based on "nothing more than [the expert's] review of certain discovery materials," and therefore provides no added value to the trier of fact in this case. *United States v. Vance*, No. 07–CR–351, 2011 WL 2633842, at *5 (N.D. Ill. July 5, 2011). For example, Myers' commentary that Plaintiff's deposition testimony was "confusing" and "vague," does not offer any technical expertise, and has no place in a software developer's expert report. (*See* Dkt. No. 114-9 ("Myers Rep.") at 16.)

Second, Myers improperly speculates about Plaintiff's state of mind and credibility, offering legal conclusions that fall outside of his expertise as a software developer. In so doing, he usurps the role of the jury by passing on issues of credibility and motive. *See Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (credibility); *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (motive). Myers has no grounds upon which to reach

1

conclusions like Plaintiff's decisions were "deliberate and intentional," nor to make a legal judgment that his conduct in any way constitutes "spoliation of evidence." Myers Rep. at 23.

Third, Myers exceeds the permissible scope of a rebuttal expert and report, which should be limited to "contradict[ing] or rebut[ing] evidence on the same subject matter identified by another party" in its expert disclosures. *Butler v. Sears Roebuck & Co.*, No. 06 C 7023, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010). Myers understands that he is a "rebuttal expert." Transcript of Deposition Monty G. Myers ("Myers Dep. Tr.") at 17:2-20, attached as Exhibit 1; *id*. at 206:10-15 (terming himself a "rebuttal witness"). He understands that Plaintiff's expert "focused his review in this case entirely on the source code for the SpeedyPC Pro software." Myers Rep. at 28. Notwithstanding, he admits that his report goes beyond that limited scope. *See, e.g.,* Myers Dep. Tr. at 181:11-12. Any topics unrelated to the Software's source code are beyond the scope of proper rebuttal testimony here and should be stricken.

Fourth, Myers opines on matters that are outside of his expertise and further, do not bear any indicia of reliability that must accompany admissible evidence under *Daubert*. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702. At various times throughout his report and testimony, Myers opines on consumer marketing, consumer behavior, and the "genre" of programs in which Defendant's Software falls. Myers Rep. at Sections B, C, and E. These opinions are based on Myers' limited and unscientific observation of "probably more than two or three" purportedly similar products and services, and Myers' survey of just "ten people," including "members of [his] staff, [and his] wife." Myers Dep. Tr. at 99:12-24, 111:8-112:8. This is a far cry from the "reliable scientific method" that *Daubert* demands.

For all of these reasons and as explained further below, Myers' report and testimony cannot be considered and must be stricken from the record in this case, at least with respect to the specific areas identified above.

## II. Relevant Factual Background

This action challenges Defendant's deceptive design and marketing of its SpeedyPC Pro utility software. In pursuing this action, Plaintiff retained Craig Snead, a software developer and founding partner of RAW Digital, LLC, as an expert witness. Mr. Snead was retained as a class certification expert, and his report focuses exclusively on the Software's underlying source code in order to determine what the Software was programmed to do, regardless of the condition of any individual customer's computer. Plaintiff disclosed Snead in April 2016.

In early 2016, Defendant retained Monty G. Myers, the founder and CEO of Eureka Software Solutions, to rebut Mr. Snead's anticipated report. Myers is a software development executive, and has experience negotiating software agreements and developing source code. Under the most generous interpretation, Defendant did not disclose Myers until June 29, 2016, more than two months after Plaintiff disclosed his expert. Although Myers purports to be a rebuttal expert, his wide-ranging report spans a variety of subjects not raised in Mr. Snead's initial report, not within the scope of Myers' own expertise, and improperly narrates facts and makes numerous unsupported legal conclusions.

## III. Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles elucidated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Federal Rule of Evidence 702 provides, in relevant part, that:

> "[A] witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. The party seeking to introduce the expert testimony has the burden of establishing, by a preponderance of the evidence, that it is admissible."

*Daubert*, 509 U.S. at 593 n.10. The focus of the admissibility determination "must be solely on principles and methodology, not on the conclusions that they generate." *Id*. at 595. Ultimately, this Court has "broad discretion under Rule 702…to admit or exclude evidence." *United States v. Hall*, 165 F.3d 1095, 1101 (7th Cir. 1991).

### IV. Myers' Report Contains Improper Factual Narrative.

As an in initial matter, certain portions of Myers' report (and related testimony) must be stricken because they contain improper factual narrative based on "nothing more than [the expert's] review of certain discovery materials," and therefore provide no value to the trier of fact. *Vance*, 2011 WL 2633842, at *5. Narrative testimony offering nothing more than a "simpl[e] review of the materials" usurps the role of the jury. *Id.* "Unless the expertise adds something, the expert at best is offering a gratuitous opinion" that will not assist the trier of fact. *Hall*, 93 F.3d at 1343; *see also In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008) ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?").

Section D of Myers' report, entitled "Plaintiff's Laptop," contains improper (counter) factual narration. Here, Myers reviewed Plaintiff's deposition testimony and commented that it is "confusing." Myers Rep. at 16. When asked to elaborate during his own deposition, Myers explained that he found Plaintiff's testimony "vague and indefinite" because he had not "readily

4

observed" the malfunctions alleged by the Plaintiff, and further noted that Plaintiff's deposition testimony constituted "random thoughts." Myers Tr. at 60:20-61:6. Far from providing technical expertise, this commentary does nothing more than attempt to undermine Plaintiff's testimony, and has no place in an expert report or testimony.

This is somewhat of a habit for Myers. In 2015, the Eastern District of New York struck, as improper factual narrative, a supplemental expert report he submitted. *Scienton Tech., Inc., NI Group, Inc., Secure-It, Inc. v. Computer Assoc. Int'l, Inc.,* Case No. 2:04-cv-02652. Although the briefing and orders related to the motion to strike Myers' report there are sealed (dkt. no. 380, 382), the moving party provided the following summary to the Court in a letter regarding discovery issues: "This Court struck most of the Myers 2013 Report because '[t]he narrative [was] based solely on Myers' review of documents and the 'historical record.' 1/7/15 Decision at 20." *Id*. (Dkt. No. 508) at 1.[1]

As in *Scienton*, Myers spends a considerable portion of his report here improperly commenting upon the record, Myers Rep. at 16 (characterizing Plaintiff's deposition testimony as "confusing"), and similarly attempts to introduce a new (and irrelevant) defense—i.e., that the condition of Plaintiff's laptop excuses Defendant's misrepresentations regarding the Software's functional capabilities. None of that testimony is appropriate nor does it have any bearing on

---

[1] *Scienton* is currently on appeal to the Second Circuit. *Scienton Tech., Inc., NI Group, Inc., Secure-It, Inc., Plaintiffs-Appellants, v. Computer Assoc. Int'l, Inc.*, Defendant-Appellee., 2017 WL 75607 (C.A.2), 4. Although the appeal is unrelated to the exclusion of Myers' report, the appellate record further makes clear that Myers' opinions regarding the appropriate sales base from which to calculate damages in the case was "an impermissible factual narrative that attempt[ed] to describe the history of [Defendant's] alleged decision to misappropriate [Plaintiff's] ideas and market its software." *Id*. at *51. According to the appellate court, Myers' goal appeared to be to present a new theory of liability under the guise of a supplemental expert report regarding damages; his attempt was unsuccessful, and the trial court's decision to strike was not appealed. *Id*.

these proceedings. Accordingly, and like in *Scienton*, section D (pages 16 – 28) of Myers' report must be stricken and any related testimony in this respect ignored.

**V.      Myers' Testimony Improperly Speculates About Plaintiff's Mental State and Offers Improper Legal Conclusions.**

In addition to improper factual narratives, Myers also offers improper testimony about Plaintiff's mental state at various points in time and numerous improper legal conclusions. Those portions of his report and testimony must be ignored and stricken as well.

As a general matter, experts cannot offer legal opinions or conclusions, as "they do not assist the trier of fact." *Client Funding Solutions Corp. v. Crim*, 943 F. Supp. 2d 849, 863 (N.D. Ill. 2013). Similarly, "an expert cannot testify as to credibility issues," since "credibility questions are within the province of the trier or fact." *Goodwin*, 232 F.3d at 609. Particularly pertinent on these points is the Seventh Circuit's holding in *DePaepe v. General Motors Corp.*, where the court concluded that, although an engineer-expert could "give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify as an expert that GM had a particular motive." 141 F.3d at 720. That's because the expert "did not participate in the deliberations leading to the design" of the product at issue, and "lacked any scientific basis for an opinion about the motives of GM's engineers." *Id*.

Again, Section D ("Plaintiff's Laptop") of Myers' report, contains improper speculation regarding Plaintiff's motive in installing a new operating system on his computer prior to filing this lawsuit. *See* Myers Rep. at 23 (opining that the installation "is not an action that could happen accidentally or unexpectedly on a computer, but rather is the type of activity that requires a deliberate and intentional decision and a set of actions on the part of a reasonably experienced

6

computer user in order to property complete."); *id*. ("It would not make sense for Plaintiff to format his hard drive after retaining legal counsel… such clear spoliation of evidence can't be condoned in the litigation context."). Myers affirmed these observations in his deposition, inquiring after the reason to install the new operating system "if it's really not his primary computer at that point?" and concluding that Plaintiff's actions were "deliberate" and "non-trivial." Myers Tr. at 119:3-19, 158:15-24.

Much like the expert in *General Motors*, Myers lacks any analytically-sound basis for these conclusions. Myers is a software developer, with no training in observing human behavior or inferring motive, and he did not observe Plaintiff at the time he determined to install a new operating system on his computer. *See General Motors*, 141 F.3d at 720. Instead, Myers speculates about Plaintiff's motives – a task properly suited to a jury – and does so in a transparent attempt to prop up Defendant's latest round of attacks on Plaintiff and his counsel. These portions of the report and related testimony cannot be considered and must be stricken.

**VI.  Myers' Testimony Exceeds the Scope of a Rebuttal Report.**

Myers' entire report—or at least a vast majority of it—must also be stricken because it far exceeds the scope of a rebuttal expert report. Rebuttal reports are limited to "contradict[ing] or rebut[ing] evidence on the same subject matter identified by another party in its expert disclosures." *Butler*, 2010 WL 2697601, at *1. "[P]arties may not advance new arguments for the first time in a reply expert report." *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 591 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016). The striking of an *entire* report may be appropriate if it contains testimony beyond the proper scope of rebuttal. *Id*. (holding that if "the reply report contains new opinions that are not proper rebuttal testimony, the report must be stricken"). At the very least, courts have routinely struck

7

objectionable portions of expert reports that go beyond their proper scope. *See, e.g., Noffsinger v. The Valspar Corp.*, No. 09 C 916, 2011 WL 9795, at *6–7 (N.D. Ill. Jan. 3, 2011) (limiting a rebuttal expert's opinion to his critique of defendants' expert's opinions and striking parts of the expert's report that went beyond the scope of a proper rebuttal witness); *Cage v. City of Chicago*, No. 09 C 3078, 2012 WL 5557410, at *2 (N.D. Ill. Nov. 14, 2012).

Here, Defendant disclosed Myers as a rebuttal expert. (*See* Dkt. No. 102) (explicitly noting that Defendant planned to "disclose *rebuttal witnesses* regarding class certification") (emphasis added). Myers also understood that he was retained as a rebuttal witness. Myers Tr. at 17:2-20 ("I've been engaged on behalf of the – the defendant, here, and – and an expert report by Mr. Snead was produced, and I'm *rebutting* predominantly his – his testimony.") (emphasis added); *id*. at 206:10-15 ("…I didn't feel, as a *rebuttal witness* in this case, answering what was put forth by your expert, that that was a necessary part.") (emphasis added). Further, Myers understood that Plaintiff-expert Snead's report was "focused… *entirely on the source code* for the [Software]." Myers Rep. at 28 (emphasis added). *See also id*. at 40 ("Mr. Snead's analysis was *only* of the SpeedyPC Pro software *source code*") (emphasis added); *id*. at 48 ("Mr. Snead testified that his analysis of the [Software] was *strictly to review and analyze the source code*") (emphasis added). As such, Myers' testimony as a rebuttal expert was necessarily limited to "Mr. Snead's analysis…of the [Software's] source code." *See Butler*, 2010 WL 2697601 at *1; *Kleen Prod.*, 306 F.R.D. at 591.

Despite this understanding, Myers lambasted Plaintiff's expert report as "one of the worst [he'd] ever seen," Myers Tr. at 75:16-76:2, because "Mr. Snead did not perform and present any material analysis of [the Software] based upon actual software functionality testing." Myers Rep. at 54. But Snead was retained as a "class certification expert[,]" (dkt. no. 80), and in that role, his

8

testimony aims to assist Plaintiff in establishing that the Software was programmed—through its underlying source code—to operate uniformly on every user's computer, as with any consumer software. (*See* Dkt. No. 143-4 ("Snead Rep.") at 4-5.) Further, Mr. Snead's testimony speaks to the fact that SpeedyPC's representations about the Software's functional capabilities are inconsistent with what the Software's underlying source code would actually allow it to do. *Id*. at 23-24. Snead's report and testimony are limited to these issues and analyses.

Myers does not conceal that his report goes well beyond the scope of Snead's exclusive focus on source code. *See* Myers Tr. at 140:11-19 ("So I've done more than, you know, rebut your expert."). In particular, two sections of Myers' report should be stricken as exceeding the permissible scope of a rebuttal report. First, as is reflected in the heading of Section D, "Plaintiff's Laptop," Myers devotes 20% of his report to an entirely new issue that does not appear at all in Snead's report. Because Snead opines that the Software is not coded to accomplish what it promises, the precise condition of Plaintiff's (or any other class member's) computer has no bearing on his conclusions, and is appropriately absent from his report. Myers' gratuitous exploration of the issue is a "new argument," raised "for the first time in a reply expert report," and should be ignored and stricken on this basis. *See Kleen Prod.*, 306 F.R.D. 585, 591.

Second, by Myers' own admissions, Section H (titled "Software Functionality") bears no relation to Snead's report. While Snead focuses exclusively on the Software's source code, Myers purports to delve into "the actual operation of the [S]oftware under reasonable test conditions…to observe the actual performance of the [S]oftware." Myers Rep. at 54. Myers readily acknowledges that his analysis in this regard goes beyond the scope of what Snead reported upon. *See* Myers Rep. at 54. Given that Myers' opinions in this respect neither

"contradict" nor "refute" *any* evidence in Snead's expert report, *see Butler*, 2010 WL 2697601, at *1, it should be excluded accordingly.

**VII.    Sections of Myers' Report Should Be Stricken Under *Daubert*.**

Finally, certain sections of Myers' report—sections B and C, as well as portions of section E—must be stricken because they fail to satisfy the standards for expert reports and testimony set out in *Daubert* and its progeny. Again, Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admission of expert testimony in federal courts. *See C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014). Rule 703 requires that experts "rely on 'facts or data,' as opposed to subjective impressions." *Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014). It is "critical" that there be a "link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003).

Myers is a software developer with experience "negotiating hundreds of software development and technology oriented agreements," *see* Myers Rep. at 3, and has "personally written and overseen the development of millions of lines of custom software source code," *id*. at 4. Although these qualifications appear sufficient for Myers to opine on the Software's source code—the only topic upon which Myers could serve as a rebuttal witness here—they do *not* qualify Myers to discuss consumer behavior, the reasonability of product guarantees, or the

"software genre" of personal computer cleaning utilities, as he purports to do. *See* Myers Rep. at sections B, C, and E.

Myers is not an expert in consumer behavior. He has no training in the subject, *see* Myers Tr. at 53:22-54:5, and the sum total of his "studies" of consumer behavior come in the form of "releas[ing] an app" and "getting that feedback" regarding how consumers use the app, *see* Myers Tr. 72:13-21. The informal reflection that accompanies the release of an app is a far cry from the "scientifically reliable" methodology expected under *Daubert*. Indeed, Myers provides nothing to suggest that his app feedback endeavors could be considered "scientific," let alone identifying how many such apps he released and received feedback for (if more than one), what kind of app it was (or they were), how the feedback was collected, from whom, or the like. *See Burlington*, 765 F.3d at 772 (requiring that experts rely on "facts and data" as opposed to subjective impressions). Nevertheless, Myers proffers the opinion that customers are "not likely to be influenced one way or the other" by the default needle positioning of a gauge in a piece of consumer software like that at issue in this case. Myers Rep. at 38. Asked to clarify the basis for his views in this regard, Myers admitted that he did not do any consumer surveys "on the gauge itself," nor did he engage in market research on this point, since he did not "have the burden in this case." Myers Tr. at 187:19-188:5.

Myers' opinion on the subject of design factors influencing consumer behavior can hardly be considered reliable, let alone scientific, and certainly does nothing to assist the trier of fact. *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 957 (N.D. Ill. 2009) (striking a qualified technical expert's conclusions regarding his "common sense observations" about "consumer perception," because he was "not an expert in marketing, consumer surveys or

11

consumer perceptions.") These portions of his report and testimony should be stricken accordingly.

Further, Myers is not an expert in the "software genre" of personal computer cleaning utilities, about which he waxes philosophical in Section B, "General Industry Overview." Although Myers purports to describe the genre to which the Software belongs, the extent of Myers' investigation in this regard is summed up in but a few lines of his deposition testimony:

> Q. What -- did you -- did you look at other products in this software genre?
> A. We have.
> Q. And which products were those?
> A. I don't recall.
> Q. Did you do any comparative analysis between products in this software genre?
> A. Only at the level that I asked my team to go out and, you know, find two or three and look at their sort of similarities at the marketing level just to say -- you know, we didn't do any technical comparative analysis, just to see the -- some other products that purport to provide similar services.

Myers Tr. at 88:16-89:3. Further, when asked to clarify the bases for specific conclusions regarding consumer behavior made in his expert report, such as the opinion that cleaning utilities are "a customer's first attempt at addressing problems with a computer in an effort to find a quick and easy fix," Myers Rep. at 13, Myers noted that he interviewed "members of [his] staff" and "[his] wife," Myers Tr. at 99:12-24. In other words, Myers bases his conclusions in this regard on a tiny, non-randomized sample of his family and employees,[2] providing no reason to

---

[2] Even if a "handful" of individuals could be considered scientific or statistically significant (it most certainly cannot), the fact that Myers only surveyed his employees (who report directly to him and rely upon him for their livelihoods) and his own wife, inserts an insurmountable level of bias into his process and destroys the credibility of his conclusions. *See Menasha Corp. v. News America Mktg. In-Store Inc.*, 238 F. Supp. 2d 1024, 1030 (N.D. Ill. 2003), *aff'd* 354 F.3d. 661, 664 (7th Cir. 2004) ("Courts have generally found consumer survey evidence admissible under *Daubert* if a qualified expert testifies that the survey was conducted according to generally-accepted principles of survey research… For a survey to be properly designed, an appropriate target population must be identified, a sample that accurately represents the target population must be selected, and procedures must be taken to reduce the likelihood of

believe that it is appropriate to generalize about users of personal computers based on these observations. As the Seventh Circuit has aptly put it, there is simply no "link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *See Mamah*, 332 F.3d at 478.

Moreover, Myers uses his "survey" of "two to three products" in the cleaning utilities genre to opine on the reasonability of Defendant's Product Warranty. *See* Myers Rep. at Section C ("SpeedyPC's warranty and guarantee offering is in line with industry practices and is consistent with what most consumers would expect to receive…."). Myers offers no reason to believe that he arrived at this conclusion in a scientifically-robust way despite limiting his survey of comparable products to just "two or three," and conducting absolutely no surveys of consumer expectations (save, questioning his own wife and employees). *See* Myers Tr. at 111:8-112:8 ("Q. Okay. And for this section did you – did you do any comparative analysis in this software genre about the 30-day money-back guarantee? A. I don't think I specifically looked at the way various products in the space work... But we looked at, surveyed a number of products in this area. And that was fairly common in – in those – in that genre.").

*Daubert* requires a basic level of rigor and reliability from expert reports, and Myers falls short of this expectation. *Daubert* lists the following non-exclusive factors to assist district courts in determining the reliability of a purported expert's methodology: whether the theory "can be tested;" whether the theory "has been subjected to peer review and publication;" and the "known or potential rate of error." 509 U.S. at 593-94. Because Myers never engaged in a rigorous comparison of warranties in the "cleaning utilities genre," his theory regarding the popularity and

---

a biased sample. The evidence shows that none of these standard protocols of survey research were observed…[where the expert's] 'universe' of potential respondents consisted entirely of individuals and companies that [expert] knew through his work as a journalist.").

consumer acceptance of 30-day guarantees cannot be meaningfully tested and refuted, and Myers offers nothing in the way of review—peer or otherwise.

Where Myers improperly opines on consumer behavior, the reasonability of product guarantees, and the nature of a software genre of which he has reviewed at most three products, his report and testimony must be ignored and stricken.

## VIII. Conclusion

For the reasons stated above, this Court should ignore and strike Monty G. Myers' rebuttal report (and related testimony), or at the very least those portions of the report highlighted in Exhibit 2 hereto,[3] and prohibit Mr. Myers from testifying in connection with these matters.

Respectfully submitted,

**ARCHIE BEATON**, individually and on behalf of all others similarly situated,

Dated: March 10, 2017

By: /s/ Benjamin H. Richman
One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Amir Missaghi
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

---

[3] Although previously marked as confidential, Defendant has since filed the entirety of Myers' report in the public record. (*See* Dkt. No. 114-9.) Accordingly, Plaintiff does not seek to file Exhibit 2 hereto under seal either.

## CERTIFICATE OF SERVICE

      I, Benjamin H. Richman, an attorney, hereby certify that on March 10, 2017, I served the above and foregoing ***Plaintiff's Memorandum in Support of Motion to Strike Expert Report and Testimony of Monty G. Myers***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 10th day of March, 2017.

                                                                      /s/ Benjamin H. Richman