IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> SPEEDYPC SOFTWARE, a British Columbia company, <br><br> *Defendant*. | Case No. 1:13-cv-08389 <br><br> Honorable Andrea R. Wood |

**PLAINTIFF BEATON'S MEMORANDUM IN OPPOSITION TO DEFENDANT SPEEDYPC'S MOTION TO BAR PLAINTIFF'S EXPERT, CRAIG SNEAD**

**I.     Introduction**

Defendant SpeedyPC's ("Defendant") motion to bar Plaintiff's expert, Craig Snead, is not a serious critique of Snead's expertise or his work in this case. Instead, it consists entirely of conclusory attacks—all lacking any record or other support—sprinkled amongst pages of recitation of the legal standards to be applied under Fed. R. Evid. 702.

For example, Defendant laments that Snead "is not a computer forensics expert[,]" (dkt. 143 at 3), and "lacks expertise in the field of computer forensics." (*Id.* at 5.) True enough. But Snead wasn't engaged to perform a forensic analysis. He was tasked, for purposes of class certification, with reviewing the source code underlying SpeedyPC's free diagnostic scan – as opposed to the full, licensed version of the product – and determining whether it was uniformly coded to return an alarmist assessment regardless of the actual condition of a user's computer. (*Id.* at 4 – 5, 21 – 24.)

Similarly, Defendant contends that "most of Snead's training has been in developing websites[,]" apparently, in hopes of again impugning his (admitted) lack of expertise in computer

1

forensics. (*Id.* at 5 – 6.) Defendant does not, however, address Snead's many years of work as a *software developer* (*id.* at 3); does not argue that Snead is unqualified to review the source code in this case, as he did; nor does it explain what would qualify an expert to do so.

Lastly, and to describe the motion generously, Defendant takes issue with the methodologies Snead used in this case. That argument consists of but a single paragraph of quotations about the relevant legal standards, and the conclusion that "Snead's opinions are the type of subjective belief that Rule 702 and *Daubert* prohibit." (*Id.* at 7.) Defendant provides no discussion or analysis of the methodologies Snead applied, what it believes would have been appropriate methodologies, nor anything else to suggest that Snead's analysis of the source code is anything but accurate.

This is all to say that Defendant hasn't done the work to present a coherent argument as to why Snead should be barred as an expert. As explained further below, Snead is sufficiently qualified to review the source code that he did, to provide the Court a report on that coding, and Defendant's motion should be summarily denied.

## II. Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles elucidated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the

facts of the case. The party seeking to introduce the expert testimony has the burden of establishing, by a preponderance of the evidence, that it is admissible." *Daubert*, 509 U.S. at 593 n.10. The focus of the admissibility determination "must be solely on principles and methodology, not on the conclusions that they generate." *Id*. at 595. Ultimately, this Court has "broad discretion under Rule 702… to admit or exclude evidence." *United States v. Hall*, 165 F.3d 1095, 1101 (7th Cir. 1991).

**III.     Craig Snead Appropriately Reviewed the Source Code in this Case and, as an Experience Software Developer, was Qualified to do so.**

Software experts should "examine the product and the software," *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006), and state "what software he used, what data he fed it, what results it produced, and how alternative explanations… were ruled out." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008). Such experts must "do more than read advertisements" attesting to the software's features. *Autotech Tech,* 471 F.3d at 749.

In this case, Snead did not rely on advertisements regarding SpeedyPC Pro's functionality; he analyzed the actual source code that alerted people to the supposedly "critical" condition of their computers. (*See* Snead Rep. at 4 & n.1 ("…I inspected the codebase of Defendant's SpeedyPC Pro Software. The source code I reviewed spanned versions of the Software 3.0.0_r30511 to 3.2.12_r577456.").) Although SpeedyPC Pro is programmed to offer both a free, unlicensed version, and a paid, licensed version, at the class certification stage, Snead's report properly focused on the source code of the product presented to consumers that induces them to purchase the licensed version. This is because Plaintiff Beaton's claims squarely challenge the deceptive design and marketing of SpeedyPC Pro that invariably exaggerates the existence of problems and fraudulently induces the purchase of software that purports to fix

3

them. (dkt. 1 at ¶¶ 15 – 19.) Snead is transparent about the scope of his opinion: "That is, when the Software is *initially installed* on a computer, it runs through the same code despite any differences on the PC it is installed on." (Snead Rep. at 5 (emphasis added).)[1]

Snead explained what "data he fed" the software, and "what results it produced." *Wendler*, 521 F.3d at 791. (*See* Snead Rep. at 6-21 (walking through each step of a "diagnostic scan" on SpeedyPC Pro, providing screenshots and snippets of source code); Snead Tr. at 34:9-35:12 (describing the process of creating a virtual machine on which to run Defendant's software)). For each purported "problem" detected by Defendant's software, Snead provides a conclusion to his analysis (e.g., "The Software is not programmed to determine or report on the severity of the identified Privacy Item 'problems.'"). And where Snead was not provided sufficient data to make a conclusion, he admitted his limitations: "I was not provided access to the database of processes and files the Software identifies as 'malware' ... As such, I am not able to opine on the validity of such a database…." (Snead Rep. at 16.) Other than concluding that Snead was just doing "guesswork," SpeedyPC offers no explanation as to why this methodology was improper or its results were flawed. *See Obrycka v. City of Chicago*, 2012 WL 4092653, at *8 (N.D. Ill. Sept. 17, 2012) (declining to strike expert testimony where party moving to strike made an incomplete and conclusory argument about "reams of other data" available to expert, and citing *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) for the proposition that "underdeveloped, conclusory, and unsupported arguments are waived").

---

[1] Defendant seems to be of the view that Snead should have reviewed the source code for the paid, licensed version of SpeedyPC Pro. (*See* dkt. 143 at 6 ("Snead only looked at the code for the free scan.").) The basis for that position is not stated in the motion nor is it otherwise apparent. At the class certification stage, the point—as has been Plaintiff's position throughout the litigation—is that the free trial version of SpeedyPC Pro was coded to uniformly misrepresent the health and performance of a user's computer, regardless of its actual condition, thus fraudulently inducing the user to pay for a full version of the software to fix their computer's issues. (Dkt. 1 at ¶ 15 – 19; dkt. 23 at 1 – 3; dkt 42 at 2.) In other words, the proposed class members were subjected to the same representations, within the same software, which was coded to operate the same way on each of their computers.

Moreover, Snead is a well-credentialed and experienced software developer, capable of performing an analysis of Defendant's source code. With a degree in Information Engineering, Snead has been employed as a professional software developer for over a decade. (*See* Snead CV, Dkt. 143-4; *see also* Snead Tr., dkt. 143-3 at 10:17-13:2). Snead's responsibilities have included wide-ranging source code development and analysis, including the identification of bugs, creation of custom applications, and software penetration testing. *Id*.

In sum, Snead is an emminently qualified software development expert and is more than capable of accurately reviewing and assessing the source code in question here. Defendant's unsubstantiated conclusions to the contrary are meritless.

**IV. Defendant's Belief that a Forensic Analysis was Necessary Speaks Nothing to the Reliability of Snead's Review of the Source Code.**

Finally, Defendant's contention that Snead's opinions are unreliable because he failed to perform the analysis of a computer forensics expert must be rejected as well. *See* Def. Mot. to Bar at 6 ("Snead's opinions are unreliable because they are not based on sufficient facts or data… Snead did not look at the efficacy of the Software. Snead never looked at the laptop or an image of the laptop.") (citations omitted). That Defendant believes a different type of expert or analysis should have been engaged and performed speaks nothing to the efficacy of the source code review Snead actually performed or his resulting conclusions. *See In re LakeStates Commodities, Inc.*, 271 B.R. 575, 585 (Bankr. N.D. Ill. 2002), *aff'd sub nom. Fisher v. Page*, No. 01 C 1698, 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002) ("Though an expert's opinion may be admissible, the admissibility of the expert's opinion does not equate with its utility in satisfying a burden of proof.") Indeed, "[w]hether [Plaintiff] would have had its expert do something different or considered different information or factors [than Defendant's expert did] is not dispositive for assessing the admissibility of expert testimony." *Premium Plus Partners, L.P. v.*

*Davis*, 653 F. Supp. 2d 855, 875 (N.D. Ill. 2009), *aff'd sub nom. Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533 (7th Cir. 2011). In other words, although a purportedly incomplete analysis "is certainly ample fodder for cross examination," *Saad v. Shimano American Corp.*, 2000 WL 1036253, at *21 (N.D.Ill. July 24, 2000), such an attack has little impact on admissibility as an expert, especially where Defendant offers no argument or analysis on the issue whatsoever.[2]

## V. Conclusion

For the reasons stated above, this Court should deny Defendant's motion to strike the Craig Snead's expert report.

Respectfully submitted,

**ARCHIE BEATON**, individually and on behalf of all others similarly situated,

Dated: April 7, 2017

By: /s/ Benjamin H. Richman
    One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Amir Missaghi
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

---

[2] Notably, Defendant includes in its motion a list of seven conclusions reached by Snead about the source code. (*See* dkt. 143 at 2 – 3.) At no point, however, does Defendant even conclude, let alone explain how or why, those conclusions are anything but accurate. Setting aside the motion's general lack of substantive argument, the reason is clear: Snead's assessment of the source code is, in fact, accurate.

## **CERTIFICATE OF SERVICE**

      I, Benjamin H. Richman, an attorney, hereby certify that on April 7, 2017 I served the above and foregoing ***Plaintiff Beaton's Memorandum in Opposition to Defendant SpeedyPC's Motion to Bar Plaintiff's Expert, Craig Snead***, by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing systems, on this the 7th day of April 2017.

                                                                        /s/ Benjamin H. Richman