IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 13-cv-08389 |
| v. | ) ) | Judge Andrea R. Wood |
| SPEEDYPC SOFTWARE, a British Columbia company, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Archie Beaton ("Beaton") has sued Defendant SpeedyPC Software ("SpeedyPC"), a Canadian computer software company, claiming that it engaged in fraudulent and deceptive marketing of SpeedyPC Pro, a software product that SpeedyPC claims diagnoses and repairs various computer errors, optimizes computer performance, and protects computers from malware. SpeedyPC's customers would first run a diagnostic scan using its free software. After receiving the results of the scan, customers would be invited to purchase SpeedyPC's premium software, SpeedyPC Pro—and many of them accepted that invitation. Beaton claims to be one such customer. He claims that he purchased SpeedyPC's software and installed it on his laptop computer, but the software did not satisfy SpeedyPC's promises. As result, according to Beaton, SpeedyPC breached implied warranties of fitness for a particular purpose and merchantability and committed fraudulent misrepresentation under various consumer protection laws. Now under the Court's consideration is Beaton's motion to certify a class and subclass of purchasers of SpeedyPC's software. For the reasons discussed below, the Court grants Beaton's

motion to certify the class and also grants the request to certify a subclass but with a modified class definition.

## BACKGROUND

This putative class action arises out of Beaton's purchase of a license to use the SpeedyPC's software. SpeedyPC promotes its software through online advertisements and on websites as being capable of increasing computer speed and performance, removing harmful computer errors, and protecting users' privacy and security. (Compl. ¶ 15, Dkt. No. 1.) Beaton alleges that these representations do not reflect the software's true capabilities. (*Id.* ¶ 22.) Instead, the software has two main functions: first, it is a registry cleaner;[1] and second, it removes superfluous "temporary" files from a user's hard drive. (*Id.*) According to Beaton, these functions "do not come close to squaring with SpeedyPC's representations about the functionality of SpeedyPC Pro." (*Id.*)

Beaton claims that SpeedyPC engages in a deceptive marketing scheme to induce consumers to purchase the premium version of its software. Online ads for the premium version of the software promise that the software can, among other things, "[b]oost your PC's speed and performance," "[f]ind your PC's performance potential," and "improve[] your PC's health." (*Id.* ¶ 16.) Consumers who click on one of SpeedyPC's advertisements are directed to one of SpeedyPC's websites, which warns consumers about various risks to their computers. (*Id.* ¶ 17.) The websites recommend that consumers download the trial version of the software to detect issues that the product is supposedly designed to identify and fix. (*Id.* ¶ 24.) Once a consumer downloads and runs the trial version of the software, it displays hundreds or thousands of serious problems that it claims are affecting the computer and "require attention." (*Id.* ¶ 28.) After

---

[1] Registry cleaner software is a type of utility program designed to remove unwanted or redundant items from the Microsoft Windows operating system registry. The "registry" is a database of configuration settings that help facilitate the operation of computer applications in the operating system. (*Id.* ¶ 21 n.1.)

presenting the results of the diagnostic scan, the software displays to the user a half-page warning with bold red letters stating: "SpeedyPC Pro has determined that your computer requires immediate attention!" and is in "Serious" or "Critical" condition. (*Id.* ¶ 29.) The user is then given the option to purchase the premium version of the software to fix and repair the supposedly harmful errors that have been detected. (*Id.*)

In August 2012, while browsing the Internet for software to repair and optimize his computer, Beaton encountered one of SpeedyPC's ads. (*Id.* ¶ 42.) Based on various representations made in the ad, Beaton went to one of SpeedyPC's websites, which presented more representations regarding the utility of the software. (*Id.* ¶ 43.) Beaton includes in his Complaint screenshots of several of these representations. One such screenshot makes the claim that the software can "clean and optimize your computer for peak performance." (*Id.* ¶ 43 fig. 10.) Based on SpeedyPC's representations, Beaton downloaded and installed the software. (*Id.* ¶ 44.) The software scanned Beaton's computer and reported that it detected hundreds of serious errors, some of which were causing damage to the computer. (*Id.* ¶ 45.) The software warned Beaton that these problems were decreasing his computer's performance and compromising his security, and urged him to purchase the software to "fix" the problems. (*Id.*) Beaton clicked on a button labeled "Fix All," which forwarded him to a SpeedyPC website that urged him to register the software to fix the problems identified. (*Id.* ¶ 46.) After reaching the registration webpage, SpeedyPC again represented to Beaton that it "detected some problems that needed to be fixed" and instructed him to "Register SpeedyPC Pro now!" (*Id.* (citing ¶ 43 fig. 10).) Relying on these representations about the software's capabilities and his computer's condition, Beaton paid to activate the software and repair the purported errors. (*Id.* ¶ 47.) After he downloaded the software, every time Beaton ran it, the software reported harmful errors that were adversely

3

affecting his computer and that he needed to fix. The software continued to report harmful errors even though Beaton repeatedly ran the program and "fixed" any errors that were found. (*Id.* ¶ 49.) Beaton's computer performance did not improve despite his repeatedly running the software's scan. (*Id.*)

In addition to his personal experience with the software, Beaton, through his attorneys, also engaged an expert to examine it. (Ex. 6 to Pl.'s Mot. to Certify Class at 4, Dkt. Nos. 125-6 & 127-3.) The expert concluded that the diagnostic function of SpeedyPC's software is designed to report that a computer has "low" performance without conducting any diagnosis, scan, or analysis of the user's computer. (*Id.* at 21.) Beaton's expert further concluded that supposed errors identified by the software were not in fact credible threats to a computer's functionality. (*Id.* at 22.)

## DISCUSSION

To be certified, a proposed class must satisfy the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representative"). Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the proposed class must then fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions

4

predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

### I. Definitions of Class and Subclass

Beaton first proposes as the Class:

> All individuals living in the United States who downloaded a free trial of SpeedyPC Pro and thereafter purchased the full version between October 28, 2011 and November 21, 2014.

On behalf of the Class, Beaton seeks to litigate contractual warranty claims for breaches of the implied warranties of fitness for a particular purpose and merchantability. These claims arise under British Columbia law.

Beaton also proposes as the Subclass:

> All Class members who reside in Illinois, California, Colorado, Florida, New York, Oregon, Alabama, Tennessee, New Jersey, North Carolina, New Hampshire, Hawaii, Vermont, Massachusetts, Michigan, and Washington, D.C.

On behalf of the Subclass, Beaton seeks to litigate claims for fraudulent misrepresentation under the consumer-protections laws of each of the respective jurisdictions. The Court observes that, apart from identifying the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, Beaton has not identified the laws of any of the other jurisdictions under which he seeks to assert the Subclass's claim. Beaton apparently has in mind the similar consumer-protection laws of these jurisdictions, but the Court is unable to divine what statutes Beaton has in mind. This is problematic because the applicable statutes may have different elements, different statutes of limitation, and different damages that are available. Beaton, as Plaintiff, bears the burden of proving that class certification is appropriate, *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993), and without identifying the statutes underlying the Subclass claims Beaton has not satisfied this burden.

Thus, for purposes of this motion the Court will deny the motion to certify this Subclass and instead restrict the Subclass to the Revised Subclass consisting of "all Class members who reside in Illinois."

For both the Class's and Revised Subclass's claims, Beaton's basic theory is that the free version of SpeedyPC's software "blindly report[s]" that the customer's computer has low performance, thereby inducing the customer to purchase the premium version of SpeedyPC's software that ultimately confers no benefit on the customer. Consequently, Beaton moves to certify both the Class and Revised Subclass under Rule 23(b).

**II.      Analysis under Rule 23(a)**

*A.      Preliminary Considerations on Class Propriety*

SpeedyPC raises two preliminary concerns for why class certification should be denied. First, SpeedyPC claims that Beaton's proposed Class is improper as the definition in his motion for class certification differs from the definition in his Complaint. But nothing prevents this Court from considering a revised definition or, indeed, *sua sponte* revising the definition of a proposed class. *Green v. Serv. Master on Location Servs. Corp.*, No. 07-cv-4705, 2009 WL 1810769, at *3–4 (N.D. Ill. June 22, 2009) (revising class definition *sua sponte*); *Kress v. CCA of Tenn., LLC*, 272 F.R.D. 222, 232 (S.D. Ind. 2010) ("[T]he Court has broad discretion to modify the class definition if necessary." (citing *Harden v. Raffensperger, Hughes & Co., Inc.*, 933 F. Supp. 763, 769 n.5 (S.D. Ind. 1996) (modifying class definition *sua sponte* ))). Here, there is no prejudice to SpeedyPC in this Court's consideration of Beaton's revised class definition and doing so is in the interests of judicial economy.

Second, SpeedyPC argues that Beaton's Class definition is vague. In particular, SpeedyPC states that the phrase "living in the United States" does not specify a time period. As

such, it is not clear whether "an individual living in Ireland [who] purchased the software in 2013 and since that time has moved to Wisconsin" is in Beaton's proposed Class. (Def.'s Resp. to Pl.'s Mot. for Class Cert. at 8, Dkt. No. 135.) In his response, Beaton clarifies that this phrase means "the class individuals [of] who purchased the product while living the United States."[2] (Pl.'s Reply at 4 n.1, Dkt. No. 151.) With this revision, the Court concludes that any potential vagueness has been cured.[3]

### B. Numerosity

SpeedyPC's records reflect that over 574,000 individuals downloaded the free trial of SpeedyPC's software before purchasing the full version of SpeedyPC's software. (Ex. 14 to Memo. to Pl.'s Mot. to Certify Class at 1, Dkt. No. 125-14.) The Revised Subclass has over 19,000 individuals. (Ex. 5 to Pl.'s Mot. to Supp. Mot. for Class Cert. at 1, Dkt. No. 171-5.) These numbers are sufficiently large to make joinder impracticable with respect to both the Class and Revised Subclass. *See, e.g.*, *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."). Thus, both the Class and Revised Subclass are sufficiently numerous under Rule 23.

### C. Commonality

"For class certification, only one question of law or fact common to the class is required. However, some factual variations among class members' experiences will not defeat class

---

[2] SpeedyPC does not raise the vagueness concern with respect to the proposed Subclass, but the Court will assume that the phrase in the Revised Subclass "who reside in Illinois" similarly refers to Class members who purchased the software when they lived in Illinois.

[3] SpeedyPC also complains that it is unsure whether the Class includes "[a]ll individuals and entities"—as stated in Beaton's Complaint—or just "[a]ll individuals"—as stated in Beaton's motion for class certification. Beaton does not respond to this point in its reply brief. As such, the Court will use Beaton's revised definition, which simply says "[a]ll individuals."

certification when the legal issues are the same for all. The central issue is the same for all when defendants have engaged in standardized conduct toward members of the proposed class. Accordingly, [c]lass actions . . . cannot be defeated on commonality grounds solely because there are some factual variations among the claims of individual members." *Kazarov v. Achim*, No. 02-cv-5097, 2003 WL 22956006, at *5 (N.D. Ill. Dec. 12, 2003) (internal citations omitted and alterations in original); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) ("The fact that there is some factual variation among the class grievances will not defeat a class action.").

Here there are undoubtedly questions of law and fact that are common to the Class and Revised Subclass. The Class's contractual warranty claims raise legal questions about whether customers can avail themselves of these warranties or whether they have been disclaimed by the End User License Agreement accompanying SpeedyPC's software. These claims will also include factual questions about what function SpeedyPC's software was marketed as performing, whether the software did in fact perform that function, whether customers expressly or impliedly made known that they were purchasing the software for that purpose, and whether customers were harmed. *See, e.g.*, British Columbia Sale of Goods Act, RSBC 1996, Ch. 410, §18(a) ("[I]f the buyer or lessee, expressly or by implication, makes known to the seller or lessor the particular purpose for which the goods are required, so as to show that the buyer or lessee relies on the seller's or lessor's skill or judgment, and the goods are of a description that it is in the course of the seller's or lessor's business to supply, whether the seller or lessor is the manufacturer or not, there is an implied condition that the goods are reasonably fit for that purpose."). And these factual questions also arise with respect to the Revised Subclass's ICFA claims. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) ("The elements of a claim under the Illinois Consumer Fraud Act (815 ILCS 505/2 (West 1994)) are: (1) a deceptive

act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.").

      D.    *Typicality*

Beaton's claims appear to be entirely typical of the other Class and Revised Subclass members' claims. In interacting with SpeedyPC's free software, Beaton appears to have seen the same representations as the other users of SpeedyPC's free software, and the software appears to operate in the same way on each computer. (Ex. 6 to Pl.'s Mot. to Certify Class at 4–5, Dkt. Nos. 125-6 & 127-3.) SpeedyPC does not point to any counterexamples in which different customers saw different representations or the software functioned differently on one type of computer than another. Rather SpeedyPC contends that, in Beaton's deposition, he conceded that his experience with SpeedyPC's software was different than that of other customers. To this end, SpeedyPC cites Beaton's deposition testimony where SpeedyPC's counsel showed Beaton an anonymous positive internet review of SpeedyPC's software and he responded, "I'm just going on my own experience. My own experience does not coincide with this individual's response or his computer." (Def.'s Resp. to Pl.'s Mot. for Class Cert. at 10, Dkt. No. 135 (citing Ex. D to Def.'s Resp. to Pl.'s Mot. for Class Cert. at 116, Dkt. No. 137).) This does not constitute a concession by Beaton that his experience with SpeedyPC's software was different from others. Beaton's response implied that he had no knowledge of the posting individual's experience. As such, he was simply saying that because he had a negative experience with SpeedyPC's software, he differed in opinion from the anonymous positive internet review he was shown. Nowhere did he concede that SpeedyPC's software ***functioned*** differently for other people or computers. Thus, SpeedyPC has provided no reason to think that Beaton's claims are atypical.

E.   *Adequacy of Representative and Counsel*

"To determine whether the class representatives will adequately represent the class as a whole, courts examine whether: (1) the representatives have antagonistic or conflicting claims with the other class members; and (2) the counsel for named plaintiffs can sufficiently represent the class." *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, No. 02 V 0978, 2003 WL 21995177, at *2 (N.D. Ill. Aug. 20, 2003) (citing *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)). SpeedyPC takes a scattershot approach to arguing that Beaton and his counsel, Edelson, P.C., are inadequate, arguing: (1) Beaton was convicted of felony manslaughter; (2) Beaton is not credible; (3) Beaton did not purchase the software, but rather his business purchased the software; (4) Beaton does not represent Class members who were satisfied with the software; (5) Beaton committed spoliation of evidence; and (6) opposing counsel in other cases have accused Edelson of sanctionable conduct and incompetence.[4] The Court considers each of these arguments in turn.

First, the Court rejects SpeedyPC's argument that Beaton's felony conviction and allegedly false deposition testimony renders him inadequate as a class representative. Beaton's felony manslaughter conviction stems from conduct occurring over 30 years ago, and in any event does not bear any relation to this case. There is no bar on felons being class representatives. *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 613 (N.D. Ill. 2009). Moreover, SpeedyPC has not explained how Beaton's conviction differentiates him from other class members or makes his interests different from or antagonistic to the other class members. And

---

[4] SpeedyPC also argues that Beaton cannot represent members of his proposed Subclass who reside outside of Illinois. Because the Court has revised the definition of Beaton's Subclass to include members of the Class who reside in Illinois, this argument is moot.

Beaton's purportedly "false" deposition testimony in connection with this lawsuit is not nearly as clear or provocative as SpeedyPC suggests.

Second, the Court finds unpersuasive SpeedyPC's recitation of purported lies that Beaton told. For example, SpeedyPC points to Beaton's assertion in his declaration that he used his laptop "primarily for personal use" as contradicting his deposition testimony that it was used for both business and personal use. (Def.'s Resp. to Pl.'s Mot. for Class Cert. at 20, Dkt. No. 135 (citing Ex. 15 to Pl.'s Memo. in Supp. of Class Cert. ¶ 3, Dkt. No. 125-15 (January 27, 2017 declaration); Ex. D to Def.'s Resp. to Pl.'s Mot. for Class Cert. at 51, Dkt. No. 137 (July 28, 2016 deposition testimony)).) But these statements are not contradictory at all—it is possible to use a laptop for both business and personal use, but still use it primarily for personal use. Another example SpeedyPC highlights is that Beaton alleged in his Complaint and sworn interrogatory responses that he paid $39.94 for SpeedyPC's premium software; but documents Beaton produced showed that he paid $9.97 for the software. (*Id.* at 20 (citing Compl. ¶ 38, Dkt. No. 1; Ex. E to Def.'s Resp. to Pl.'s Mot. for Class Cert. at 4 of 9, Dkt. No. 138 (produced document)).) But that appears to have simply been a mistaken assertion in his Complaint, which was corrected by Beaton's production of documents. Finally, SpeedyPC claims that Beaton originally testified at his deposition that no one performed any maintenance on his laptop, but later in his response to SpeedyPC's motion for sanctions Beaton explained in a declaration that he had his laptop reformatted by an IT expert. (*Id.* at 20–21 (citing Ex. D to Def.'s Resp. to Pl.'s Mot. for Class Cert. at 59, Dkt. No. 137 (July 28, 2016 deposition testimony);  Decl. to Pl.'s Memo. in Opp. to Mot. for Sanctions ¶ 3, Dkt. No. 133-2).) This apparent contradiction again appears to be the product of an uncharitable reading of Beaton's deposition testimony. SpeedyPC's counsel asked Beaton about his normal use of his laptop. (Ex. D to Def.'s Resp. to

Pl.'s Mot. for Class Cert. at 59, Dkt. No. 137.) In the course of this questioning, Beaton responded that he performed maintenance on the laptop himself and he did not take the laptop to anybody else to have maintenance done. (*Id.*) Beaton did take the laptop to an IT professional, but only after he stopped using this laptop and instead was using his other computers. (Mem. in Supp. of Def.'s Mot. for Sanctions at 2–3, Dkt. No. 114.) Thus, when Beaton was answering SpeedyPC's counsel's queries about his maintenance of the laptop, it is plausible that he was referring to his routine conduct, and not whether he had ever taken it to service. All in all, SpeedyPC has not provided any persuasive reason to think that Beaton is not credible or that any issues with his credibility require his removal as class representative. *See, e.g.*, *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) ("[F]ew plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished. For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." (internal quotations omitted)).

SpeedyPC's third argument is similarly unpersuasive. SpeedyPC argues that Beaton's business, the Chlorine Free Products Association ("CFPA"), actually bought the software, not Beaton. As such, SpeedyPC's argument is that Beaton does not possess any claims against SpeedyPC; those would belong to CFPA. And because CFPA is not an individual, it would not fit in the definition of the Class or Revised Subclass. In support of this argument, SpeedyPC points out that Beaton used his business's credit card to purchase the software from Speedy, therefore the business was the actual purchaser of the software. But Beaton owns that business, Beaton purchased the software under his own name, and Beaton indicated that the software was

12

used for his personal purposes. (Ex. D to Def.'s Resp. to Pl.'s Mot. for Class Cert. at 116, Dkt. No. 137 (Beaton stating that he started his own company CFPA); Ex. 10 to Memo. to Pl.'s Mot. to Certify Class at 1, Dkt. No. 125-10 (indicating that Beaton was the customer of the SpeedyPC premium software purchase); Ex. 15 to Memo. to Pl.'s Mot. to Certify Class at 1, Dkt. No. 125-15 (Beaton declaring he used the software primarily for personal purposes).) Under these circumstances the Court declines to find that Beaton did not purchase the software himself.

SpeedyPC's argument that Beaton does not seek to represent people who were satisfied with SpeedyPC's software is simply mistaken. SpeedyPC mischaracterizes Beaton's testimony: Beaton never says that he does not wish to represent people satisfied with SpeedyPC's software; in fact, Beaton expressly states that he wishes to represent them. (Ex. D to Def.'s Resp. to Pl.'s Mot. for Class Cert. at 107, Dkt. No. 137 ("If the individuals have had the same program that I bought[,] . . . I would like to represent them. . . . Regardless [of whether they are satisfied,] I would only assume that they had suffered the same way I have.").) Importantly, even if customers were satisfied with SpeedyPC's software, they might still have a claim against SpeedyPC. Dissatisfaction with the software does not appear to be an element of the contractual warranty claims or the ICFA. Insofar as people satisfied with SpeedyPC's software have claims, Beaton is clearly willing to represent them.

Regarding SpeedyPC fifth argument, SpeedyPC simply states that it brought a motion for sanctions for spoliation of evidence and that his alleged spoliation renders Beaton inadequate as a class representative. The Court has rejected SpeedyPC's motion for sanctions for spoliation of evidence. (Order at 4–5, Dkt. No. 184.) These allegations relate to Beaton engaging the help of an IT professional to fix his computer, which resulted in the reformatting of the hard drive of the laptop on which SpeedyPC's software was downloaded. (*Id.* at 4.) The Court determined that

SpeedyPC had not shown that Beaton reformatted his hard drive to destroy evidence. (*Id.* at 5.) Speedy PC offers no other reason why Beaton's conduct in reformatting his laptop's hard drive renders him inadequate as a class representative. Thus, given the Court's ruling denying the motion for sanctions, the Court also rejects SpeedyPC's argument that Beaton is inadequate as a class representative on the basis of the purported spoliation of evidence.

Finally, the fact that opposing counsel in other cases have accused Edelson of sanctionable conduct and incompetence does not disqualify them as class counsel. SpeedyPC only trudges up adversarial claims against Edelson—SpeedyPC has not pointed to any judicial rulings on those adversarial claims. The most SpeedyPC does is point out that in another class action case against Speedy, *Bastion v. SpeedyPC Software*, Case No. 3:12-cv-04739 (N.D. Cal.), Edelson had to change the named plaintiff and then subsequently voluntarily dismissed its complaint. (Def.'s Resp. to Pl.'s Mot. for Class Cert. at 22, Dkt. No. 135.) In essence, SpeedyPC asks this Court to disqualify Edelson from class-action litigation for once voluntarily dismissing a case. That is not enough and thus the Court rejects the request. Based on a review of the dockets of the cited Edelson matters and Edelson's conduct in this matter, the Court has not seen anything indicating Edison lacks the competence to adequately litigate this case. Thus, the Court finds that Beaton and his counsel Edelson are adequate representatives of the Class and Revised Subclass.

Consequently, the Court finds that Beaton's proposed Class and Revised Subclass meet the requirements of Rule 23(a).

**III. Analysis under Rule 23(b)**

Based on Beaton's motion, it appears that Beaton seeks to litigate this class action under Rule 23(b)(3), which states:

> A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Thus, the Court considers whether questions of law or fact common to the Class and Revised Subclass claims predominate and whether a class action is superior to other available methods for fairly and efficiently adjudicating the Class and Revised Subclass claims.

### A. *Predominance of Common Questions*

"Generally, predominance is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication. In other words, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. The presence of some individual questions is not fatal, but individual questions cannot predominate over the common ones." *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 593 (N.D. Ill. 2015) (internal quotations and citation omitted and alteration in original). As discussed, there are common questions of law and fact to the Class and Revised Subclass. SpeedyPC does not address these common questions, but rather poses ten material questions that it claims require individual attention such that they would predominate over the common questions relating to the Class and Revised Subclass:

(1) Who did the class member purchase the software from?
(2) Was the software purchased primarily for business or personal use?
(3) Did the software work?

      (4)      Was the class member deceived into purchasing the software?
      (5)      What was the value of the software as promised to the class member?
      (6)      What was the value of the software as delivered to the class member?
      (7)      Did the class member provide notice of its claim to Speedy?
      (8)      Is the class member's claim time barred?
      (9)      Did the class member request a refund?
      (10)     Was a refund issued to the class member?

The Court disagrees and does not find that these questions predominate over the common questions that relate to the Class and Revised Subclass.

Question (1) is best addressed through a common proceeding because the evidence shows that the class members purchased the premium version of SpeedyPC's software through the free version's portal and were directed to one of two payment processors. (Ex. 9 to Memo. to Pl.'s Mot. to Certify Class at 24, 39, Dkt. No. 125-9.) Thus, if SpeedyPC intends to argue that this does not result in the requisite privity to ground the class's contractual warranty claims, that argument can be resolved for the entire class through one proceeding.

Similarly, questions (3), (4), (5), and (6) too can be addressed through a common proceeding, because each of these questions is intricately related to SpeedyPC's representations about the software and the function of the software. Beaton alleges that SpeedyPC's software did not properly diagnose problems with computers and therefore did not confer any benefit on customers of SpeedyPC's premium software product. This claim can be resolved in a common proceeding, because, as discussed, the Class members received the same software product, the software appears to operate in the same way on each computer, and all of the Class members were exposed to the same representations in SpeedyPC's free software. Moreover, even if there are differing individual damages based on the impact of SpeedyPC's software on each Class and Revised Subclass member's computer, such damages issues do not predominate over the common issues concerning the representations and operation of SpeedyPC's software. *Mullins v.*

*Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) ("It has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification."); *see also Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 407 (D.N.J. 2011) (granting certification in computer software class action case and ruling that the presence of differing individual damages did not bar certification because class issues still predominated).

Questions (2), (7), (8), (9), and (10) are questions that may require individual responses and evidence, but they do not predominate over the common questions relevant to the Class and Revised Subclass. Each of these questions is, as a general matter, sufficiently simple that there are streamlined mechanisms available to determine which of the Class members has a viable claim. For example, as all of these questions have straightforward binary answers, the parties could utilize a form affidavit, with accompanying audit procedures, to address these questions.

### B. *Superiority of Class Action*

In light of all this, the Court determines that the class action is a superior way of proceeding. Chiefly, as discussed, there are common questions of law and fact relating to the Class and Revised Subclass that predominate over any individual questions. Moreover, the claims of the Class and Revised Subclass are manageable. The Class's claim is under the law of British Columbia, Canada and the Revised Subclass's claim is under the ICFA. And as discussed, the relevant individual questions can be addressed through a streamlined process, with appropriate auditing procedures. Finally, because SpeedyPC sold its software for between $9.95 and $39.97, each Class and Revised Subclass member stands to recover an amount too small to make individual litigation economically feasible. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual

suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all."). Indeed, if SpeedyPC did engage in misconduct, allowing a class action to proceed will not only compensate the Class members, but it will also ensure that there is appropriate deterrence. *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 305 (N.D. Ill. 2005) (allowing a class action of over 700,000 class members and stating that "[c]lass actions were designed 'not only to compensate victimized members of groups who are similarly situated . . . but also to deter violations of the law, especially when small individual claims are involved" (internal quotations omitted)).

## CONCLUSION

For the foregoing reasons, the Court grants Beaton's motion to certify the class to bring contractual warranty claims for breaches of the implied warranties of fitness for a particular purpose and merchantability. The Court grants in part Beaton's motion to certify the subclass. Specifically, the Court revises the subclass definition to include "all Class members who reside in Illinois" in order to bring claims for fraudulent misrepresentation under the ICFA.

ENTERED:

Dated: October 19, 2017

_____
Andrea R. Wood
United States District Judge