IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARCHIE BEATON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 13-cv-08389 |
| v. | ) ) | |
| SPEEDYPC SOFTWARE, a British Columbia company, | ) ) ) | Judge Andrea R. Wood |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant SpeedyPC Software ("SpeedyPC") is a Canadian software company that sells software to optimize computer performance and protect computers from malware. In this class action, Plaintiff Archie Beaton has sued SpeedyPC claiming that the premium version of SpeedyPC's software that he and other class members purchased and installed on their computers did not live up to SpeedyPC's promises. Beaton and other SpeedyPC customers purchased the premium software after first running a diagnostic scan using SpeedyPC's free software that, according to Beaton, would report extensive problems regardless of whether such problems were actually present. After receiving the results of the scan, the customers were invited to purchase the premium software, SpeedyPC Pro, to fix those problems. But the premium software did not actually do what it claimed. As a result, Beaton claims that SpeedyPC breached implied warranties of fitness for a particular purpose and merchantability and committed fraudulent misrepresentation under various consumer protection laws. In connection with his motion to certify the class and subclass, Beaton proffered the expert report of Craig Snead. (Ex. 6 to Pl.'s Memo. in Supp. of Class Cert., Dkt. Nos. 125-6, 127-3 ("Snead's Expert

Rep.").) In opposing Beaton's motion, SpeedyPC proffered the expert report of Monty G. Myers. (Ex. F to Def.'s Resp. to Pl.'s Mot. for Class Cert., Dkt. No. 135-13 ("Myers's Expert Rep.").) The parties filed cross-motions to bar each other's proffered expert testimony. (Dkt. Nos. 143, 145.)[1] The Court now rules on those motions as follows.

## I. Legal Standards

Rule 702 governs the admissibility of expert evidence in federal court. It provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, expert testimony must not only assist the trier of fact, it must also demonstrate sufficient reliability. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). "[T]he district court serves as a 'gatekeeper' whose role is to ensure that an expert's testimony is reliable and relevant." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* laid out four factors by which courts can evaluate the reliability of expert testimony: (1) whether the expert's conclusions are falsifiable; (2) whether the expert's method has been subject to peer

---

[1] The Court previously issued a memorandum opinion granting Beaton's motion for class certification. (Dkt. No. 201.) Although the present memorandum opinion regarding the parties' proffered expert testimony is being issued subsequent to the class certification ruling, the Court considered the challenged expert testimony for purposes of class certification only to the extent consistent with the rulings stated herein.

review; (3) whether there is a known error rate associated with the technique; and (4) whether the method is generally accepted in the relevant scientific community. 509 U.S. 579, 593–94 (1993). This list is neither exhaustive nor mandatory and, ultimately, reliability is determined on a case-by-case basis. *Textron, Inc.*, 807 F.3d at 835.

## II. SpeedyPC's Motion to Bar Plaintiff's Expert Snead

Snead is a software and website developer with significant experience in custom software development and source code review. He was hired by Beaton in this matter and tasked with analyzing the diagnostic function of the free version of SpeedyPC's software. Snead concludes that the diagnostic function of the free version of SpeedyPC's software assesses the level of computer damage indiscriminately and is programmed to classify routine computing behavior as problematic. (Snead's Expert Rep. ¶¶ 50, 52, Dkt. No. 125-6.) SpeedyPC argues that Snead's opinions, as reflected in his report and deposition testimony, fail to meet the requirements of Rule 702 because (1) Snead is not qualified to render the opinions proffered, and (2) Snead's opinions were rendered based on a deficient methodology and therefore do not satisfy the reliability standards of Rule 702.

### A. *Qualifications to Render Opinions*

Despite SpeedyPC's protests, the Court determines that Snead is qualified "as an expert by knowledge, skill, experience, training, or education" to render the proffered opinions. Fed. R. Evid. 702. Snead is an experienced software developer with a bachelor's degree in Information Engineering from the University of Cincinnati. (Snead's Expert Rep. ¶ 3, Dkt. No. 125-6.) Since graduating in 2004, he has worked as a software developer. (*Id.*) He represents that he is experienced in software-code analysis for litigation and that he has worked in designing,

3

developing, and maintaining a variety of security software products. (Ex. 1 to Snead's Expert Rep. at 28 of 29, Dkt. No. 125-6.)

SpeedyPC complains that Snead is not a "computer forensics expert" but does not at all explain why knowledge of computer forensics is required for Snead's opinions. (Def.'s Mot. to Bar Pl.'s Expert at 5, Dkt. No. 143.) On the Court's review of Snead's expert report, Snead's experience with software and source code is sufficient to render him qualified to state his opinions.

SpeedyPC also argues that "most of Snead's training has been in developing websites," and so he should not be able to opine about software products. (*Id.* at 6.) But this is a blatant mischaracterization of Snead's deposition testimony. Counsel for SpeedyPC asked Snead, "[Y]ou have more than seven years of experience developing websites. Is that right?" (Ex. C to Def.'s Mot. to Bar Pl.'s Expert at 46, Dkt. No. 143-3.) Snead responds, "Websites and software." (*Id.*) Snead then testified that he had developed "hundreds of utilities," including "[d]ata parsing utilities, computer forensics utilities, [and] electronic data interchange utilities." (*Id.*) Indeed, this testimony is corroborated by his Curriculum Vitae. (Ex. 1 to Snead's Expert Rep. at 28–29 of 29, Dkt. No. 125-6.) Thus, in sum, SpeedyPC has provided no reason to think that Snead is not qualified to render his proffered opinions.

### B.    *Reliability Standards and Proper Methodology*

The Court also concludes that Snead's opinions satisfy Rule 702's reliability and methodological standards. SpeedyPC complains that: (1) Snead only looked at the code for the free version of the software and not the premium version of the software; (2) Snead never looked at an image of Beaton's laptop; (3) Snead did not inquire into the "efficacy" of the software's purported fixes; and (4) Snead did not know or research if there were any "standards relating to

4

the issues in this case." (Def.'s Mot. to Bar Pl.'s Expert at 6, Dkt. No. 143.)

The first three of these concerns is inapposite. Snead was tasked with providing his expert opinion on the free version of SpeedyPC's software and, specifically, its diagnostic function. As such, Snead did not even proffer any opinions about the premium version of SpeedyPC's software or Beaton's laptop. SpeedyPC has not identified any reason why Snead cannot render an informed opinion on the source code of the free software without considering the premium version of SpeedyPC's software or Beaton's laptop. Similarly, Snead did not investigate the "efficacy of the purported fixes" of the free software because his job was to consider its diagnostic function. Again, SpeedyPC has given the Court no reason to conclude that Snead was unable to opine on the diagnostic function of the software without considering the software's ability to fix problems with the customer's computer.

SpeedyPC's assertion that Snead was unaware of industry standards regarding the issues of the case is similarly unpersuasive. Snead's testimony on this point arose in the context of Snead's opinion that the free diagnostic software was assessing the level of computer damage arbitrarily. (Ex. C to Def.'s Mot. to Bar Pl.'s Expert at 84–85, Dkt. No. 143-3.) Specifically, Snead identified that the free software would assess damage based on the number of "system problems." (*Id.* at 84.) Counsel for SpeedyPC asked Snead whether he had researched industry standards on this point and Snead testified that he had not and was unaware of any. (*Id.* at 85.) Importantly, the Court notes that it is not even clear that such standards exist—SpeedyPC did not cite any such standards in its submissions to the Court. Nevertheless, as an experienced software engineer, Snead was entitled to present his opinions about the utility and function of the diagnostic capabilities of SpeedyPC's free software, as long as those opinions were supported by proper reasoning. Snead explained in his report that the free software only accounted for the

"number" of system problems and not the severity of those problems, and thus the free software was arbitrary in its determination of computer damage. (Snead's Expert Rep. ¶ 26, Dkt. No. 125-6.) SpeedyPC does not directly challenge that reasoning, with industry standards or otherwise. Instead, it asks this Court to strike the opinion of a qualified expert because he did not cite standards that may or may not exist. The Court declines to do so.

Finally, SpeedyPC claims that Snead's opinions are "subjective" and "nothing more than uninformed speculation, conjecture, and guesswork." (Def.'s Mot. to Bar Pl.'s Expert at 7, Dkt. No. 143.) However, SpeedyPC provides nothing more to support these characterizations. Thus, the Court denies SpeedyPC's motion to bar Snead's expert report and testimony.

### III.  Beaton's Motion to Bar SpeedyPC's Expert Myers

The Court next turns to consider Beaton's challenge to SpeedyPC's expert witness. Myers is the founder of a custom-software development company with substantial experience in negotiating software development agreements and executing the development of software for those agreements. Myers was tasked with assessing the contentions underlying Beaton's motion for class certification and Snead's expert report. Myers concludes that Beaton's contention that SpeedyPC's software is designed always to report that a user's computer is severely damaged, regardless of the condition or type of the computer, is false. He also opines that Snead's conclusions—that the diagnostic function of the free version of SpeedyPC's software assesses the level of computer damage indiscriminately and is programmed to classify routine computing behavior as problematic—are incorrect, because the way SpeedyPC's software diagnoses damage and computer problems can have utility for users. (Myers's Expert Rep. at 38–39, 42, 45, 48, Dkt. No. 135-13.) Beaton argues that parts of Myers's report and testimony should be barred because: (1) they exceed the scope of a rebuttal report; (2) they include an improper

6

factual narrative; (3) they contain improper speculation about Beaton's mental state and offers improper legal conclusions; and (4) their conclusions about consumer behavior and expectations do no satisfy the strictures of Rule 702.

> A.  *Scope of Myers's Expert Report*

Beaton first argues that Myers's report exceeds the scope of a rebuttal report because it discusses topics that were never discussed in Snead's expert report. Specifically, Myers discusses Beaton's laptop and the performance of SpeedyPC's software under reasonable test conditions. But it is not at all clear why SpeedyPC's expert would be limited to rebutting Snead's opinions. Beaton only points to the Court's orders referencing "rebuttal witnesses regarding class certification." (Dkt. Nos. 80, 87, 90.) However, the Court's order setting forth the class certification expert disclosure and briefing schedule does not explicitly limit SpeedyPC's expert to only rebutting Beaton's expert. (Dkt. Nos. 80, 87, 90.) The term "rebuttal witnesses regarding class certification" is broad enough to include witnesses used to rebut the contention that Beaton's claims are entitled to class certification. Moreover, at a court hearing on June 30, 2015, SpeedyPC's counsel explained that SpeedyPC's proffered expert would argue that class certification should be denied because the software operated differently for each user. Thus, to the extent SpeedyPC and Beaton understood the Court's scheduling order differently, Beaton had notice of SpeedyPC's interpretation and what sort of expert testimony Myers intended to introduce, and there is no indication in the record that Beaton would be prejudiced by allowing Myers's testimony. Accordingly, the Court will not limit Myers's report to responding to Snead's contentions and, instead, will consider whatever is relevant to Beaton's motion for class certification in Myers's report.

B.  *Propriety of Factual Narrative*

Beaton next argues that Section D of Myers's report—which discusses Beaton's laptop—contains improper factual narrative. In particular, Beaton objects to two sentences in which Myers refers to Beaton's testimony about his purchase and use of his laptop and the operating system on the laptop as "confusing." (Myers's Expert Rep. at 16, Dkt. No. 135-13.) In the first instance, Myers notes that Beaton at one point claimed to have purchased the laptop in 2012, but at another point claimed he purchased the laptop in 2008. In the other instance, Myers notes that Beaton stated he was running the Windows 7 Home Operating System on his laptop from 2008, even though Windows 7 was not publicly available in 2008. Myers goes on to suggest that Beaton's laptop may have had Windows Vista, which was known for its performance and compatibility issues. (*Id.* at 16–17.) Myers seems to be opining that Beaton's problems may have been related to his computer and not SpeedyPC's software, a point which may be relevant to Beaton's class and individual claims.

The Court finds Myers's commentary that certain purported inconsistencies in Beaton's testimony are "confusing" to be irrelevant to his expert opinions about Beaton's laptop. The Court will not strike these portions of Section D of Myers's report but also will not consider Myers's commentary on Beaton's testimony in evaluating Beaton's motion for class certification.

C.  *Speculation about Mental State and Offering of Legal Conclusions*

Beaton next challenges two paragraphs in Myers's report as including improper conclusions about Beaton's mental state and improper legal conclusions.

The first of these paragraphs states:

> The formatting/reinstall event that [Myers] observed on Plaintiff's laptop is not an action that could happen accidentally or unexpectedly on a computer, but rather is the type of activity that requires a deliberate and intentional decision and set of

actions on the part of a reasonably experienced computer user in order to properly complete.

(*Id.* ¶ 81.) This paragraph does not include any legal conclusions nor does it present improper conclusions about Beaton's mental state. Myers's conclusion is not about Beaton's motivations in particular. Rather, Myers opines that, based on his review of the forensic image of Beaton's computer, the actions taken to effectuate the formatting/reinstall—by whoever took them—evinced a level of deliberation and experience such that it could not have been accidental. This conclusion does not exceed the bounds of proper expert opinion under Rule 702. As the Seventh Circuit elucidated in *DePaepe v. General Motors Corp.*, an expert, in his expert capacity, can provide an opinion that certain actions require or demonstrate a certain mental state; but an expert cannot provide an opinion that a particular person in fact acted with that mental state. 141 F.3d 715, 720 (7th Cir. 1998) ("[The expert] lacked any scientific basis for an opinion about the motives of GM's designers. He could give an opinion as an engineer that reducing the padding [of the sun visor] saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify ***as an expert*** that GM had a particular motive. Because [the expert] did not participate in the deliberations leading to the design of the sun visor, he could not testify as a fact witness on the subject, either."). Myers's opinions here regarding the deliberation and intentionality required for the actions at issue properly adhere to that rule.

The second challenged paragraph states:

From a technical/forensic perspective, given Plaintiff's claims that his computer had issues that lead him to download and use the SpeedyPC Pro software and his claims that the SpeedyPC Pro software did not perform as represented on his laptop, it would not make sense for Plaintiff to format his hard drive after retaining legal counsel and shortly before this lawsuit was filed unless he had concern about exposing the content of his laptop in the course of this lawsuit or had concern that the content of his laptop would not support the allegations of this

9

> lawsuit. Regardless of the potential reasons for the formatting of the hard drive evidence, such clear spoliation of evidence can't be condoned in the litigation context.

(*Id.* ¶ 83.) The conclusions of this paragraph are explicit that Beaton himself had a bad faith motive to format the hard drive of his computer. As discussed above, this does transgress the Seventh Circuit's delineation of proper expert testimony as set forth in *DePaepe*, 141 F.3d at 720.[2] Even if this opinion were proper, the report offers no reasoning to support the stark conclusion, and so the Court would strike it on that basis. *Id.* ("[T]he whole point of *Daubert* is that experts can't 'speculate.' They need analytically sound bases for their opinions."). Finally, this paragraph contains legal conclusions—such as characterizing the actions as "spoliation of evidence [that] can't be condoned in the litigation context." (Myers's Expert Rep. ¶ 81, Dkt. No. 135-13.) These legal conclusions are not the proper subject of expert testimony. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("[E]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."). Thus, the Court will strike this paragraph 83 and bar any testimony from Myers on this subject matter.

### D.  *Qualifications and Propriety under Rule 702*

Finally, Beaton challenges portions of Sections B, C, and E of Myers's report, arguing that Myers's conclusions do not meet the requirements of Rule 702 and *Daubert*. In terms of his qualifications, Myers has a bachelors' degree in Engineering from Texas A&M University and is a licensed professional engineer in the State of Texas. (Myers's Expert Rep. ¶ 5, Dkt. No. 135-13.) Myers founded a software development company, Eureka Software Solutions Inc., and serves as its CEO. In that role, he has negotiated hundreds of software development agreements and he has himself has substantial experience in writing software code. (*Id.* ¶¶ 3–4.)

---

[2] Nor is there any indication that Myers has a basis to testify as a fact witness regarding Beaton's motivations and mental state.

10

Section B of Myers's report, entitled General Industry Overview, provides general details about software products related to personal computer cleaning and performance improvement. This section explains at a high level of generality what software products in this area do, when they are used, how they work, and why consumers may opt for them. Beaton argues that Myers was not an expert in the "software genre" of personal computer cleaning utilities, noting that he testified that he had not performed "comparative analys[es]" of the products in this area. (Pl.'s Memo. in Supp. of Mot. to Strike Myers's Expert Rep. and Testimony at 12, Dkt. No. 146.) But the general conclusions in this section are within the purview of Myers's extensive experience in the software industry, including in various types of software applications. Thus, the Court will not strike any part of Section B.

Section C of the report concerns SpeedyPC's Product Warranty/Guarantee. Beaton challenges Myers's statement that SpeedyPC's 30-day money-back guarantee was a reasonable option for certain consumers. Myers supports this conclusion with a discussion, based on his experience, of the relative efficacy and cost of hiring a technical expert. Again, the Court finds that these conclusions are within the purview of Myers's expertise in the computer software industry, including his experience negotiating numerous software development agreements.

Finally, Section E of the report assesses the report of Beaton's expert, Snead. In two paragraphs, Myers opines on certain aspects of the design of SpeedyPC's software as follows:

> Thus, a consumer/end user who arrives at this non-default prescan screen after installing and starting the SpeedyPC Pro software for the first time would generally expect that the needle of the scan gauge/meter would initially rest on the left hand side of the gauge and would not likely be influenced one way or the other by this typical needle position.
>
> In fact, the alternative to the image cited by Mr. Snead, a gauge or meter image with the needle resting on the right hand side or "high" performance reading displayed on the initial screen would likely have more potential influence on the consumer/end user, who downloaded the software over concern about their

> system, by somehow suggesting that their system is fine or running at an optimal state and thereby leading such consumer/end user to not run a system scan and thereby not identify the potential problems with their system. The worst case scenario resulting from the use of the image cited by Mr. Snead in the SpeedyPC Pro software is that the consumer/end user is influenced to run the initial scan of their computer in order to see what, if any, problems or malware may be present.

(Myers's Expert Rep. ¶¶ 127–28, Dkt. No. 135-13.) Myers reaches these conclusions despite having no formal training in marketing or consumer expectations and behavior. (Ex. A to Myers's Expert Rep. at 61–70 of 119, Dkt. No. 135-13.) Myers does have experience in getting consumer feedback on his company's products, but SpeedyPC points to nothing in the record to indicate that such feedback bore any relationship to Myers's opinions about SpeedyPC's software design and it is insufficient to give him the requisite general expertise to provide expert opinions on design aspects of SpeedyPC's software. Moreover, Myers did not commission any consumer surveys on the gauge/meter referenced in his conclusions, nor did he review any market research on the point. (Ex. 1 to Pl.'s Memo. in Supp. of Mot. to Strike Myers's Expert Rep. and Testimony at 187–88, Dkt. No. 146-1.) Even if he were generally qualified, his conclusions about the gauge do not meet the reliability and methodology standards of Rule 702. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 957 (N.D. Ill. 2009) (striking purported "common sense observations" about lay people's understanding of "steam" in the context of advertising about steam dryer, because expert was not qualified in "marketing, consumer surveys[,] consumer perceptions[, or] linguistics" and had "not conduct[ed] any surveys or consumer research to reach these opinions"). Thus, the Court will strike these two paragraphs of the report and any testimony from Myers on the points therein.

## IV. Conclusion

For the foregoing reasons, the Court denies SpeedyPC's motion to bar Beaton's expert Craig Snead (Dkt. No. 143), and denies in part and grants in part Beaton's motion to strike the

expert report and testimony of Monty G. Myers (Dkt. No. 145), striking paragraphs 83, 127, and 128 from Myers's expert report and barring any testimony from Myers on the subject matter of those paragraphs.

ENTERED:

Dated: December 21, 2017

Andrea R. Wood
United States District Judge